UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIELLE C. HENDRICKS,

                        Plaintiff,

                                          6:23-CV-0431
v.                                         (LEK/ML)

UTICA PUBLIC DEFENDERS; ELIZABETH,
Last Name Unknown-Utica Public Defender
Office; FRANK, Last Name Unknown, only
handle misdemeanors-Utica Public Defender
Office; JUDGE SABB, Criminal Court Judge;
and UTICA DISTRICT ATTORNEY,

                        Defendants.
_____

APPEARANCES:                       OF COUNSEL:

DANIELLE C. HENDRICKS
  Plaintiff, *Pro Se*
1402 West Street, Room 5
Utica, New York 13502


MIROSLAV LOVRIC, United States Magistrate Judge


### <u>ORDER and REPORT-RECOMMENDATION</u>

      The Clerk has sent a *pro se* complaint in the above captioned action together with an

application to proceed *in forma pauperis* and a motion for appointment of counsel filed by

Plaintiff Danielle C. Hendricks ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 6, 8.)  For the

reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application (Dkt. No. 6), (2)

deny Plaintiff's motion for appointment of counsel (Dkt. No. 8), and (3) recommend that

Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety in part (1) with leave to amend,

and (2) without leave to amend

## I.      BACKGROUND

On April 5, 2023, Plaintiff commenced this action by filing a *pro se* Complaint against defendants Utica Public Defenders, Elizabeth, Frank, Judge Sabb, and Utica District Attorney (collectively "Defendants").  (Dkt. No. 1.)  In addition, Plaintiff filed a motion for leave to proceed *in forma pauperis* (Dkt. No. 6) and a motion for appointment of counsel (Dkt. No. 8).

The Complaint is on a form complaint, which purports to assert civil rights actions arising under 42 U.S.C. § 1983.  (*See generally* Dkt. No. 1.)  The Complaint alleges that Plaintiff was represented by Defendant Utica Public Defenders office in a criminal proceeding before Defendant Sabb.  (Dkt. No. 1 at 2.)  The Complaint alleges that Plaintiff rejected a plea offer but that Defendants Frank, Elizabeth, and Sabb agreed to dismiss the charges on the condition that Plaintiff serve a term of 90 days in a psychiatric hospital.  (*Id*. at 1-2.)  Plaintiff alleges that Defendants accused her of having schizophrenia.  (*Id*. at 2.)

Based on these factual allegations, Plaintiff appears to assert the following two claims: (1) a claim that Defendants violated her right to an attorney pursuant to the Sixth Amendment and 42 U.S.C. § 1983; and (2) a claim that Defendants provided ineffective assistance of counsel. (*See generally* Dkt. No. 1.)  As relief, Plaintiff appears to be seeking $2,000,000.00 in compensatory damages, Defendants to be disbarred, and her son to be placed back in her custody.  (*Id*.)

For a more complete statement of Plaintiff's claims, refer to the Complaint.  (Dkt. No. 1.)

## II.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[1]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 6), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[2]

## III.   LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp*., 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories

---

[1]   The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]   Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable

merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter*

*alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and

punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the

complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v.*

*Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d

66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam)

(reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint

sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties .
. . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her
pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).
Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes
of action be dismissed.

### A.   Claims Against Defendant Sabb

#### 1.   Request for Monetary Relief

Plaintiff's claims under § 1983 seeking monetary damages against Defendant Sabb, who
acted as the criminal law judge, are barred under the doctrine of judicial immunity.  Under this
doctrine, judges are absolutely immune from suit for claims for damages for any actions taken
within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).
Generally, "acts arising out of, or related to, individual cases before [a] judge are considered
judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  "[E]ven allegations of bad
faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209.  This is because
"[w]ithout insulation from liability, judges would be subject to harassment and intimidation."
*Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).  Further, as amended in 1996, § 1983 provides
that "in any action brought against a judicial officer for an act or omission taken in such officer's
judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or
declaratory relief was unavailable."  42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial
capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete

absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature).  However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff asserts claims arising from the efforts of Defendant Sabb, in his capacity as a New York State criminal court judge, to address criminal charges pending against Plaintiff. Plaintiff fails to allege facts plausibly suggesting that Defendant Sabb acted beyond the scope of his judicial responsibilities.

As a result, to the extent that the Complaint seeks monetary damages against Defendant Sabb, I recommend that it be dismissed because Defendant Sabb is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *Mills v. Fischer*, 645 F. 3d 176, 177 (2d Cir. 2011) (claims dismissed because of judicial immunity are frivolous for the purpose of the IFP statute, 28 U.S.C. § 1915).

### 2.        Request for Declaratory/Injunctive Relief

Insofar as Plaintiff seeks declaratory or injunctive relief against Defendant Sabb alleging that the representation by Defendants Utica Public Defender, Elizabeth, and Frank violated certain attorney or ethical misconduct rules, disciplinary rules, and/or the New York State Rules of Professional Conduct, "violations of attorney rules of professional conduct or state ethical rules or guidelines for attorneys do not form a basis of a constitutional claim for the same reasons that a legal malpractice claim . . . does not suffice to set forth a claim under section 1983." *Caldwell v. Petros*, 22-CV-0567, 2022 WL 15697608, at *3 (N.D.N.Y. Oct. 28, 2022) (Hummel, M.J.), *report and recommendation adopted by*, 2022 WL 16918287 (N.D.N.Y. Nov. 14, 2022) (Sannes, C.J.).  Moreover, Plaintiff fails to allege facts plausibly suggesting that

Defendant Sabb is liable for any deficiencies in the representation of Plaintiff by other defendants.  As a result, I recommend that Plaintiff's claims requesting declaratory or injunctive relief against Defendant Sabb be dismissed for failure to state a claim upon which relief may be granted.[3]

## B.    Claims Against Defendant Utica District Attorney

### 1.    Request for Monetary Relief

Plaintiff's claims against Defendant Utica District Attorney—which seek monetary damages—are barred by the Eleventh Amendment to the United States Constitution.  "Stated as simply as possible, the Eleventh Amendment means that, as a 'general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'"  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).  "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Woods*, 466 F.3d at 236.  "'When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the

---

[3]    The Court notes that Plaintiff's claims may also be barred by the *Rooker-Feldman* doctrine, to the extent that the state judicial proceedings against Plaintiff terminated before the filing of this action.  *See Neroni v. Peebles*, 14-CV-0584, 2014 WL 12768331, at *8 (N.D.N.Y. June 20, 2014) (Suddaby, J.) (citing *Neroni v. Zayas*, 13-CV-0127, 2014 WL 1311560, at *4 (N.D.N.Y. Mar. 31, 2014) (Kahn, J.)) (dismissing the plaintiff's claims and finding that, "[i]n the alternative, to the extent the state judicial proceedings against Plaintiff terminated before the filing of this action . . ., the claims challenging those proceedings appear to be barred by the *Rooker-Feldman* doctrine.").

State not the county.'" *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)

(quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)).

As a result, Plaintiff's claims against Defendant Utica District Attorney, seeking

monetary damages, are barred by the Eleventh Amendment.  *See Best v. Brown*, 19-CV-3724,

2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the

Office of the Queens County District Attorney as barred by the Eleventh Amendment); *see also*

*D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City*

*of New York*, 996 F.2d 522, 536 (2d Cir. 1993)) ("[I]f a district attorney or an assistant district

attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her

official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar.

31, 20221) ("any claims Plaintiff may raise against the DA Defendants in their 'official capacity'

would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-

CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending

dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official

capacities—which were effectively claims against the State of New York—as barred by the

Eleventh Amendment), *adopted by Gentry v. New York*, 2021 WL 3032691 (N.D.N.Y. July 19,

2021) (Suddaby, C.J.).

## 2.    Request for Injunctive Relief

For the reason set forth above in Part IV.A.2. of this Order and Report-Recommendation,

I recommend that Plaintiff's request for declaratory or injunctive relief against Defendant Utica

District Attorney be dismissed for failure to state a claim upon which relief may be granted.[4]

---

[4]      As set forth above in note 3, *supra*, Plaintiff's claims may also be barred by the *Rooker-Feldman* doctrine.

### C.      Claims Against Defendants Utica Public Defender, Elizabeth, Frank

Plaintiff's claims against Defendants Utica Public Defender, Elizabeth, and Frank, in their capacities representing Plaintiff against criminal charges should be dismissed for failure to state a claim upon which relief may be granted.

"[I]t is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Flores v. Levy*, 07-CV-3753, 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) (citing, *inter alia*, *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983")); *Benjamin v. Branden*, 21-CV-4927, 2022 WL 1092681, at *2 (E.D.N.Y. Apr. 12, 2022) (collecting cases).  "Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys." *Brooks v. New York State Supreme Court*, 02-CV-4183, 2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) (citation omitted)).

As a result, I recommend that Plaintiff's claims against Defendants Utica Public Defender, Elizabeth, and Frank, for their actions representing Plaintiff in the criminal proceeding, be dismissed for failure to state a claim upon which relief may be granted.[5]  28 U.S.C. § 1915(e)(2)(B)(ii).

---

[5]      To the extent that Plaintiff's claims are construed as alleging a conspiracy among Defendants, I recommend that they be dismissed.  First, Plaintiff's claim is speculative and conclusory, and the allegations are insufficient to plausibly suggest a conspiracy that would qualify Defendants Utica Public Defender, Elizabeth, and Frank as state actors.  *Flores v. Levey*, 07-CV-3753, 2008 WL 4394681, at *10 (E.D.N.Y. Sept. 23, 2008) (collecting cases) (allegations that Legal Aid attorneys engaged in numerous conspiracies with the other defendants "(1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand

## V.   OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

---

jury; (3) allowing the defendant prosecutors to 'lift' the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment" did not support a plausible claim of conspiracy with the other defendants).  Second, even if Plaintiff's conspiracy claim was found to be more than conclusory as pleaded, Plaintiff could not establish a conspiracy among Defendants.  As set forth above in Parts IV.A. and IV.B. of this Order and Report-Recommendation, I recommend that the claims against Defendants Sabb and Utica District Attorney be dismissed as they are immune from suit.  "Where [the] plaintiff's only conspirators are protected by absolute immunity, 'Plaintiff's defense attorney[] therefore had no state actor with whom [he] could have conspired, rend[er]ing Plaintiff's conspiracy claim deficient as a matter of law.'"  *Williams v. Cnty. of Onondaga*, 22-CV-1367, 2023 WL 2563181, at *8 (N.D.N.Y. Feb. 21, 2023) (Baxter, M.J.), *report and recommendation adopted by*, 2023 WL 2563210 (N.D.N.Y. Mar. 16, 2023) (McAvoy, J.).  Defendants Utica Public Defender, Elizabeth, and Frank are employees of a single entity and thus are legally incapable of conspiring together pursuant to the "intra-agency conspiracy" doctrine.  *See Giles v. Fitzgerald*, 20-CV-0980, 2020 WL 6287459, at *6 (N.D.N.Y. Oct. 27, 2020) (Lovric, M.J.) (finding that the intra-agency conspiracy doctrine barred a conspiracy claim among the defendants who were officers employed by the Syracuse Police Department), *report and recommendation adopted by*, 2021 WL 248048 (N.D.N.Y. Jan. 26, 2021) (D'Agostino, J.).

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

     Here, better pleading could not cure the Court's lack of subject matter jurisdiction based

on the immunities described above with respect to Plaintiff's claims pursuant to 42 U.S.C. §

1983 against Defendants Sabb and Utica District Attorney seeking monetary damages. *See Britt*

*v. Doe*, 22-CV-0692, 2022 WL 16579207, at *9 (N.D.N.Y. Oct. 13, 2022) (Lovric, M.J.)

(recommending dismissal without prejudice and without leave to amend, the plaintiff's claims

against defendants who are immune from suit), *report and recommendation adopted by*, 2022

WL 16571391 (N.D.N.Y. Nov. 1, 2022) (Sharpe, J.).

     However, it is not clear whether a better pleading would permit Plaintiff to assert a

cognizable claim pursuant to 42 U.S.C. § 1983 against (1) Defendants Sabb and Utica District

Attorney for declaratory/injunctive relief, and (2) Defendants Utica Public Defender, Elizabeth,

and Frank.  Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted

leave to amend the Complaint with respect to those claims.

     If Plaintiff chooses to avail herself of an opportunity to amend, such amended pleading

must set forth a short and plain statement of the facts on which she relies to support any legal

claims asserted.  Fed. R. Civ. P. 8(a).  In addition, the amended complaint must include

allegations reflecting how the individuals named as Defendants are involved in the allegedly

unlawful activity.  Finally, Plaintiff is informed that any amended complaint will replace the

---

[6]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell*
*Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

existing Complaint, and must be a wholly integrated and complete pleading that does not rely

upon or incorporate by reference any pleading or document previously filed with the Court. *See*

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that

an amended complaint ordinarily supersedes the original, and renders it of no legal effect."

(internal quotation marks omitted)).

## VI.    PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 8.)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of

counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62,

68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining

whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114

F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by

the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether

the indigent's claims seem likely to be of substance. A motion for appointment of counsel may

be properly denied if the court concludes that the plaintiff's "chances of success are highly

dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court

should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting
> evidence implicating the need for cross-examination will be the major
> proof presented to the fact finder, the indigent's ability to present the case,
> the complexity of the legal issues and any special reason in th[e] case why
> appointment of counsel would be more likely to lead to a just
> determination.

*Terminate Control Corp.*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62

(2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a

particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899

F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action.  As such, the

Court cannot find that Plaintiff's claims are likely to be of substance.  Plaintiff's motion (Dkt.

No. 8) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 6) is

**GRANTED only for purposes of filing and any appeal unless the trial court certifies in**

**writing that the appeal is not taken in good faith**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 8) is **DENIED**

without prejudice; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND**

**WITHOUT LEAVE TO AMEND** the Complaint (Dkt. No. 1) to the extent that it seeks

monetary relief from Defendants Sabb and Utica District Attorney, who are immune from such

relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO AMEND** the

Complaint (Dkt. No. 1) to the extent that it (1) seeks declaratory/injunctive relief from

Defendants Sabb and Utica District Attorney, and (2) alleges claims pursuant to 42 U.S.C. §

1983 against Defendants Utica Public Defender, Elizabeth, and Frank, for failure to state a claim

upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[7]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: May  10, 2023
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[7]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 15 of 182

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 6:23-cv-00431-LEK-ML Document 9 Filed 05/10/23 Page 16 of 182

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law
In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a) (3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at \*3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at \*4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also* 🔖 *N.Y. Teamsters Conference Pension &*

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 17 of 182

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting 📁 *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); 📁 *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

**2. Undisputed Material Facts**

 **\*4**  For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking

from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should

move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was

no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be

Case 6:23-cv-00431-LEK-ML  Document 9  Filed 05/10/23  Page 19 of 182

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

satisfied that the citations to evidence in the record support the movant's assertions. *See* Giannullo v. City of N.Y., 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug.

Case 6:23-cv-00431-LEK-ML Document 9 Filed 05/10/23 Page 20 of 182

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act."

🚩 *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." 🚩 *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing 🚩 *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." 🚩 *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud

dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 22 of 182

*10  For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1   Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2   The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3   As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4   The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5   For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ...

of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 15697608
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Boisey CALDWELL, Plaintiff,

v.

Gerald J. PETROS, et al., Defendants.

1:22-CV-0567 (BKS/CFH)
|
Signed October 28, 2022

**Attorneys and Law Firms**

Boisey Caldwell, 25 Elliot Place, Apt. E7, Bronx, New York
10452-7116, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES
MAGISTRATE JUDGE

**\*1** Plaintiff pro se Boisey Caldwell commenced this action
on May 27, 2022, by filing a complaint and application
for leave to proceed in forma pauperis ("IFP") in lieu of
paying the Court's filing fee. See Dkt. Nos. 1, 2. Presently
pending before the Court for review is plaintiff's application
for leave to proceed IFP. See Dkt. No. 2. The Court
has reviewed plaintiff's IFP application and concludes that
plaintiff financially qualifies for in forma pauperis relief for
purposes of filing. [1] Accordingly, the Court must review
plaintiff's complaint pursuant to 28 U.S.C. § 1915 to
determine whether it may proceed.

### I. Complaint

In a twenty-six-page single-spaced typed complaint, plaintiff
seeks to bring a claim against Gerald J. Petros, "chair";
Christine K. Bush, "vice chair," James Barrier. Plaintiff
provides that Barrier represented him in a case he filed in
1996, 96-CV-0353, Caldwell v. Tschante et al. Next to the
caption of plaintiff's complaint, plaintiff writes, "Attorney
Malpractice in The matter 96cv0353 Caldwell v. Tschante
et al." Compl. at 1. Plaintiff contends that Barrier "racially
profiled" him, discriminated against him due to his race, and
denied him a fair trial. See generally Compl. He notes

that when he first met with Barrier, Barrier commented,
"You're Black!" and "We bought y'all over here." Id. Plaintiff
appears to contend that Barrier should not have taken his
case because his allegedly racist beliefs impacted his ability
to properly represent plaintiff. See id. at 3. Although the
specific strategies plaintiff may be referencing are unclear,
plaintiff appears to disagree with certain of Barrier's litigation
strategies insofar as Barrier "did not allow me to tell the Jury
is Liability," "refused to allow me the opportunity to tell the
jury what I was there to prove and consequently the case
was not trial worthy," and did not permit plaintiff to bring
his complaint trial so he could read it to the "jury and the
court" at the end of trial Id. at 2, 4-5. Plaintiff also contends
that Barrier "should be punished for interfering with the
courts [sic] ability to administer justice[.]" Id. at 2. Plaintiff
contends that Barrier's racist comments "show[ ] ... his very
unpredictable 'state of mind' " and violate plaintiff's rights
to due process and equal protection of the laws. See id. at
4. Plaintiff states that he is seeking "remedies for a racially
motivated Conflict's [sic]." Id. Plaintiff further contends that
Barrier's representation of him violated attorney or ethical
"misconduct rules," "disciplinary rules," "tons of state and
local ethic opinions," and the New York Rules of Professional
Conduct. Id. at 2.

### II. Legal Standard

Section 1915(e) [2] of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court
shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious; (ii)
fails to state a claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who is immune
from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's
responsibility to determine that a plaintiff may properly
maintain his complaint before permitting him to proceed with
his action. Where the plaintiff is proceeding pro se, the court
must consider the claims "liberally" and "interpret them 'to
raise the strongest arguments that they suggest.' " Cold Stone
Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir.
2010) (summary order) (quoting Brownell v. Krom, 446
F.3d 305, 310 (2d Cir. 2006)). "[T]he tenet that a court must
accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions." Iqbal, 556 U.S. at
678. "Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."

Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). A _pro se_ litigant's pleadings are held to a less strict standard than those drafted by an attorney. See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties."). Because plaintiff is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).

**\*2** Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

> "In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" does not suffice. Id. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). Indeed, a complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held,

"[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

## III. **Discussion** [3]

**\*3** In 2019, plaintiff filed another action this district involving the same defendant and issue: 1:10-CV-1516, Caldwell v. Barrier, which was dismissed with prejudice. See Caldwell v. Barrier, 1:19-CV-1516 (BKS/CFH), Dkt. No. 6, 7. This dismissal was affirmed by the Second Circuit. See Caldwell v. Barrier, 1:19-CV-1516, Dkt. No. 12. In 2004, plaintiff also filed the case, Caldwell v. James J. Barrier, et al., 1:04-CV-0036 (DNH/RFT) also regarding the same defendants and facts. That claim was similarly dismissed with prejudice.

Plaintiff's complaint in this action must be dismissed with prejudice. It is clear from review of plaintiff's complaints in this action, Caldwell v. Barrier, 1:19-CV-1516 (BKS/CFH), and Caldwell v. James J. Barrier, et al., 1:04-CV-0036 (DNH/RFT), that plaintiff is yet again attempting to bring a case involving the same defendant and same frivolous claims. Plaintiff was advised in the earlier two actions that his complaints were unable to proceed and that he was not permitted to re-file. See Caldwell v. Barrier, 1:19-CV-1516 (BKS/CFH), Dkt. No. 4 at 6 ("plaintiff may not attempt to bring a new action to raise these claims against the same defendant."). As plaintiff's complaints involving the same defendant and factual circumstances were dismissed by this Court with prejudice in two earlier actions, plaintiff again is advised that he may not bring a new action.

Even if this case were not barred by the prior with prejudice dismissals, as plaintiff has been advised in both earlier actions, he cannot state a federal cause of action against Barrier for legal malpractice because "[p]rivate attorneys, whether court appointed or privately retained, are not liable under 42 U.S.C. 1983." Caldwell v. Barrier, 1:19-CV-1516 (BKS/CFH), Dkt. No. 4, 2020 WL 918717, at \*3 (N.D.N.Y. Feb. 26, 2020) (citing Rodriguez v. Weprin, 116 F.3d 62 65-66 (2d Cir. 1997)). Thus, to the extent

plaintiff contends that Barrier somehow violated his Fifth, Seventh, and Fourteenth Amendments rights through his representation of plaintiff, see Compl. at 2-3, for the same reasons already set forth in the prior actions, Barrier, as an attorney, was not acting under the color of state law under section 1983. See id. Further, as this Court has also previously explained, even if there were a valid question of federal law such that this Court could apply supplemental jurisdiction, there can be no state law claim for legal malpractice because such claims are governed by a three-year statute of limitations which has long since expired given that the legal representation occurred in the mid-1990s. See Caldwell v. Barrier, 1:19-CV-1516 (BKS/CFH), Dkt. No. 4 at 7.

Insofar as plaintiff argues that in his representation of plaintiff, Barrier violated certain attorney or ethical "misconduct rules," "disciplinary rules," "tons of state and local ethic opinions," and/or the New York State Rules of Professional Conduct, Compl. at 3-4, 5-17, 20-23, violations of attorney rules of professional conduct or state ethical rules or guidelines for attorneys do not form a basis of a constitutional claim for the same reasons that a legal malpractice claim, as discussed above, does not suffice to set forth a claim under section 1983.

Insofar as plaintiff names as defendants Gerald J. Petros and Christine K. Bush in the caption, there is no mention of these individuals anywhere within plaintiff's complaint. Plaintiff's complaint makes many statements contending that Barrier's alleged misconduct and misrepresentation is representative of the firm where he worked, Hinckley Allen. It is possible that plaintiff seeks to name Petros and Bush, partners of the law firm of Hinckley Allen because he believes they may have some kind of "supervisory" roles or authoritative roles at the law firm such that Barrier's conduct could be inferred upon them. However, as plaintiff has failed to state any claim against Barrier, no claim could lie against Petros or Bush for Barrier's conduct.

**\*4** The undersigned notes that "[p]laintiff's attempt at circumventing this court's orders constitutes abusive litigation. A complaint that repeats pending or previously litigated claims may be considered 'abusive' and dismissed under the authority of 28 U.S.C. 1915." Ramic v. Barber, No. 6:18-CV-798 (BKS/ATB), 2018 WL 4635706, at \*3 (N.D.N.Y. July 12, 2018) report and recommendation adopted, No. 6:18-CV-0798 (BKS/ATB), 2018 WL 3629593

(N.D.N.Y. July 31, 2018) (citing Ranasinghe v. Kennell, 718 F. App'x 82, 83-84 (2d Cir. 2018)) (summary order) (additional citations omitted).

As this Court has set forth,

> The court also has discretion under the All Writs Act to enjoin plaintiffs from further vexatious litigation against defendants and related parties. Azkour v. Maucort, No. 11-CV-5780, 2018 WL 1441366, at *1 (S.D.N.Y. Mar. 21, 2018) (citing 🚩 Safir v. U.S. Airlines, 792 F.2d 19, 23 (2d Cir. 1986)). The court considers various factors in making such a determination. Id. These factors include the plaintiff's litigation history; his motive in pursuing the litigation; whether plaintiff has an objective good faith expectation of prevailing; whether the litigant is represented by counsel, whether the litigant has caused needless expense to other parties or posed an unnecessary burden on the court and its personnel, and whether other sanctions would be adequate to protect the court and other parties. Id. (citing 🚩 Safir, 792 F.2d at 24). Ultimately, the court determines whether the litigant, who has a history of vexatious litigation is likely to continue to abuse the process. Id. ( 🚩 Safir, 792 F.2d at 23). However, before a filing injunction is imposed, the litigant must be given an opportunity to be heard. Id.

Ramic, 2018 WL 4635706, at *3. Here, the undersigned declines to recommend an anti-filing injunction at this time. Although plaintiff has proven to be a vexatious filer, it does not appear that his litigation history has yet risen to the level at which the Court usually recommends such injunctions. However, plaintiff is advised that if he attempts to bring future actions before this Court involving the same claims and

defendant or other frivolous arguments, it would appear likely that the assigned judge would consider such an injunction.

A court ordinarily should not dismiss a complaint filed by a pro se litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated," 🚩 Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Id. "Here, as plaintiff cannot cure the defects in his pleading, dismissal with prejudice and without opportunity to amend is warranted as it is clear there is no reworking of the complaint which could entitle plaintiff to relief in this Court." Caldwell, 2020 WL 918717, at *4.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's IFP application (dkt. no. 2) be **GRANTED** for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED** in its entirety **WITH PREJUDICE** pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); and it is further

**\*5 RECOMMENDED**, that if the District Court adopts this recommendation, the Court further certify that any appeal from this matter would not be taken in good faith pursuant to 🚩 28 U.S.C. § 1915(a)(3), and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 🚩 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. See 🚩 Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing 🚩 Small v.

_Sec'y of Health and Human Servs.,_ 892 F.2d 15 (2d Cir. 1989)); _see_ _also_ ⚑ 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [4]

**All Citations**

Slip Copy, 2022 WL 15697608

## Footnotes

1    Plaintiff is advised that he is still required to pay any costs and fees he may incur in this matter, including, but not limited to, copying fees, witness fees, and mailing expenses.

2    The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See ⚑ 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., _Fridman v. City of N.Y.,_ 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3    Unless otherwise noted, the Court has provided plaintiff with copies of all unpublished cases cited within this Report-Recommendation & Order.

4    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

---

**End of Document**                            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16918287
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Boisey CALDWELL, Plaintiff,
v.
Gerald J. PETROS, et al., Defendants.

1:22-cv-567 (BKS/CFH)
|
Signed November 14, 2022

**Attorneys and Law Firms**

Plaintiff pro se: Boisey Caldwell, Bronx, NY 10452-7116.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge:

**I. INTRODUCTION**

**\*1** Plaintiff pro se Boisey Caldwell brought this "Attorney Malpractice" action against Defendants Gerald J. Petros, Chritine K. Bush, and James Barrier on May 27, 2022. (Dkt. No. 1). The Complaint was referred to United States Magistrate Judge Christian F. Hummel who, on October 28, 2022, issued a Report-Recommendation and Order granting Plaintiff's application for leave to proceed in forma pauperis and recommending that the Complaint be dismissed with prejudice. (Dkt. No. 7, at 1, 6–7 (noting that this is the third case Plaintiff has filed against Defendant Barrier alleging "the same frivolous claims" (citing *Caldwell v. Barrier*, No. 1:19-cv-1516 (BKS/CFH) (N.D.N.Y. 2019) ("2019 Action"); *Caldwell v. James J. Barrier, et al.*, No. 1:04-cv-0036 (DNH/ RFT) (N.D.N.Y. 2004) ("2004 Action"))).

Plaintiff has filed a response to the Report-Recommendation. (Dkt. No. 8). For the reasons set forth below, Report-Recommendation is adopted in its entirety.

**II. STANDARD OF REVIEW**

This Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-

recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at \*2, 2011 U.S. Dist. LEXIS 95351 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.* To the extent a party makes "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments" in the original submission, the Court will only review for clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

**III. DISCUSSION**

Magistrate Judge Hummel recommended that Plaintiff's Complaint be dismissed with prejudice because "[i]t is clear from review of plaintiff's complaints in this action, that plaintiff is yet again attempting to bring a case involving the same defendant and same frivolous claims." (Dkt. No. 7, at 6–7 (citing 2019 Action and 2004 Action)). Magistrate Judge Hummel explained that Plaintiff's 2019 Action and 2004 Action both named Defendant Barrier, raised the same legal malpractice issues Plaintiff asserts in the present Complaint, and were dismissed with prejudice. (Dkt. No. 7, at 6–7 (citing 2019 Action, Dkt. No. 4, at 6 ("[P]laintiff may not attempt to bring a new action to raise these claims against the same defendant."))).

**\*2** Magistrate Judge Hummel also concluded that even if Plaintiff's claims had not been dismissed previously, they failed to allege a plausible claim for relief. (Dkt. No. 7, at 7–8). Specifically, Magistrate Judge Hummel found that: Plaintiff's allegations regarding Defendant Barrier's alleged violation of Plaintiff's Fifth, Seventh, and Fourteenth Amendment rights failed to state a claim under 42 U.S.C. § 1983 because "Barrier, as an attorney, was not acting under the color of state law," (Dkt. No. 7, at 7 (citing Dkt. No. 1, at 2–3)); Plaintiff's allegations that Defendant Barrier violated attorney rules of professional conduct "do not form a basis of a constitutional claim," (*id.* at 8); the statute of limitations precluded any state law legal malpractice claims "given that

the legal representation occurred in the mid-1990s," (*id.* at 7; *see* Dkt. No. 1, at 17 (referring to *Caldwell v. Tschante et al.*, Nos. 96-cv-0353, 96-cv-0358, 96-cv-0359, 96-cv-0360)); and Plaintiff does not refer to Defendants Petros or Bush outside the caption of the Complaint and has not articulated a plausible basis for liability against them, (Dkt. No. 7, at 7–8).

In his response to the Report-Recommendation, (Dkt. No. 8 (docketed as an "Objection")), Plaintiff provides additional details about the facts underlying the lawsuit in which Defendant Barrier was involved, (*see, e.g., id.* at 5 (referring to *Caldwell v. Tschantre et al.*)), and Defendant Barrier's alleged misconduct, (*see id.* at 7 ("Barrier violated the law governing lawyers when he took the case without following the Rules of Federal Procedure.")). Plaintiff's submission does not reference the Report-Recommendation or identify any objection to the analysis in the Report-Recommendation. Plaintiff has thus failed to preserve an objection, and the Court's review is for clear error. Having reviewed the Report-Recommendation for clear error and found none, the Court adopts the Report-Recommendation in its entirety.

In adopting the Report-Recommendation, the Court also adopts Magistrate Judge Hummel's admonition: any attempt "to bring future actions before this Court involving the same claims and defendant or other frivolous arguments" may result in the issuance of an order to show cause why a pre-filing order enjoining Plaintiff from filing pro se any future

pleadings, documents, or motions in the Northern District of New York without prior permission of the Chief Judge or his or her designee. (Dkt. No. 7, at 9).

**IV. CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Hummel's Report-Recommendation (Dkt. No. 7) is **ADOPTED** in all respects; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in its entirety **WITH PREJUDICE**; and it is further

**ORDERED** that any appeal from this matter would not be taken in good faith pursuant to 📁 28 U.S.C. § 1915(a)(3); and it is further

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 16918287

---

**End of Document**     © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 31 of 182

Best v. Brown, Not Reported in Fed. Supp. (2019)

2019 WL 3067118
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Hilary A. BEST and All Persons
Similarly Situated, Plaintiffs,

v.

Richard A. BROWN, His Estate and
Successors in Office; The Queens County
District Attorneys Office, Defendants.

19-CV-3724 (WFK) (LB)
|
Signed 07/11/2019
|
Filed 07/12/2019

**Attorneys and Law Firms**

Hilary A. Best, Forest Hills, NY, pro se.

### MEMORANDUM & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

**\*1**  On June 26, 2019, the *pro se* plaintiff, Hilary A. Best, purportedly on behalf of himself and "all others similarly situated," filed this action pursuant to 42 U.S.C. § 1983 against the Office of the Queens County District Attorney, and the recently-deceased Queens County District Attorney, Richard A. Brown. He alleges the deprivation of his constitutional rights and seeks damages. Plaintiff paid the filing fee to commence this action. For the reasons set forth below, the complaint is dismissed, but plaintiff is granted leave to amend within thirty days of the date of this Order.

### STANDARD OF REVIEW

A court must construe a *pro se* litigant's pleadings liberally, *Erickson v. Pardus,* 551 U.S. 89, 94, (2007); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and a *pro se* complaint should not be dismissed without granting the plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d

Cir. 1999) (internal quotation marks and citations omitted). Nevertheless, "a *pro se* plaintiff must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Wilber v. U.S. Postal Serv.*, No. 10-CV-3346 (ARR), 2010 WL 3036754, at \*1 (E.D.N.Y. Aug. 2, 2010) (internal quotation marks and citations omitted).

Even if a plaintiff has paid the filing fee, a district court may dismiss the case, *sua sponte*, if it determines that the action is frivolous. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000); *see Mallard v. United States District Court*, 490 U.S. 296, 307–08 (1989) (noting that "[28 U.S.C. §] 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"). "A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 327 (1989)). Indeed, "district courts are especially likely to be exposed to frivolous actions and, thus, have [a] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." *Fitzgerald,* 221 F.3d at 364. A cause of action is properly deemed frivolous as a matter of law when, *inter alia,* it is "based on an indisputably meritless legal theory"—that is, when it "lacks an arguable basis in law ..., or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

### BACKGROUND

The complaint alleges:

Defendants have practiced a policy of depriving Plaintiffs of liberty without due process of law in violation of the 14th Amendment to the United States Constitution, by subjecting Plaintiffs to indictment upon felony complaint without a preliminary hearing or waiver thereof, in violation of CPL secs. 100.05, 180.10 through 180.80, and 190.55 (2)(a), and minimum due process of law requiring a hearing when a person faces a mass deprivation of liberty, as without bail pursuant to CPL 530.20.

Best v. Brown, Not Reported in Fed. Supp. (2019)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 32 of 182

**\*2** Under color of state law, the defendants have pursued and obtained indictments against Plaintiffs within five (5) business days of arrest in order to prevent release pursuant to CPL sec. 180.80, [1] when although indictment within five (5) business days of arrest upon a felony complaint prevents a defendant's release upon his or her own recognizance pursuant to CPL sec. 180.80, nothing in the statute permits the omission of a preliminary hearing or waiver thereof.

Compl. at 3-4.

Plaintiff does not make any personal claims. He provides no information about whether, when or with what crime he was charged and/or convicted, or of what type of preliminary hearing he was deprived. He seeks to bring this claim on behalf of persons who were indicted by the Office of the Queens County District Attorney because, he alleges, the office has been violating the cited provisions since 1991.

### DISCUSSION

#### A. Claims on Behalf of Others

Plaintiff is a non-attorney proceeding *pro se* purporting to represent other similarly situated persons. Plaintiff may not bring this complaint on behalf of others without a lawyer. 28 U.S.C. § 1654; *see Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) ("[A]n individual generally has the right to proceed *pro se* with respect to his own claims or claims against him personally, [but] the statute does not permit unlicensed laymen to represent anyone else other than themselves."); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (holding that an unlicensed individual "may not appear on another person's behalf in the other's cause"). Thus, the complaint as to other plaintiffs is dismissed without prejudice. His class action certification request, to the degree he expresses one, is denied as moot.

#### B. Defendants are Immune from this Action

Plaintiff's claim for damages against the Office of the District Attorney, Queens County and Richard Brown, District Attorney Queens County ("Brown") in his official capacity are barred by the Eleventh Amendment to the United States Constitution. "Stated as simply as possible, the Eleventh Amendment means that, as a 'general rule, state governments may not be sued in federal court unless they have waived

their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* "Further, where a state official is sued for damages in his or her official capacity, such a suit is deemed to be a suit against the state and is barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). Where a district attorney is sued for damages in his or her official capacity, immunity under the Eleventh Amendment may attach to bar the suit, as the suit is construed as being against the State of New York. *See Amaker v. N.Y. State Dep't of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011)(holding that a district attorney and an assistant district attorney "benefited from New York's Eleventh Amendment immunity against suit" because they were sued in their official capacities) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)(holding that district attorney represents the state, not the county, and so is entitled to Eleventh Amendment immunity). Plaintiff's claim against Brown in his official capacity and the Office of the Queens County District Attorney are therefore barred by the Eleventh Amendment and is dismissed as frivolous. *See Ying Jing Gan v. City of New York*, 996 F.2d at 536 (stating that a district attorney in New York state is entitled to Eleventh Amendment immunity where plaintiff's "claims center[ ] ... on decisions whether or not, and on what charges to prosecute: and not where those claims focus on the administration of the district attorneys' office.); *Fitzgerald*, 221 F.3d at 364 (frivolous claims may be dismissed sua sponte even in fee-paid actions); *Montero*, 171 F.3d at 760 (a complaint is frivolous if the defendant is immune from suit).

**\*3** To the extent plaintiff seeks to sue Brown for damages in his individual capacity, [2] he has failed to allege any facts in support of his conclusion that Brown personally violated his constitutional rights. If Best seeks damages for Brown's decision to prosecute him, Brown would be entitled to absolute prosecutorial immunity. It is well-settled

Best v. Brown, Not Reported in Fed. Supp. (2019)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 33 of 182

that prosecutors performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity from an action for damages under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). A prosecutor thus has absolute immunity in connection with the decision whether to commence a prosecution. *See, e.g., Imbler v. Pachtman,* 424 U.S. at 431 (absolute immunity for "initiating a prosecution"); *Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987) (filing a criminal information); *Ying Jing Gan v. City of New York,* 996 F.2d at 530 ("a prosecutor has absolute immunity for his decision as to what offenses are and are not to be charged."). If plaintiff seeks to assert a claim that Brown maintains or perpetuates an office-wide policy that deprived him of his constitutional rights, he has not plead any facts specific to *his* prosecution nor how the practice directly caused the alleged deprivation of *his* rights. In any event, even if plaintiff had alleged facts to support his contention that Brown maintained an unconstitutional policy as the "final policy authority" of the Queens County District Attorney's Office that violated plaintiff's constitutional rights, such a claim would amount to a claim against Brown as the official policymaker of the City, that is, a municipal liability claim against the City of New York, rather than a claim against Brown in his individual capacity. Thus, as currently stated, plaintiff's complaint against Brown in his individual capacity is dismissed as frivolous. *Montero,* 171 F.3d at 760 (a complaint is frivolous if the defendant is immune from suit); *Livingston v. Adirondack Beverage Co.,* 141 F.3d at 437.

### LEAVE TO AMEND

In light of plaintiff's *pro se* status, *Cruz v. Gomez,* 202 F.3d 593 (2d Cir. 2000) (*pro se* plaintiff should afforded opportunity to amend complaint prior to dismissal), plaintiff is afforded thirty days to amend his complaint. *See* Fed R. Civ. P. 15(a); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d at 795. In the amended complaint, plaintiff should name as proper defendants those individuals who have some personal involvement in the actions he alleges in the amended complaint and provide the dates and locations for each relevant event. To the best of his ability, plaintiff must describe each individual and the role she or he played in the alleged deprivation of his rights. If plaintiff cannot identify

the defendant(s) by name, he may set forth the allegations against that person and designate them as Jane Doe or John Doe, providing any identifying information available to him. And he must state facts to support the allegation of a constitutional violation. Essentially, the body of plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why plaintiff is entitled to relief.

### CONCLUSION

Accordingly, the complaint is dismissed as frivolous because the defendants are absolutely immune from suit. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d at 363-64; *Montero v. Travis,* 171 F.3d at 760.

In light of plaintiff's *pro se* status, however, plaintiff is granted thirty days to amend his complaint. Should plaintiff decide to file an amended complaint, it must be submitted within thirty days of this Order, be captioned "Amended Complaint," and bear the same docket number as this Order. Plaintiff is advised that the amended complaint will completely replace the original complaint, so plaintiff must include in it any allegations he wishes to pursue against proper defendants. To aid plaintiff with this task, the Clerk of Court is respectfully requested to provide a "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)" form to plaintiff.

Further, if plaintiff fails to comply with this Order within the time allowed, the action shall be dismissed, and judgment shall enter.

Although plaintiff paid the filing fee to commence this action, if plaintiff requests *in forma pauperis* status for any appeal of this order, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

**\*4  SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2019 WL 3067118

**Best v. Brown, Not Reported in Fed. Supp. (2019)**

Case 6:23-cv-00431-LEK-ML    Document 9    Filed 05/10/23    Page 34 of 182

## Footnotes

1    CPL § 180.80 provides in pertinent part that a defendant held in custody for "more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon" must be released by the local criminal court. "The purpose of CPL § 180.80 is 'to ensure that a defendant being held in custody on the basis of a felony complaint not be incarcerated for an excessive period of time prior to judicial determination that there is reasonable cause to believe that he committed a felony.' " *People v. Ijnace,* 174 Misc. 2d 850, 854–55, 667 N.Y.S.2d 229, 233 (Sup. Ct. 1997) (quoting *People ex rel. Suddith and Willard Cradle v. Sheriff of Ulster County,* 93 A.D.2d 954, 463 N.Y.S.2d 276 (3rd Dept. 1983)).

2    Plaintiff selects that he is bringing this complaint against Brown in his "individual capacity" on the form complaint. *See* Compl. at 2.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    4

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.

State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

## ORDER

ANALISA TORRES, District Judge:

 **\*1**  This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the
New York State Constitution, and New York common law.
*See generally* Compl., ECF No. 1. Before the Court are three
motions to dismiss Plaintiff's complaint pursuant to Rules
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,
brought by the State, ECF No. 20, the DA Defendants, ECF
No. 22, and the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

## BACKGROUND [1]

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based
on this call, Plaintiff believes "it was more likely that it was
[ ] Jackson who fired the shots before jumping into the black
sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.*, ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained—but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by

Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3.[2]

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to what he testified about." *Id.*; *see also id.* at 136. The trial court then ordered that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth

Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

I. Legal Standard

A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power—to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint—fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See*

*Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6— include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

### III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see* *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see* *Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See* *Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf.* *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see* *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also* *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also* *Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal. [3]

### IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities" [4] arising *inter alia* under § 1983,

§ 1985, and § 1986,[5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

### A. Absolute Immunity

**\*6** The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him.[6]

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

**\*7** Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273.

And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity—from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4,

5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity. *Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation. [7]

### B. Time Bar

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725

F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4, 2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g., Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at *2 n.3 (S.D.N.Y. Sept. 2, 2021). [8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period—but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at *4 (S.D.N.Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at *4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021. [9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

*9 By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No.

15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely. [10] Accordingly, Count 6 is DISMISSED with prejudice.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action

within a year and [90] days from the date of the incident."
*Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

C. Personal Involvement

**\*10** Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable him to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining[11] cause of action.

A. Time Bar

### 1. 🚩 Section 1983 Claims

**\*11**  Plaintiff brings claims under 🚩 § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, 🚩 § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A 🚩 § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

🚩 Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. 🚩 Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under 🚩 § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrando's alleged failure to notice the inconsistencies

and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

🚩 Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. 🚩 Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, 🚩 *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's 🚩 § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* 🚩 N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

### B. Claim Against the City [13]

**\*12**  The Court reads Plaintiff's complaint as claiming, under 🚩 *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more, state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti, 983 F.3d at 618.* And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support—that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer —Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir.

2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. 🏴⚠️ *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. 🏴 *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See* 🏴 *Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a 🏴 § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants'

motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

**\*14** By **May 16, 2022,** Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se.* The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 992885

## Footnotes

1    Unless otherwise stated, the following facts are taken from the complaint and assumed, for purposes of this motion, to be true. 🏴 *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

2    The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

3    Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's 🚩 § 1983 and 🚩 § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

4    Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." 🚩 *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting 🚩 *Monell v. N.Y.C. Dep't of Soc. Serves*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

5    Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

6    Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

7    As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

8    The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 🚩 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

9    Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

10    Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

11    As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

12    As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

13    Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See* ⚑ *Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

---

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. **New York**.

Rondue **GENTRY**, Plaintiff,
v.
State of **NEW YORK**; Kyle Filli; David Hurley; Heath McCrindle; Steven Sharp; and David Soares, Defendants.

1:



21
-
CV
-
0319

(GTS/ML)
|
Signed 06/14/**2021**

**Attorneys and Law Firms**

Rondue **Gentry**, Plaintiff, Pro Se, Lakeview Shock Incarceration Correctional Facility, P.O. Box T, Brocton, **New York** 14716.

## ORDER and REPORT-RECOMMENDATION

Miroslav Lovric, U.S. Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an amended application to proceed *in forma pauperis* (Dkt. No. 5) filed by Rondue **Gentry** ("Plaintiff") to the Court for review. For the reasons discussed below, I grant Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) and recommend that the Complaint be accepted for filing in part, dismissed in part without leave to amend, and dismissed in part with leave to amend.

## II. BACKGROUND

On March 22, **2021**, Plaintiff commenced this action by filing a verified Complaint and a motion to proceed *in forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, **2021**, the Court denied Plaintiff's *in forma pauperis* application as incomplete and administratively closed the case. (Dkt. No. 4.) On April 9, **2021**, Plaintiff filed an amended *in forma pauperis*

application. (Dkt. No. 5.) As a result, the case was reopened and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally alleges that Plaintiff's civil rights were violated by the State of **New York**, **New York** State Police Officers Kyle Filli, David Hurley, and Heath McCrindle, and Assistant District Attorney Steven Sharp and Albany County District Attorney David Soares (collectively "Defendants"). (*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that on September 2, 2016, he was arrested on felony charges but released on bail on September 9, 2016. (*Id*. at 3.) While out on bail, Plaintiff alleges that on April 9, 2017, Defendant Filli stopped him while he was driving near a toll plaza. (*Id*. at 3 & Attach. 2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop, "Defendant [ ] Filli [ ] falsely accused Plaintiff of having a lit marijuana blunt in his ashtray" and that when instructed to exit his vehicle, Plaintiff put items down the side of his seat and eventually drove away from the officer. (Dkt. No. 1 at 3.) After he allegedly fled the scene, Plaintiff alleges that Defendant Filli falsely accused Plaintiff of making four "u-turns" on the interstate and, at one point, traveling at 127 miles per hour, and made "several [other] vehicle and traffic law violations." (*Id*.) Defendant Filli eventually lost sight of Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

On or about April 11, 2017, Plaintiff alleges that he was contacted by his attorney, [3] who informed Plaintiff that he had received a call from Defendant Sharp, the Albany County District Attorney, regarding the incident with Defendant Filli on April 9, 2017. Plaintiff alleges that his attorney informed him that if he did not turn himself in, a warrant would be issued for his arrest. (Dkt. No. 1 at 4.) On the advice of his attorney, Plaintiff alleges that he appeared at the Albany City Courthouse on April 18, 2017, "to address the matter in good faith and resolve any and all confusion[.]" (*Id*.) Plaintiff alleges that when he arrived at the courthouse with his attorney, he was arrested by Defendant Hurley for charges "lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id*.)

**\*2** Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id*.) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned

on charges from both the Town of Guilderland and the City of Albany. (*Id*.)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id*. at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id*.)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id*.) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id*.) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id*. at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of **New York** failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of **New York**;

$5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id*. at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 **WL** 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."

*Cash*, 2010 **WL** 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of* **New York**, 607 F.3d 18, 21 (2d Cir. 2010)).[4]

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that — ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[5]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at \*2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at \*10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However,

Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli, Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

### B. Claims Against the State of New York

**\*5** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.

🚩 *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See* 🚩 *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

### C. Claims Against Defendants Sharp and Soares

#### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also* 🚩 *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); 🚩 *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing 🚩 *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity "when she acts as an 'advocate.' " *Id.* (citing 🚩 *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting 🚩 *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolutely immunity attaches even

if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity— when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 **WL** 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 **WL** 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity.

*D'Alessandro*, 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of **New York***, 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of **New York**. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

*\*7* For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

#### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g.,* *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under **New York** law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 **WL** 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in **New York** is three years. *Shomo v. City of **New York***, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See* *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on

initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at \*3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato*, 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.*, when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388-89); *see also Thomas v. Heid*, 17-CV-1213, 2017 WL 9673716, at \*3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted*, 2018 WL 1773130 (N.D.N.Y. Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at \*3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

#### ii. *Miranda* Claim Against Defendant McCrindle

**\*8** As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at \*7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in § 1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dep't*, 96-CV-0756E, 1999 WL 1067560, at \*2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

#### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42

U.S.C. § 1983." 🚩 *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the 🚩 § 1983 plaintiff) have terminated in his favor." 🚩 *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against
### Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 **WL** 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 **WL** 3887872 (E.D.N.Y. Sept. 5, 2017).

**\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff

alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 **WL** 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 **WL** 3983635 (July 25, 2016) (Sharpe, J.); *see* 🚩 *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing 🚩 *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of **New York**, which is immune from suit.

## VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." 🚩 *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." 🚩 *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* 🚩 *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." 🚩 *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993);

*accord, Brown v. Peters*, 95-CV-1641, 1997 **WL** 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

**\*10** I recommend that Plaintiff's claims against Defendant State of **New York** be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 **WL** 2999109, at *10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against **New York** State Police), *report and recommendation adopted by*, 2020 **WL** 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 **WL** 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 **WL** 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 **WL** 5904789, at *3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 **WL** 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 **WL** 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument

or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 **WL** 316935, at *7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of **New York** the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28

U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2021 WL 3037709

---

## Footnotes

1    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2    "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

3    Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

4    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access

to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of ⚑ 28 U.S.C. § 1915(g) as of the date this action was commenced.

5    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." ⚑ *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

6    The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

7    Plaintiff also alleges that he "filed a claim in the **New York** State Court of Claims [against the State of **New York**] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. ⚑ *Martin v. **New York** State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 **WL** 5107119, at *7 (N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the **New York** Court of Claims public docket, Plaintiff's case against the State of **New York**, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of **New York** in accordance with the service requirements set forth in the ⚑ **New York** Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of **New York***, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

8    The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of **New York** liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of **New York** is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under ⚑ 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

9    Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of **New York***, 13-CV-929, ⚑ 2016 **WL** 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from ⚑ *Covington v. City of **New York***, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

10    Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials— presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

11    Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned

on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

12      *See also* *Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds,* 682 F. App'x 30.

13      As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

14      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   11

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation. [1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,

the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false
arrest claims against Defendants Filli and Hurley in their
individual capacities; (3) Plaintiff's claim for a *Miranda*
violation against Defendant McCrindle in his individual
capacity; and it is
further

**\*2** **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,
to the U.S. Marshal for service upon Defendants Filli, Hurley
and McCrindle, and those Defendants are directed to respond
in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Slip Copy, 2021 WL 3032691

**Footnotes**

---

1      When no objection is made to a report-recommendation, the Court subjects that report-recommendation to
       only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing
       such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record
       in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at
       *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's]
       report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal
       quotation marks omitted).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ramon FLORES, Plaintiff,
v.
Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).
|
Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell, Hauppauge, NY, for defendants Thomas J. Spota III, Linda Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavitta & Contini LLP, Garden City, NY, for defendants Robert C. Mitchell, Edward Vitale, and Douglas O'Connor.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings this action against Suffolk County Executive Steve Levy ("Levy"), Suffolk County District Attorney Thomas J. Spota III ("Spota"), Assistant District Attorneys Linda Kevins ("Kevins"), Dana Brown ("Brown"), and John Scarglato ("Scarglato") (collectively, "defendant prosecutors"), Suffolk County Court Judge Louis J. Ohlig ("Judge Ohlig") (collectively, "County Defendants"), Legal Aid Society Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed" Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor") (collectively, "Legal Aid defendants"), John A. Bray, and Wilma Peterson alleging malicious prosecution, conspiracy under 🚩 42 U.S.C. § 1983, and deliberate indifference, all arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to Fed.R.Civ.P. 12(c). For the following reasons, defendants' motions are granted.

**I. BACKGROUND**

**A. Facts**

The following facts are taken from the complaint and are not findings of fact by the court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

On February 20, 2003, Flores was arrested in Suffolk County and charged with one count of criminal assault in the second degree and one count of criminal contempt in the first degree. (Compl.¶ 1.) On February 25, 2003, an unidentified man came to see Flores and told him it was not advisable that he testify before the grand jury. (Compl.¶ 3.) The unidentified man stated that he was not an attorney and that he could not answer any additional questions. (Compl.¶ 3.) Later that afternoon, plaintiff appeared before the court and was provided with what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County Court and arraigned on indictment 493-03, which charged plaintiff with: 3 counts of assault in the second degree, 2 counts of criminal contempt in the first degree, aggravated contempt, and menacing. (Compl.¶ 4.) Plaintiff informed the court that he still had no formal attorney of record. (Compl.¶ 4A.) The Court appointed a Legal Aid attorney to represent plaintiff. (Compl.¶ 4B.) After the arraignment, plaintiff complained to Legal Aid attorney Douglas O'Connor that plaintiff was not provided with an attorney at an earlier stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a motion to dismiss would be filed on the grounds that plaintiff was not afforded an opportunity to testify before the grand jury, and that plaintiff was not provided counsel at the time the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his appointed Legal Aid attorney Edward Vitale. (Compl.¶ 5.) Plaintiff reviewed the proposed motion to dismiss. (Compl.¶ 5.) Plaintiff was unhappy that the motion did not raise the issue of plaintiff's prior lack of representation. (Compl.¶ 5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶

5.) Vitale became angry with plaintiff and told plaintiff he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitalerequested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

**\*2** On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a

loss of actual teeth, when, in fact, it was "broken bridge work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶ 9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired with bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which wasbroken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

**\*3** On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

B. Procedural History

On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed an answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

C. Defendant's Motion to Strike

On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to explain why she mistakenly described her broken bridge work as her bottom teeth:

  **\*4**  The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.

The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.

For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.

When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.

I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5** (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra,* based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and

he was directed to file his opposition by September 15, 2008, which plaintiff did do.

## D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir.2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir.2005).* The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007)* (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing theform of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir.2002)* (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.2000)*); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6** Finally, in connection with a motion to dismiss under Rule 12(b) (6), as noted above, the Court may only consider

"facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis,* 421 F.3d at 100; *accord Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff appended certain documents to his complaint and the Court has confined its review to the face of the complaint and the documents attached thereto by plaintiff.

## II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

### A. The Legal Aid Attorneys and Ms. Peterson

Plaintiff asserts Section 1983 claims against (1) Ms. Peterson based upon her allegedly false testimony in connection with his criminal case; and (2) his Legal Aid Attorneys for their alleged failure to adequately represent him in connection with his initial indictment. As discussed below, the Section 1983 claims against these defendants fail as a matter of law because (1) none of these defendants are state actors; and (2) plaintiff's conclusory allegations of conspiracy between these defendants and state actors cannot withstand a motion to dismiss. [1]

### (1) State Action Requirement

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

**\*7** In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS)(MLO), 2001 U.S. Dist. LEXIS 7786, at \* 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aidattorneys). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g., Elmasri v. England,* 111 F.Supp.2d 212, 221

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

(E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe*, 460 U.S. at 329-30); *see also Mitchell v. Mid-Erie Counseling Service*, No. 05-CV6169 CJS(P), 2005 WL 1579810, at *3 (W.D.N.Y. June 29, 2005) (" 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell*, 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello*, 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman*, 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

### (2) Conspiracy Pursuant to § 1983

**\*8** The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section 1983 conspiracy claim. *See Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity

acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York*, No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello*, 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski*, 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello); Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek*, No. 3:05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981).

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium

of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant[']s meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman,* 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, *Fisk v. Letterman,* 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

### i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See* ⚑*Ciambriello,* 292 F.3d at 324 (dismissing ⚑Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g .,* ⚑*Rzayeva v. United States,* 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiffs' vague and conclusory allegations against private 'conspirators' are entirely unclear, unsupported by facts, and insufficient to substantiate their claims."); ⚑*Fiske,* 401 F.Supp.2d at 377 ("Communications between a private and a state actor,

without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also* ⚑*Marion v. Groh,* 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing ⚑Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

### ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." ⚑*Ciambriello,* 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the ⚑Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also Green v. Bartek,* No. 3:05CV1851 (SRU), 2007 WL 4322780, at \*3 (D.Conn. Dec. 7, 2007) (dismissing ⚑Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); ⚑*Williams v. Jurow,* No. 05 Civ. 6949(DAB), 2007 WL 5463418, at \*12 (S.D.N.Y. June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted

state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").

 *11  In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

(3) Other Defects in Claims
against the Legal Aid Defendants

In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no

federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under Section 1983. *See Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are barred by Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994). [3]

 *12  Finally, even assuming *arguendo* that some Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred.

With respect to 📁 Section 1983 and 📁 1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. 📁 *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( 📁 Section 1983), *cert. denied,* 538 U.S. 922 (2003); 📁 *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) ( 📁 Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible 📁 Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

### B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immune from a civil suit for damages under 📁 Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and

pursuing a criminal prosecution is immune from a civil suit for damages under 📁 § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting 📁 *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a] absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at * 12 (E.D.N.Y. Mar. 27, 2007) (citing 📁 *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting 📁 *Imbler,* 424 U.S. at 419 n. 13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." 📁 *Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." 📁 *Hill,* 45 F.3d at 660 (quoting 📁 *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007 U.S.App. LEXIS 28939, at *3-*4 (2d Cir. Dec. 12, 2007) (quoting 📁 *Imbler,* 424 U.S. at 430); 📁 *Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." 📁 *Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." 📁 *Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003)

("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at * 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U .S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform

the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted).

"[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir.1997.) The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity. [4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at *2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the claim of malicious prosecution against [the ADA] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their presentation of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

**\*15** Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

### C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra.* Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra.*

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

### D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once even when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. [6] As discussed in detail *supra,* it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have Section 1983 liability given the allegations in plaintiff's complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at \*11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to

repled should be denied."); *see also* Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to repled is rightfully denied").

### III. CONCLUSION

**\*16** For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See* Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 4394681

---

### Footnotes

1    As a threshold matter, there is a substantial question as to whether plaintiff can proceed at all on a malicious prosecution claim for his acquitted counts because they were so closely intertwined with his counts of conviction and are both felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See* Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir.1989) (holding that claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also* Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on assault in the second degree does not necessarily bar a malicious prosecution claim on assault in the first degree or attempted assault in the first degree; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses, "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." Pichardo v. N.Y. Police Dep't., No. 98-CV-429 (DLC), 1998 WL 812049, at \*3 (S.D.N.Y. Nov. 18, 1998) (citing Janetka, 892 F.2d at 190); *see also* Ostroski v. Town of Southold, 443 F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing factors). Analyzing the various factors in the instant case-including that both crimes are felonies (and thus are both serious crimes), and arose out of the same incident-the Court concludes that the existence of probable cause as to the counts of conviction should preclude a malicious prosecution claim on the acquitted counts. In fact, as the judge who presided over the bench trial noted, the basis for the acquittal on the assault in the first degree (despite the conviction for assault in the second degree) was the prosecution's failure to demonstrate serious injury. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." Pichardo, 1998 WL 812049, at \*4 (finding conviction on misdemeanor charge precluded malicious prosecution on felony assault count arising out of same incident). In any event, the Court finds that there are numerous other grounds for dismissal of the case, discussed in detail *infra*.

2    Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous. *See, e.g.,* Liner v. Goord, 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous, malicious, or fails to states [sic] a claim upon which relief may be granted' ") (quoting 28 U.S.C. § 1915(a) & (b)(1)).

3    The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

4    To the extent that plaintiff is attempting to argue that absolute immunity should not apply because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

5    Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

6    In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1092681
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Neal BENJAMIN, Plaintiff,

v.

James M. BRANDEN, Esq., Defendant.

21-CV-4927 (LDH) (CLP)
|
Signed 04/12/2022

**Attorneys and Law Firms**

Neal Benjamin, White Deer, PA, Pro Se.

James M. Branden, Law Office of James M. Branden, Staten Island, NY, for Defendant.

### MEMORANDUM & ORDER

BRIAN M. COGAN, United States District Judge:

**\*1** Plaintiff Neal Benjamin, currently incarcerated at Allenwood Low Federal Correctional Institution in White Deer, Pennsylvania, brings this *pro se* action for damages under 42 U.S.C. § 1983 [1] against an attorney who represented him in an appellate proceeding before the United States Court of Appeals for the Second Circuit. Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. For the following reasons, the action is dismissed.

### BACKGROUND

Plaintiff was convicted of several drug crimes following a jury trial in the United States District Court for the Western District of New York, *United States v. Benjamin*, No. 97-cr-133-2 (W.D.N.Y., filed June 30, 1997, closed Jan. 23, 2009). Plaintiff is currently serving a thirty-year sentence for that conviction. *See United States v. Benjamin*, 391 F. App'x 942, 948 (2d Cir. 2010). In 2019, in the United States District Court for the Western District of New York, plaintiff filed, and was denied, a motion to reduce his sentence pursuant to 18 U.S.C. § 3582 and the First Act of 2018. *See United States v. Benjamin*, No. 97-cr-133-2 (W.D.N.Y.), ECF Nos. 927, 939.

He appealed the denial of his motion to reduce his sentence to the Second Circuit; that appeal is pending. *United States v. Benjamin*, No. 19-3636-cr (2d Cir. filed Nov. 1, 2019).

Here, plaintiff is suing the attorney who previously represented [2] him on that appeal, James Branden ("Branden"), who is located in Staten Island, New York, and a member of the Second Circuit's Criminal Justice Act ("CJA") Panel, alleging that Branden was "derelict in his constitutional duties under the Sixth (6[th]) Amendment for his failure to pursue relief that would have been afforded to [plaintiff].". Specifically, plaintiff alleges that Branden failed to heed information that plaintiff emailed to him regarding the Second Circuit's 2010 decision, *United States v. Benjamin*, 391 F. App'x 942, "that places my conviction under 'covered offense' as defined by Section 404 of the First Step Act" and that Branden filed "two (2) adverse petitions," a motion to withdraw the merits brief filed on March 19, 2021 and a motion to dismiss the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967).

### DISCUSSION

### I. Standard of Review

Under 28 U.S.C. Section 1915 (e)(2)(B), "[n]otwithstanding any filing fee, or any portion thereof that may have been paid," [3] a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

**\*2** The Court construes plaintiff's *pro se* pleadings liberally particularly because they allege civil rights violations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008). Courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest," *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-76 (2d Cir. 2006) (internal quotation marks omitted). However, a complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quotations and citations omitted). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quotations omitted).

## II. Violation of Civil Rights: Improper Defendant

Plaintiff brings this lawsuit against his attorney pursuant to 42 U.S.C. § 1983. Compl. at 1. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (citing 42 U.S.C. § 1983). "Thus, to state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under the color of state law.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

"[T]he law is clear that an attorney appointed pursuant to the CJA who performs 'a lawyer's traditional functions as counsel to a defendant in a criminal proceeding' is not a state actor. *Jiau v. Hendon*, No. 12 CIV. 7335, 2014 WL 559004, at *8 (S.D.N.Y. Feb. 12, 2014) quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding") and citing *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); *Cooper v. Barnet*, No. 15-CV-1498,

2015 WL 4619993, at *3 (E.D.N.Y. July 30, 2015) (whether defense counsel was privately retained or was appointed by the Court to defend plaintiff in the underlying criminal case is "immaterial because attorneys generally do not act under color of state law."). Additionally, plaintiff has not alleged that defendant acted jointly with a state actor or conspired with a state actor to deprive plaintiff of some constitutional right. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (private actors may be considered to be acting under the color of state law for purposes of § 1983 if the private actor was a "'willful participant in joint activity with the State or its agents.'"). Because plaintiff has failed to plausibly allege that defendant acted under color of state law, the complaint fails to state a claim for relief against him under § 1983 and is therefore dismissed. 28 U.S.C. § 1915(e)(2)(b)(ii).

## CONCLUSION

Accordingly, plaintiff's § 1983 action is dismissed for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Defendant's motion to dismiss is denied as moot.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies *in forma pauperis* status for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**\*3** The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

## All Citations

Slip Copy, 2022 WL 1092681

**Footnotes**

1      Plaintiff filed a complaint on August 25, 2021, a "Civil Action for Deprivation of Rights pursuant to 🚩 42 U.S.C. § 1983," and an amended complaint. The latter two documents repeat the allegations of his complaint.

2      Plaintiff is currently represented by another CJA attorney. *See United States v. Benjamin*, No. 19-3636-CR, ECF No. 102 (Order Relieving James M. Branden as Appellate Counsel to Benjamin).

3      Plaintiff has paid the filing fee.

---

**End of Document**            © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 77 of 182

2002 WL 31528632
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Trevor L. BROOKS, Plaintiff,

v.

THE NEW YORK STATE SUPREME COURT,
APPELLATE DIVISION FIRST DEPT.; the Disciplinary
Committee, First Dept.; Thomas J. Cahill Chief Counsel
and Raymond Vallejo Attorney for Disciplinary
Committee; Michael Ross, Attorney at Law, Defendants.

No. 02–CV–4183 (RR).
|
Aug. 16, 2002.

**Synopsis**
Disbarred attorney brought § 1983 action against court,
disciplinary committee and various attorneys, alleging racial
discrimination. The District Court, Raggi, J., held that: (1)
court and committee were entitled to absolute immunity;
(2) plaintiff's attorney was not state actor; and (3) *Younger*
abstention was warranted.

Dismissed.

West Headnotes (4)

**[1]**   **Civil Rights**  👉  States and territories and their
agencies and instrumentalities, in general

State court is not "person" subject to suit under
§ 1983. 🚩 42 U.S.C.A. § 1983.

6 Cases that cite this headnote

**[2]**   **Civil Rights**  👉  Judges, courts, and judicial
officers

State court and disciplinary committee were
absolutely immune from 🚩 § 1983 liability for
their conduct in disciplinary proceeding, absent
allegation that any non-judicial actions were
taken, or that there was complete absence of all
jurisdiction. 🚩 42 U.S.C.A. § 1983.

7 Cases that cite this headnote

**[3]**   **Civil Rights**  👉  Attorneys and witnesses

Private counsel retained to represent attorney in
disciplinary proceeding was not state actor, and
thus could not be held liable to attorney under
🚩 § 1983. 🚩 42 U.S.C.A. § 1983.

7 Cases that cite this headnote

**[4]**   **Federal Courts**  👉  Professional or other
services;  malpractice

*Younger* abstention was warranted in attorney's
🚩 § 1983 action against participants in on-going
state disciplinary proceedings. 🚩 42 U.S.C.A. §
1983.

MEMORANDUM AND ORDER

RAGGI, J.

**\*1**  Plaintiff Trevor L. Brooks, a disbarred attorney
proceeding pro se, sues defendants the New York State
Supreme Court, Appellate Division First Department ("First
Department"), the court's Disciplinary Committee, the
Committee's Chief Counsel Thomas J. Cahill, a Committee
Attorney Raymond Vallejo, and his own retained counsel
Michael Ross,[1] pursuant to 🚩 42 U.S.C. §§ 1983 and
🚩 1985 for racial discrimination in connection with his
disbarment. Plaintiff demands compensatory damages and an
injunction ordering his reinstatement to the New York bar.

Brooks was admitted to practice law in the State of New York
by defendant First Department in 1976. According to Brooks's
Complaint, in 1996, he decided to relocate to Jamaica and
requested from the First Department a two-year leave of
absence and/or permission to resign from the practice of law.
Apparently, at that time, two disciplinary complaints were
outstanding against Brooks. The First Department's decision
to pursue these complaints, as well as several others filed
against Brooks after he relocated to Jamaica, are at issue in
this case.

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 78 of 182

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

I. *Sua Sponte Dismissal*

28 U.S.C. § 1915(e)(2) provides that the court shall dismiss a case where it determines that the action is frivolous, or fails to state a claim on which relief may be granted. A complaint "is frivolous where it lacks an arguable basis either in law or in fact"; i.e., where it is "based on an indisputably meritless legal theory" or presents "factual contentions [which] are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see Alaji Salahuddin v. Alaji,* 232 F.3d 305, 306–7 (2d Cir.2000); *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990). Where, as here, the court "can rule out any possibility, however unlikely it might be, that an amended complaint could succeed in stating a claim," dismissal is appropriate. *Gomez v. USAA Fed. Sav. Bank.,* 171 F.3d 794, 796 (2d Cir.1999); *see also Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (holding that a district court may dismiss a frivolous claim *sua sponte* even when the plaintiff has paid the required filing fee). Thus, because Brooks has failed to provide a sound legal basis for his claim, this court hereby dismisses his action *sua sponte.*

II. *Claims Against the Court and Disciplinary Committee*

**[1]**   "Neither a state nor its officials acting in their official capacities are persons under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Section 1983 does not provide a federal forum for litigants who seek a remedy against the State for alleged deprivations of civil liberties, as the Eleventh Amendment bars such suits. *Id.* at 66. The state court is thus not subject to suit under § 1983, rendering Plaintiff's claim meritless. *See Zuckerman v. Appellate Div.,* 421 F.2d 625, 626 (2d Cir.1970) (state court is part of "judicial arm of the state of New York" and thus not subject to suit under § 1983).

**\*2**   **[2]**   Additionally, a state court and, by extension, its members, are immune from a suit for damages for their judicial acts performed in their judicial capacities. *See Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 734, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Defendants

are alleged to have initiated and conducted disciplinary proceedings against plaintiff in a discriminatory manner in violation of 42 U.S.C. § 1985. These proceedings resulted in the recommended disbarment of plaintiff and said recommendation was confirmed by the New York State Supreme Court, Appellate Division, First Department.

The absolute judicial immunity of the court and its members "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." *Mireles,* 502 U.S. at 11, 13 (quotation omitted). The only way that this immunity can be overcome is if the court is alleged to have taken nonjudicial actions or if judicial actions taken were "in the complete absence of all jurisdiction." *Id.* at 11–12.

"State bar disciplinary hearings ... constitute ... state judicial proceedings." *Whitely v. Comsat Corp.,* No. 00 Civ. 9401(WHP), 2001 WL 1135946, at \*4 (S.D.N.Y. Sept.25, 2001) (citing *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 433—434, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). In New York, in the matter of attorney disciplinary proceedings, the Appellate Division has exclusive jurisdiction. *Paladin v. Finnerty,* No. 92 CV 2792(JG), 1996 WL 1088915, at \*2 (E.D.N.Y. Mar.28, 1996) (citing N.Y. Judiciary Law §§ 90(1)—(2)), *aff'd,* 104 F.3d 356 (2d Cir.1996). State bar disciplinary proceedings have been found to be "clearly judicial in nature," and thus quasi-judicial immunity is available to members of disciplinary committees and panels. *Lipin v. Nat'l Union Fire Ins. Co. of Piitsburgh, PA.,* 202 F.Supp.2d 126, 134–35 (S.D.N.Y.2002) (quoting *Sassower v. Mangano,* 927 F.Supp. 113, 120–21 (S.D.N.Y.1996)); *see also Barbara v. New York Stock Exchange, Inc.,* 99 F.3d 49, 58 (2d Cir.1996) (noting that courts of appeals have extended absolute immunity to members of bar association disciplinary committees).

Plaintiff has not alleged that any of the defendants have taken nonjudicial actions or that the actions taken were done in the absence of all jurisdiction. Indeed, initiating a disciplinary proceeding and confirming a recommendation by the hearing Referee and Hearing Panel is well within the jurisdiction of the defendants. Therefore, plaintiff's first cause of action

Case 6:23-cv-00431-LEK-ML    Document 9    Filed 05/10/23    Page 79 of 182

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

seeking damages is dismissed as against the state court, the Disciplinary Committee, and defendants Cahill and Vallejo.

The Court's inquiry does not end there however, for plaintiff also seeks injunctive relief in the form of reinstatement to the practice of law or a hearing regarding the alleged violations. Plaintiff cites *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), as authority which allows a state court to be sued for declaratory or injunctive relief under section 1983 for acts performed in its enforcement capacity. Subsequent to this decision, the Supreme Court extended this doctrine in *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), and ruled that prospective injunctive relief could be granted against a judicial officer acting in his or her judicial capacity. However, in 1996 Congress enacted the Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104–317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983), which effectively reversed the Court's ruling in *Pulliam.* Section 309(c) of the FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." Therefore, plaintiff's claim for injunctive relief is also dismissed.

### III. *Plaintiff's Claim against his Attorney*

**\*3** Plaintiff has also filed a claim against his former attorney, defendant Michael Ross, under 42 U.S.C. § 1983. His allegations against defendant Ross, however, consist of allegations of professional misconduct rather than constitutional violations. A claim for relief under § 1983 must allege "the deprivation of a right secured by the Constitution or laws of the United States ... which has taken place under color of state law." *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir.1997). There are no such allegations here.

**[3]** Even if Plaintiff had alleged constitutional violations on the part of defendant Ross, such claims would fail to state a claim under § 1983 because a lawyer is generally not considered to be "a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson,* 454 U.S. 312, 318, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (recognizing the general consensus among the Courts

of Appeals); *see generally Cammer v. United States,* 350 U.S. 399, 405, 76 S.Ct. 456, 100 L.Ed. 474 (1956) ("The word 'officer' as it has always been applied to lawyers conveys quite a different meaning from the word 'officer' as applied to people serving as officers within the conventional meaning of that term.").

It is well settled that public defenders, *Polk County,* 454 U.S. at 325, and court-appointed attorneys, *Rodriguez,* 116 F.3d at 65, do not act under color of state law when representing criminal defendants. The role of a privately retained attorney is even more remote to the state than that of public defenders and court-appointed attorneys in that he has an obligation to advance the undivided interests of his client, *see Polk County,* 454 U.S. at 318–319, and his license to practice law does not place him "so close to the core of the political process as to make him a formulator of government policy." *In re Griffiths,* 413 U.S. 717, 729, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). Consequently, a privately retained attorney does not act under color of state law within the meaning of § 1983 when representing a client in a civil matter. Accordingly, the Court finds that defendant Ross did not act under color of state law and cannot be held liable under section 1983.

Section 1983 "was enacted to redress civil rights violations by persons acting under color of State law" and should not be used by clients disappointed with the performance of their attorneys. *Mitchell v. Cohen,* No. 90 CV 1836(TCP), 1990 WL 100254, at \*1 (E.D.N.Y. Jun.13, 1990). Complaints about the behavior or performance of an attorney should be addressed to the Grievance Committee of the appropriate State Appellate Division. *Id.*

### IV. *Younger Abstention*

**[4]** Furthermore, even if plaintiff were not barred for the reasons noted above, this Court would have to abstain from considering this case pursuant to *Younger v. Harris,* 401 U.S. 37 (1971), which holds that federal courts should refrain from interfering with pending state judicial proceedings except under special circumstances. "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.' " *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515,

Brooks v. New York State Supreme Court, Appellate Div...., Not Reported in...

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 80 of 182

73 L.Ed.2d 116 (1982) (quoting 🚩 *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)). The State of New York obviously has an important interest in regulating the conduct of attorneys licensed by the state and the New York courts are "competent to consider and determine federal constitutional questions." *Hayes v. State of New York,* No. 01–CV–0545E (SR), 2001 WL 1388325, at *3–4 (W.D.N.Y. Nov.1, 2001). Here, plaintiff notes that he has appealed his disbarment to the New York State Court of Appeals and expects a ruling sometime in August 2002. The *Younger* doctrine is not only applicable to any ongoing attorney disciplinary proceeding, *id.* at 3, but it is also applicable to the pending appeal in state court. *See Davidson v. Garry,* 956 F.Supp. 265, 269 n. 2 (E.D.N.Y.1996) (Bartels, J.) (citing

🚩 *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 368, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) in extending the *Younger* principles to state civil proceedings), *aff'd,* 112 F.3d 503 (2d Cir.1997)). "[W]hen *Younger* abstention is applicable, abstention is mandatory." *Hayes,* 2001 WL 1388325 at *3 (citing *Schlagler v. Phillips,* 166 F.3d 439, 441 (2d Cir.1999)).

V. *Conclusion*

 **\*4** For all of the above stated reasons, plaintiff's complaint is dismissed and his request for a preliminary injunction is denied.

*SO ORDERED.*

CIVIL JUDGMENT

Pursuant to the order issued *August 16, 2002* by the Honorable Reena Raggi, dismissing the complaint and denying the request for a preliminary injunction, it is
ORDERED, ADJUDGED AND DECREED: That the complaint is hereby dismissed and the request for a preliminary injunction is hereby denied.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 31528632

---

## Footnotes

1    The Court notes that it has received a letter written on behalf of an attorney named Michael Jay Ross. The letter explains that plaintiff's complaint was served on Michael Jay Ross in error and that Michael Jay Ross is a different person from the Michael Ross named in the complaint. According to the letter, a copy of the summons and complaint has been forwarded to the correct defendant. Since this case is being dismissed in its entirety, the Court will take no further action regarding the error in service.

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 81 of 182

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

 **2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:23-cv-00431-LEK-ML    Document 9    Filed 05/10/23    Page 83 of 182

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 85 of 182

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 6:23-cv-00431-LEK-ML    Document 9    Filed 05/10/23    Page 86 of 182

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16579207
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lowell J. BRITT; also known
as Lowell J. Britt, IV, Plaintiff,

v.

John DOE, State of New York; Jane Doe, State
of New York; John Doe, Broome County District
Attorney's Office; Jane Doe Broome County District
Attorney's Office; David Harder, Sheriff, Broome
County Sheriff's Dep't; Nicholas Miller, Sheriff,
Broome County Sheriff's Dep't; and Sheriff John
Doe, Broome County Sheriff's Dep't, Defendants.

3:22-CV-0692 (GLS/ML)
|
Signed October 13, 2022

**Attorneys and Law Firms**

LOWELL J. BRITT, Plaintiff, Pro Se, Orleans Correctional
Facility, 3531 Gaines Basin Road, Albion, New York 14411.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 4) to the Court for review. For the reasons
discussed below (1) Plaintiff's amended motion for leave to
proceed *in forma pauperis* (Dkt. No. 4) is granted, and (2) I
recommend that his Complaint (Dkt. No. 1) be (a) accepted
in part for filing, and (b) dismissed in part (i) with leave to
amend, and (ii) without leave to amend.

### I. BACKGROUND

Liberally construed, [1] Plaintiff's Complaint [2] asserts that his
rights were violated by the following seven defendants: (1)
John Doe, State of New York, [3] (2) Jane Doe, State of New
York, [4] (3) John Doe, Broome County District Attorney's
Office, (4) Jane Doe, Broome County District Attorney's
Office, (5) David Harder, Sheriff, Broome County Sheriff's
Department, (6) Nicholas Miller, Sheriff, Broome County
Sheriff's Department, and (7) Sheriff John Doe, Broome

County Sheriff's Department (collectively "Defendants"). [5]
(*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that he leased the property
located at 196-Twist Run Road, Endicott, New York (the
"Property"). (Dkt. No. 1 at 32.) Plaintiff alleges that on July
15, 2021, at approximately 1:00 p.m., he was at the Property
with his two minor children when two Broome County
Sheriff's Department deputies (Defendant Sheriff John Doe,
Broome County Sheriff's Department and Defendant Miller)
arrived to serve him with a Family Court issued temporary
order of protection (the "Order"). (Dkt. No. 1.) Plaintiff
alleges that the Order barred him from contacting the mother
of his children (Jasmine Brown) and his children. (*Id.*)
Plaintiff alleges that he, Defendant Miller, Defendant Sheriff
John Doe, and Ms. Brown came to an agreement whereby,
Ms. Brown and the children would remain at the Property for
the night and Plaintiff would vacate. (*Id.*)

Plaintiff alleges that he left the Property and some time later,
he viewed his home security cameras where he observed Ms.
Brown packing up the children's belongings and leaving the
Property. (*Id.*)

**\*2** Plaintiff alleges that he contacted Defendant Miller
about Ms. Brown leaving the Property—in violation of the
oral agreement that they previously reached—and Defendant
Miller advised Plaintiff that there was nothing Defendant
Miller could do. (*Id.*) Plaintiff alleges that his neighbor
informed him that the Property was left unsecured with the
front door and garage door left open. (*Id.*) Plaintiff alleges
that he again contacted Defendant Miller to inform Defendant
Miller that Plaintiff intended to return to the Property because
it was left un-secured and that Defendant Miller did not tell
Plaintiff not to return. (*Id.*) Plaintiff alleges that, as a result,
and because Ms. Brown and the children were no longer at
the Property, he returned to the Property. (*Id.*)

Plaintiff alleges that on July 16, 2021, he was arrested
for criminal contempt in the second degree in violation of
New York Penal Law § 215.50. (*Id.*) In addition, Plaintiff
alleges that a parole violation was filed against him based on
the warrant for his arrest. (*Id.*)

Plaintiff alleges that Defendant Miller filed a criminal
complaint charging Plaintiff with criminal contempt, that
contained false information. (Dkt. No. 1, Attach. 1 at 6.) More
specifically, Plaintiff alleges that, in contrast with the criminal
complaint filed by Defendant Miller, (1) he was not advised

to stay away from the Property, (2) the Property was not the residence of Ms. Brown, and (3) Plaintiff did not make a "verbal admission" that he was present at the Property at the same time as Ms. Brown. (*Id.* at 6-8.)

Plaintiff alleges that at some point in time, he entered an "Alford" guilty plea to his parole violation. (Dkt. No. 1 at 21.)

Plaintiff alleges that on December 14, 2021, the criminal contempt charge against him was dismissed and his defense counsel accepted the dismissal without Plaintiff's consent or knowledge. (Dkt. No. 1, Attach. 1 at 9.) Plaintiff alleges that on January 15, 2022, he became aware that the dismissal of his criminal contempt charge was "in satisfaction" of his parole violation, but that Plaintiff objected to that disposition. (*Id.* at 10.) Plaintiff alleges that on June 14, 2022, the Court dismissed the criminal contempt charge "pursuant to the merits and a full dismissal accordingly sealing the matter in the Plaintiff[']s favor." (*Id.* at 11.)

Based on these factual allegations, Plaintiff appears to assert the following three causes of action against Defendants in their individual and official capacities: (1) a claim of false arrest pursuant to the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim of false imprisonment pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; and (3) a claim of malicious prosecution pursuant to the Fourth Amendment and 42 U.S.C. § 1983. (*See generally* Dkt. No. 1.)

As relief, Plaintiff seeks $5,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages. (*Id.*)

Plaintiff also filed an amended application to proceed *in forma pauperis*. (Dkt. No. 4.)

## II. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). [6] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate

accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 4), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District pursuant to Local Rule 5.1.4(b)(1)(B). (Dkt. No. 5.)

Accordingly, Plaintiff's amended application to proceed with this action IFP is granted. (Dkt. No. 4.)

## III. RELEVANT LEGAL STANDARD GOVERNING INTIAL REVIEW OF A COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [7]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the

Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned-the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

### A. Official Capacity Claims

"An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at \*9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.).

### 1. Claims Against Defendants John Doe, State of New York and Jane Doe, State of New York

New York State is immune from suits pursuant to 42 U.S.C. § 1983 seeking either legal or equitable relief, under the Eleventh Amendment. *Papasan v. Allain,* 478 U.S. 265, 276 (1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *see Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678E, 2003 WL 2443989, at \*3 (W.D.N.Y. Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are immune from such suit under the Eleventh Amendment."); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." (internal citations omitted)); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe, on the basis of such slender 'evidence,' that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("Using its authority under section 5 of the fourteenth amendment, Congress may abrogate the eleventh amendment in the absence of a waiver by the states, but the civil rights statute 42 U.S.C. § 1983 does not override the eleventh amendment." (internal citations omitted)).

As a result, I recommend that Plaintiff's claims against Defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities be dismissed.

### 2. Claims Against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official

capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. at 165-66. If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro v. City of New York,* 713 F. App'x 1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office, in their official capacities, are effectively claims against the State of New York. As a result, I recommend that these claims be dismissed.

### 3. Claims Against Defendants David Harder, Broome County Sheriff's Department; Nicholas Miller, Broome County Sheriff's Department; and Sheriff John Doe, Broome County Sheriff's Department

**\*5** With respect to Plaintiff's claims against Defendants Harder, Miller, and Sheriff John Doe, in their official capacities as employees of the County of Broome, I recommend that those claims be dismissed for failure to state a claim upon which relief may be granted.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under *Section 1983.* A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries,* 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell,* 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame,* 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 61 (2011). Municipal liability may

also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick,* 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of one discrete incident, during which a deputy employed by the Broome County Sheriff's Department allegedly did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with Defendants.

As a result, I recommend that Plaintiff's claims against Defendants David Harder (Broome County Sheriff's Department), Nicholas Miller (Broome County Sheriff's Department), and Sheriff John Doe (Broome County Sheriff's Department), in their official capacities, as employees of Broome County be dismissed at this time. *See Flagg v. NYS Division of Parole,* 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted by,* 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### B. Individual Capacity Claims

### 1. Claims Against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office

**\*6**  It is well-established that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.' " *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "In determining whether absolute immunity [applies], we apply a 'functional approach,' looking at the function being performed rather than to the office or identity of the defendant." *Hill*, 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see also Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("The appropriate inquiry ... is not whether authorized acts are performed with a good or bad motive, but whether the acts at issue are beyond the prosecutor's authority."); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (finding that prosecutorial immunity protects prosecutors from liability under section 1983 "for virtually all acts, regardless of motivation, associated with his function as an advocate").

The Second Circuit has "held that absolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial. The fact that such conspiracy is certainly not something that is <u>properly</u> within the role of a prosecutor is immaterial, because immunity attaches to his function, not to the manner in which he performed it.' " *Anilao v. Spota*, 27 F.4th 855, 865 (2d Cir. 2022) (quoting *Dory*, 25 F.3d at 83 (cleaned up)). "Thus, unless a prosecutor proceeds in the <u>clear absence of all jurisdiction</u>, absolute immunity [from § 1983 liability] exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Anilao*, 27 F.4th at 864 (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987) (emphasis added)). "Prosecutors thus have absolute immunity in a § 1983 action even if it turns out that 'state law did not empower [them] to bring the charges,' so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description." *Id.* at 865 (quoting *Barr*, 810 F.2d at 361).

Plaintiff does not appear to allege any factual allegations against a John or Jane Doe of the Broome County District Attorney's Office. (*See generally* Dkt. No. 1.) Instead, Plaintiff alleges in a conclusory fashion that the Broome County District Attorney's Office violated his due process rights and injured Plaintiff by filing a false complaint and failing to properly investigate the events on July 15, 2021. (Dkt. No. 1 at 2.) In addition, Plaintiff alleges that "the prosecutor ... knew or should have known that the [Property] was in fact [Plaintiff's] protected residence." (Dkt. No. 1 at 30.)

With this limited information, it appears that the actions of Defendants John and Jane Doe of the Broome County District Attorney's Office fall squarely within the scope of their authority as prosecutors, which would entitle them to the cloak of absolute immunity. I therefore recommend that any claims against Defendants John and Jane Doe of the Broome County District Attorney's Office be dismissed. *See Anilao*, 27 F.4th at 868 (holding that "under our precedent absolute immunity shields [prosecutors] for their prosecutorial and advocative conduct even in the absence of probable cause and even if their conduct was entirely politically motivated.").

### 2. Defendants John Doe, State of New York and Jane Doe, State of New York

The caption of the Complaint lists John Doe, State of New York and Jane Doe, State of New York but the body of the Complaint does not contain any factual allegations against a John or Jane Doe employed by the State of New York. Thus, I recommend that Plaintiff's claims against John Doe, State of New York, and Jane Doe, State of New York, in their individual capacities be dismissed. *See Johnson v. Gonzalez*, 14-CV-0745, 2015 WL 1179384, at \*6 (N.D.N.Y. Mar. 13, 2015) (Kahn, J.) (dismissing the claims against a defendant where the complaint lists the defendant's "name in the caption, but fails to again name or assert allegations against him."); *Serrano v. New York State Dep't of Envtl. Conservation*, 12-CV-1592, 2013 WL 6816787, at \*15 (N.D.N.Y. Dec. 20, 2013) (D'Agostino, J.) (citing *Jaffer v. Chemical Bank*, 93-CV-8459, 1994 WL 392260, at \*3 (S.D.N.Y. July 26, 1994) (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted")) (dismissing the plaintiff's claims against two defendants who were listed as parties in

the complaint and in the caption, but not elsewhere in the complaint).

### 3. Defendant Harder

**\*7** "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement). Before deciding *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel could be considered "personally involved" if

(1) the defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright*, 21 F.3d at 501 (additional citation omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.' " *Tangreti*, 983 F.3d at 618. The Second Circuit explained that, " 'the factors necessary to establish a [ § 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary. The violation must be established against the supervisory official directly." *Id.* (quoting *Iqbal*, 556 U.S. at 676). "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly." *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at \*10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

**\*8** Plaintiff's sparse allegations against Defendant Harder, assert that Defendant Harder failed to adequately train, enforce training, or supervise his officers on how to properly resolve domestic dispute incidents, specifically with respect to the right to property when an order of protection has been issued. (*See generally* Dkt. No. 1.) Plaintiff does not allege that Defendant Harder was personally involved in any violation of Plaintiff's rights. After the Second Circuit's ruling in *Tangreti*, these allegations are insufficient to plausibly suggest the personal involvement of Defendant

Harder. *See Powell v. City of Jamestown*, 21-CV-0721, 2022 WL 1913581, at *10 (W.D.N.Y. June 3, 2022) (citing *Guzman v. McCarthy*, 21-CV-1192, 2022 WL 630873, at *3 (N.D.N.Y. Mar. 4, 2022) (D'Agostino, J.) (mere allegation that prison superintendent failed to train his officers to protect inmates from harm was "not enough to plausibly allege the [superintendent's] personal involvement")) (dismissing the plaintiff's claims against the sheriff, undersheriff, and chief of police where "the Complaint mentions those individuals by name only in the caption and in a section introducing the parties. The allegation that defendants 'faile[d] to adequately train and supervise [their] employees relating to the use of force including but not limited to failing to treat medical conditions and preventing self harm' ... is conclusory and insufficient.").

As a result, I recommend that Plaintiff's claims with respect to Defendant Harder be dismissed.

### 4. Defendant John Doe, Broome County Sheriff's Department

Based on the Complaint and attachment, it appears as though Defendant "John Doe, Broome County Sheriff's Department" refers to the individual who accompanied Defendant Miller to the Property to serve the Order on Plaintiff. (Dkt. No. 1, Attach. 1 at 3.) However, the Complaint fails to allege facts plausibly suggesting any action taken by Defendant John Doe, Broome County Sheriff's Department. Defendant John Doe, Broome County Sheriff's Department's mere presence is insufficient to allege his personal involvement in the alleged constitutional violations at issue here. *See Roman v. City of Mount Vernan*, 21-CV-2214, 2022 WL 2819459, at *16 (S.D.N.Y. July 19, 2022) (quoting *Arbuckle v. City of New York*, 14-CV-10248, 🚩 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016)) (" 'Simply being present at the scene of an arrest does not suffice for personal involvement.' "). As a result, I recommend that Plaintiff's claims against Defendant John Doe, Broome County Sheriff's Department, be dismissed for failure to state a claim upon which relief may be granted.

### 5. Defendant Miller

#### a. False Arrest and False Imprisonment

To prevail on a claim of false arrest under the Fourth Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). Moreover, a 🚩 Section 1983 claim for false arrest under the Fourth Amendment is "substantially the same" as a claim of false imprisonment. 🚩 *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013); *see Smith v. City of Syracuse*, 19-CV-0997, 2020 WL 1937411, at *4 n.6 (N.D.N.Y. Apr. 21, 2020) (Sannes, J.) (" 'Claims brought under 🚩 Section 1983 are guided by state tort law.' 'In New York, the tort of false arrest is synonymous with that of false imprisonment.' " (citations omitted)); *Givans v. Jefferson Cnty. Sheriff's Office*, 13-CV-0906, 13-CV-0908, 2015 WL 13540492, at *12 n.18 (N.D.N.Y. Aug. 28, 2015) (Sannes, J.) (citing *Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012)) (" 'False arrest' is synonymous with 'false imprisonment' under New York law.").

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g.,* 🚩 *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's false arrest and false imprisonment claims against Defendant Miller in his individual capacity.

#### b. Malicious Prosecution

**\*9** To prevail on a claim of malicious prosecution, a plaintiff must allege facts plausibly suggesting the following: (1) the commencement or continuation of a criminal proceeding against him; (2) the termination of the proceeding in his favor; (3) that the state officials lacked probable cause; and (4) that the proceeding was instituted with malice. 🚩 *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).

Out of an abundance of caution, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must

be liberally construed, *see, e.g.,* 🔖 *Sealed Plaintiff*, 537 F.3d at 191, and without expressing an opinion as to whether Plaintiff can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's malicious prosecution claim against Defendant Miller in his individual capacity. [8]

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."

🔖 *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." 🔖 *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* 🔖 *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." 🔖 *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above with respect to Plaintiff's claims pursuant to 🔖 42 U.S.C. § 1983 against (1) Defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities, and (2) Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office, in their individual or official capacities.

**\*10** However, it is not clear whether better pleading would permit Plaintiff to assert a cognizable claim pursuant to 🔖 42 U.S.C. § 1983 against (1) Defendants John Doe, State of New York and Jane Doe, State of New York in their individual capacities, (2) Defendants Harder and Sheriff John Doe in their individual or official capacities, or (3) Defendant Miller in his official capacity. Out of deference to Plaintiff's *pro se*

status, I recommend that Plaintiff be granted leave to amend the Complaint with respect to his 🔖 Section 1983 claims against (1) Defendants John Doe, State of New York and Jane Doe, State of New York in their individual capacities, (2) Defendants Harder and Sheriff John Doe in their individual or official capacities, and (3) Defendant Miller in his official capacity.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as Defendants are involved in the allegedly unlawful activity. Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See* 🔖 *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court amend the docket such that (1) Defendant "John Doe" is changed to Defendant "John Doe, State of New York," (2) Defendant "Jane Doe" is changed to Defendant "Jane Doe, State of New York," and (3) Defendant State of New York is terminated; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims against Defendants John Doe, State of New York and Jane Doe, State of New York, in their individual capacities; (2) claims against Defendants David Harder and Sheriff John Doe in their individual and official capacities, and (3) claims against Defendant Miller in his official capacity, because they fail to state a claim upon which relief may be granted pursuant to 🔖 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims against Defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities, and (2) claims against Defendants John Doe, Broome County District Attorney's Office and Jane Doe, Broome County District Attorney's Office in their individual or official capacities, because they seek monetary relief against Defendants who are immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2022 WL 16579207

## Footnotes

1   The court must interpret *pro se* complaints to raise the strongest arguments they suggest. Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

2   Plaintiff attached an affidavit to the Complaint, which included additional details about the alleged wrongs. (Dkt. No. 1, Attach. 1.) Construing the Complaint liberally, as the Court must, the Court considered the additional factual details contained in the affidavit.

3   To conform with the Complaint, the Clerk of the Court is directed to amend the name of Defendant "John Doe" to "John Doe, State of New York," on the Court's docket. (Dkt. No. 1 at 1.)

4   To conform with the Complaint, the Clerk of the Court is directed to amend the name of Defendant "Jane Doe" to "Jane Doe, State of New York," on the Court's docket. (Dkt. No. 1 at 1.)

5   To conform with the Complaint, the Clerk of the Court is directed to terminate Defendant State of New York, on the Court's docket. (Dkt. No. 1 at 1.)

6   Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. See http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

7    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." 🚩 *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

8    Although not clear at this juncture the exact contours of the dismissal of Plaintiff's criminal charge, it appears as though it may have been an adjournment in contemplation of dismissal ("ACD"). (Dkt. No. 1 at 38.) However, based on the Supreme Court's recent decision in 🚩 *Thompson v. Clark*, 142 S. Ct. 1332 (2022), courts in this Circuit have deemed an ACD "a favorable termination for the purposes of a malicious prosecution claim." *Price v. Peress*, 18-CV-4393, 2022 WL 4638148, at *11 (E.D.N.Y. Sept. 30, 2022); *see Perez v. City of New York*, 20-CV-1359, 2022 WL 4236338, at *13 (S.D.N.Y. Sept. 14, 2022) (holding that "[i]n light of *Thompson*" the argument that an "ACD bars a malicious-prosecution claim because it leaves the question of innocence or guilt unanswered," is meritless); *McGaffigan v. City of Rochester*, 21-CV-6545, 2022 WL 2812359, at *2 (W.D.N.Y. July 19, 2022) (allowing the plaintiff to amend her complaint adding a malicious prosecution claim after she accepted an ACD, in light of the Supreme Court's decision in *Thompson*).

9    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 16571391
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lowell J. BRITT, Plaintiff,

v.

John DOE, State of New York et al., Defendants.

3:22-cv-0692 (GLS/ML)
|
Signed November 1, 2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Lowell J. Britt, Pro Se, Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, NY 14411.

## ORDER

Gary L. Sharpe, Senior District Judge

 **\*1** The above-captioned matter comes to this court following an Order and Report-Recommendation (R&R) by Magistrate Judge Miroslav Lovric, duly filed October 13, 2022. (Dkt. No. 7.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Order and Report-Recommendation (Dkt. No. 7) is **ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) **is DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO REPLEAD** as to:

> (1) claims against defendants John Doe, State of New York and Jane Doe, State of New York in their official capacities, and (2) claims against defendants John Doe, Broome County District Attorney's Office, and Jane Doe, Broome County District Attorney's Office in

their individual or official capacities, because plaintiff seeks monetary relief against defendants who are immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a); and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **DISMISSED WITH LEAVE TO REPLEAD** as to:

> (1) claims against defendants John Doe, State of New York and Jane Doe, State of New York, in their individual capacities, (2) claims against defendants David Harder and Sheriff John Doe in their individual and official capacities, and (3) claims against defendant Nicholas Miller in his official capacity, because they fail to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a); and it is further

**ORDERED** that, if plaintiff files an amended complaint, he is warned that any amended complaint must be a complete and separate pleading. Plaintiff must state all of his claims in the new pleading and may not incorporate by reference any part of his original complaint; and it is further

**ORDERED** that plaintiff's amended complaint shall be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that, if plaintiff files an amended complaint, such proposed amended complaint will be referred to Magistrate Judge Lovric for initial review; and it is further

**ORDERED** that, if plaintiff fails to file an amended complaint within the time permitted, the Clerk is directed to close this case without further order of the court; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 16571391

---

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

Neroni v. Peebles, Not Reported in Fed. Supp. (2014)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 99 of 182

2014 WL 12768331
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Titiana NERONI, Plaintiff,
v.
David E. PEEBLES, et al., Defendants.

3:14-CV-0584(GTS/ATB)
|
Signed 06/20/2014

**Attorneys and Law Firms**

Tatiana Neroni, Neroni Law Office, Delhi, NY, for Plaintiff.

**DECISIONS and ORDER**

Hon. Glenn T. Suddaby, U.S. District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Tatiana Neroni ("Plaintiff") against nine employees of the federal judiciary ("Federal Defendants") and 69 employees and agents of New York State ("State Defendants"), is Plaintiff's request for an Order removing United States Magistrate Judge David E. Peebles from assignment to this action and transferring this action to another district court. (Dkt. No. 4.) For the reasons set forth below, Plaintiff's request for removal and her request for transfer of venue are denied, and her Amended Complaint is *sua sponte* for frivolousness and lack of subject-matter jurisdiction.

**I. PLAINTIFF'S REQUEST TO REMOVE MAGISTRATE JUDGE PEEBLES**

The same day that Plaintiff filed a letter-request for an Order removing Magistrate Judge Peebles from assignment to this action (Dkt. No. 4), Magistrate Judge Peebles filed an Order of Recusal (Dkt. No. 6). As a result, this portion of Plaintiff's letter-request is denied as moot.

**II. PLAINTIFF'S REQUEST TO TRANSFER VENUE**

Plaintiff's letter-request for an Order "transfer[ring] the case to another court, preferably outside of the State of New York," is unsupported by a memorandum of law, affidavit, a citation to the operative rule(s) or statute(s), and a showing of cause. (Dkt. No. 4.) As a result, that portion of the letter-request

is denied without prejudice for each of the following four reasons: (1) it is unsupported by a memorandum of law, as required by Local Rule 7.1(a)(1); (2) it is unsupported by an affidavit, as required by Local Rule 7.1(a)(2); (3) it fails to specify the rule or statute that serves as the basis for the motion, as required by Local Rule 7.1(a)(1); and (4) it is unsupported by a showing of cause.

A few additional words are appropriate regarding the fourth alternative ground for the denial of Plaintiff's letter-request (i.e., the lack of a showing of cause). The Court does not agree with Plaintiff's argument that the transfer of venue is required because "this court [lacks the] authority to adjudicate a federal civil rights lawsuit against itself." (Dkt. No. 4.) By the word "authority," Plaintiff presumably means *subject-matter jurisdiction*. Setting aside for moment the extent to which the Court possesses subject-matter jurisdiction over Plaintiff's claims, that subject-matter jurisdiction (which purportedly arises because of federal-question jurisdiction, and not diversity jurisdiction) would be–for all intents and purposes–coextensive with the subject-matter jurisdiction of the transferee federal district court. As a result, if this Court does not possess subject-matter jurisdiction over Plaintiff's claims, then the transferee federal district court would not possess such subject-matter jurisdiction.

To the extent that Plaintiff instead means that transfer of venue is required because the undersigned (as well as the sole remaining district judge in the District who is not a defendants in this action, District Judge David N. Hurd) would be disqualified under 28 U.S.C. § 455, such disqualification is not required. *See, e.g.,* *Jones v. City of Buffalo*, 867 F. Supp. 1155, 1162-63 (W.D.N.Y. 1994). For this reason, none of the other lawsuits against judges in this District was transferred to another district. *See, e.g., Peterson v. Sharpe*, 13-CV-0568, Report-Recommendation (N.D.N.Y. filed May 24, 2013) (Dancks, M.J.), adopted by Decision and Order (N.D.N.Y. filed Sept. 4, 2013) (D'Agostino, J.); *Reeder v. Baxter*, 10-CV-0959, Decision and Order (N.D.N.Y. filed Sept. 2, 2010) (McAvoy, J.); *Gillard v. Kahn*, 09-CV-0288, Decision and Order (N.D.N.Y. filed May 4, 2009) (Mordue, J.); *Jackson v. McAvoy*, 07-CV-1067, Decision and Order (N.D.N.Y. filed Oct. 10, 2007) (Mordue, J.); *Gonzalez v. Sharpe*, 06-CV-1023, Decision and Order (N.D.N.Y. filed Sept. 8, 2006) (Scullin); *Robertson v. Kahn*, 02-CV-0142, Decision and Order (N.D.N.Y. filed Feb. 28, 2002) (Scullin, J.). Indeed, decisions from outside the District exist in which the case was transferred *to* the district in which the defendant

judges served. *See, e.g., Melendez v. Briery*, 10-CV-0271, 2010 WL 2102832, at *2 (E.D. Wis. May 21, 2010). If the rule were a contrary one, then Plaintiff could avoid a forum simply by suing judges from that forum. *Cf. United States v. Ross*, 116 F.3d 487, at *2 (9th Cir. 1997) ("Ross may not create a basis for recusal simply by naming federal judges as defendants in his ongoing and prolific litigation efforts.").

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S CLAIMS

**\*2** A district court has the authority, indeed the duty, to *sua sponte* dismiss a claim based on lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.*, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action sua sponte."). An example of when a district court lacks such subject-matter jurisdiction over a claim is when the claim is asserted against a defendant who is entitled to sovereign immunity. *See McGinty v. New York*, 251 F.3d 84, 100 (2d Cir. 2001) (addressing sovereign immunity). [1]

In addition, a district court has the authority to *sua sponte* dismiss a claim based on frivolousness even when the plaintiff is not seeking to proceed *in forma pauperis* and she is not a prisoner at the time of filing (i.e., even when 28 U.S.C. § 1915[e][2][B] and 28 U.S.C. § 1915A[b] do not apply). *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee); *cf. Mallard v. United States District Court*, 490 U.S. 296, 307-08 (1989) (" 'Section 1915(d) ... authorizes courts to dismiss a frivolous or malicious action, but there is little doubt they would have power to do so even in the absence of this statutory provision.' "). [2] An action is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An example of such frivolousness is when a complaint is clearly barred by the doctrine of absolute immunity. *See, e.g., Heinfling v. Tolub*, 199 F.3d 1322, at *1 (2d Cir. 1999); *Malizia v. Westchester Cnty. Dist. Atty.'s Office*, 164 F.3d 618, at *1 (2d Cir. 1998); *Daniels v. Appellate Div. of State Supreme Court*,

97-CV-5113, 1997 WL 528060, at *1 (S.D.N.Y. Aug. 27, 1997) (Chin, J.).

As a result, the Court will *sua sponte* review Plaintiff's claims for frivolousness and lack of subject-matter jurisdiction.

Generally, liberally construed, Plaintiff's Amended Complaint asserts the following seven claims against Defendants: (1) a claim that they violated the procedural due process clause of the Fifth and/or Fourteenth Amendments; (2) a claim that they violated the substantive due process clause of the Fifth and/or Fourteenth Amendments; (3) a claim that they violated the Equal Protection Clause of the Fourteenth Amendment; (4) a claim that they violated her right to privacy under the Fourth and/or Fourteenth Amendment; (5) a claim that they violated her right to access to the courts under the First Amendment; (6) a claim that they violated her right against self-incrimination under the Fifth Amendment; and (7) a claim that they violated her right to a trial by jury, and to confront the witnesses against her, under the Seventh Amendment. (*See generally* Dkt. No. 11 [Plf.'s Am. Compl.].)

### A. Plaintiff's Claims Against Federal Defendants
**\*3** Plaintiff's claims against the Federal Defendants arise, if at all, pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* actions, although not precisely parallel to actions pursuant to 42 U.S.C. § 1983 against state actors, are the analog to such actions; and the constitutional standard of review is the same for either type of action. *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995) (per curiam). Thus, federal courts have "typically incorporated § 1983 law into *Bivens* actions." *Tavarez*, 54 F.3d at 110.

All nine Federal Defendants named in this action are sued in their individual and official capacities for both money damages and injunctive/declaratory relief. (*See, e.g.,* Dkt. No. 11, at ¶¶ 173, 220, 363, 572 [Plf.'s Am. Compl., requesting money damages for claims against the Federal Defendants].)

To the extent that Plaintiff asserts claims against the Federal Defendants in their official capacities for money damages, those claims are dismissed based on sovereign immunity. An official-capacity claim is actually a claim against the entity that the official serves. As a result, Plaintiff's official-capacity claims against the Federal Defendants are in reality claims

against the United States District Court for the Northern District of New York. However, as a unit of the judicial branch of the federal government, the United States District Court for the Northern District of New York is entitled to sovereign immunity, which bars such suits to the extent they seek money damages.

What the Court is left with are (1) Plaintiff's claims against the Federal Defendants in their individual capacities for money damages, [3] and (2) her claims against the Federal Defendants in their individual capacities for injunctive/declaratory relief, and (3) her claims against the Federal Defendants in their official capacities for injunctive/declaratory relief.

Eight of the nine Federal Defendants named in this action are judges. Judges are entitled to absolute immunity for actions taken in their judicial capacity within their jurisdiction. *Mireless v. Waco,* 502 U.S. 9, 9-10 (1991); *Huminski v. Corsones,* 386 F.3d 116, 137-38 (2d Cir. 2004); *Gonzalez v. Sharpe,* 06-CV-1023, 2006 WL 2591065, at * 2 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.).

In determining whether the judge acted within his or her jurisdiction, the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.' " *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir. 2009) (quoting *Maestri v. Jutkofsky,* 860 F.2d 50, 52 [2d Cir. 1988] ).

"Whether a judge acted in a 'judicial capacity' depends on the 'nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.' " *Ceparano v. Southampton Justice Court,* 404 Fed.Appx. 537, 539 (2d Cir. 2011) (quoting *Stump v. Sparkman,* 435 U.S. 349, 362 [1978] ).

**\*4** Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman,* 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray,* 386 U.S. 547, 553-554 [1967] ). Moreover, judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir. 1994) (internal quotation marks omitted). This immunity is not intended to protect or benefit a malicious or corrupt judge,

but rather to protect the public interest in having judges who are " 'at liberty to exercise their functions with independence and without fear of consequences.' " *Huminski,* 396 F.3d at 74 (quoting *Pierson,* 386 U.S. at 554).

Furthermore, judicial immunity is immunity "from suit, not just immunity from the assessment of damages." *Mireless,* 502 U.S. at 11. Similarly, judicial immunity is a bar to injunctive/declaratory relief, not just monetary relief. *See, e.g.,* Section 309(c) of the Federal Courts Improvement Act, Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983); *Montesano v. New York,* 05-CV-9574, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2008); *Jones v. Newman,* 98-CV-7460, 1999 WL 493429, at *6-7 (S.D.N.Y. June 30, 1999); *Kampfer v. Scullin,* 989 F. Supp. 194, 201 (N.D.N.Y. 1997) (Kahn, J.).

After carefully considering the matter, the Court finds that the allegations supporting Plaintiff's claims against these eight Federal Defendants relate to actions taken by them within the scope of their judicial capacity within their jurisdiction–as judges presiding over Plaintiff's cases. For example, Plaintiff alleges that United States Magistrate Judge David Peebles issued decisions against her based on information about her "personal, professional and political background," which was acquired through his intern's "snooping" around on her LinkedIn page. (*See, e.g.,* Dkt. No. 11, at ¶¶ 5, 9, 161, 168, 361 [Plf.'s Am. Compl.].) She alleges that United States Chief District Judge Gary L. Sharpe has issued decisions against her based on biases created from his son's employment for the New York State Attorney General's office and the results of the above-described intern's "snooping" around on Plaintiff's LinkedIn page. (*Id.* at ¶¶ 5, 11, 168, 169 170.) She alleges that United States Senior District Judge Norman A. Mordue "made various adverse decisions affecting her rights within the past three years," by "dismiss[ing] a meritorious removal of disciplinary proceedings against the Plaintiff to the federal court" for reasons not authorized by the United States Constitution. (*Id.* at ¶¶ 14, 249.) She alleges that United States District Judge Mae A. D'Agostino "made various adverse decisions affecting Plaintiff's rights within the past three years" by dismissing an action alleging misconduct by Third Department Chief Justice Karen Peters based on judicial immunity, without reaching the merits of the matter. (*Id.* at ¶¶ 14, 368.) She alleges that United States Senior District Judge Frederick J. Scullin, Jr., "made various adverse decisions affecting Plaintiff's rights within the past three years." (*Id.* at ¶ 14.) She alleges that United

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 102 of 182

Neroni v. Peebles, Not Reported in Fed. Supp. (2014)

States Senior District Judge Thomas J. McAvoy made "various adverse decisions affecting Plaintiff's rights within the past three years," and somehow helped provide, free of charge, the premises for a Third Department Professional Standards Committee proceeding (against Plaintiff) at Albany Law School, the board of which he is an "emeritus" member. (*Id.* at ¶¶ 14, 206, 211-15.) She alleges the Unites States Magistrate Judge Randolph F. Treece "made adverse decisions pertaining to Plaintiff within the past three years" based on biases from his membership on the Board of Albany Law School, where Plaintiff was ordered to appear before the Third Departments Professional Standards Committee for a disciplinary proceeding. (*Id.* at ¶¶ 3, 213, 215.) She alleges that Unites States Senior District Judge Lawrence E. Kahn made "various adverse decisions affecting Plaintiff's rights within the past three years," and currently "handle[s] one of Plaintiff's court cases," while he proceeded, and proceeds, under a conflict of interest, as the President of the Intellectual Property and Innovation American Inn of Court, where he meets "on [a] monthly basis behind closed doors to discuss allegedly issues to enhance the excellence of the legal profession and where judges receive from attorneys financial benefits such as free dinners ... and ... have access to expenses paid national and international travel and scholarships for their family members." (*Id.* at ¶¶ 14-15, 174-76, 195, 199.) As a result, Plaintiff's claims against these eight Defendants are clearly barred by the doctrine of judicial immunity.

**\*5** Plaintiff's claim against the ninth Federal Defendant, a judicial intern named Matthew Holmes, fares no better. Absolute judicial immunity extends to persons other than a judge "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). Such persons include court clerks, deputy clerks, law clerks and judicial interns who perform tasks that are judicial in nature and an integral part of the judicial process. *See, e.g., Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (law clerk); *McKnight v. Middleton*, 08-CV-3896, 699 F. Supp.2d 507, 525 (E.D.N.Y. March 29, 2010) (court clerk); *Gillard v. Kahn*, 09-CV-0288, Decision and Order, at 7 (N.D.N.Y. filed May 4, 2009) (Mordue, J.) (deputy clerk); *Cobbs v. Evans*, 13-CV-3990, 2013 WL 5356595, at *2 (N.D. Ill. June 3, 2013) (judicial interns). For the sake of brevity, the Court will set aside the fact that the alleged injury that Plaintiff suffered (i.e., adverse decisions by Magistrate Judge Peebles) *pre-dated* Defendant Holmes' alleged "snooping" into Plaintiff's LinkedIn account by several months. (*See, e.g.,* Dkt. No. 11, at ¶¶ 9, 155-64 [Plf.'s Am. Compl.].) Even if the Court were

to set aside the temporal impossibility of the alleged causal connection between the alleged "snooping" and the adverse decisions, the Court would find that Plaintiff's claims against Defendant Holmes–who is alleged to have been acting under Magistrate Judge Peebles' supervision toward the end of assisting Magistrate Judge Peebles in issuing rulings against Plaintiff in judicial proceedings–are barred by the doctrine of judicial immunity. [4]

The Court would add only five brief points. First, the Court has found no authority for the point of law that a judge is prohibited (by either the United States Constitution or the New York State Rules of Judicial Conduct) from presiding over a matter in which a litigant's counsel is a member of an Inn of Court or a bar association in which the judge is also a member. Indeed, the Court has found cases finding that, in such circumstances, he or she need not recuse himself under 28 U.S.C. § 455. *See, e.g., Bailey v. Broder*, 94-CV-2394, 1997 WL 73717, at *2 (S.D.N.Y. Feb. 20, 1997) (denying motion for recusal based on fact that, *inter alia*, judge chair a bar association committee on which plaintiff's counsel served); *Mass v. McClenahan*, 93-CV-3290, 1995 WL 106106, at *3 (S.D.N.Y. March 9, 1995) ("As a judge, I have continued to be active in bar association affairs and serve as a member of a committee of the Association of the Bar of the City of New York. In connection with that service, I have worked on reports with other members of the committee. I certainly would not consider such professional association alone as giving rise to a ground for recusal if another such member of that committee were to appear before me."); *cf. In re Jones*, 145 N.Y.S. 65, 66-67 (N.Y. App. Div., 1st Dept. 1913) (denying motion, in attorney disbarment proceeding, to remove official referee on the ground that he was disqualified from acting in the proceeding because he was a member of the Association of the Bar of the City of New York, which had preferred the charges).

Second, recusal is not required under 28 U.S.C. § 455 simply because a judge's son or daughter is employed in a prosecutorial office which appears before the judge (i.e., where the son or daughter does not actually participate in the proceeding). *See, e.g.,* 28 U.S.C. § 455(b)(5)(ii) ("[Any justice, judge, or magistrate of the United States shall] disqualify himself in the following circumstance: ... a person within the third degree of relationship to [him] ... [i]s acting as a lawyer in the proceeding...."); *Mills v. Lemke*, 11-CV-0440, 2013 WL 435477, at *48 (W.D.N.Y. Feb. 4, 2013) (rejecting argument that judge had to recuse himself based

on fact that two of his first cousins worked in the office of a district attorney where the cousins had not tried the case); *Heatley v. United States*, 00-CV-4313, 2001 WL 6728, at *2 (S.D.N.Y. Jan. 2, 2001) (denying recusal motion based on fact that judge's son worked in office of United States Attorney, where he had not worked on proceeding); *cf. New York v. Patrick*, 75 N.E. 963, 964 (N.Y. 1905) (holding a judge is not disqualified in a criminal case because his son, as assistant district attorney, opposed defendant's motion for new trial on the ground of newly discovered evidence, nor does such relationship render it improper for him to sit in the case, or justify him in refusing to do so), *accord, New York v. Jeter*, 930 N.Y.S.2d 176, at *2 (N.Y. Co. Ct., Sullivan Cnty. 2011).

**\*6** Third, even where recusal is warranted, the failure to recuse oneself does not give rise to a constitutional violation unless "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable," *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (internal quotation marks omitted), or the judge's participation "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821 (1986) (internal quotation marks omitted). Here, it is clear no such probability or offense has been alleged.

Fourth, the proper avenue for challenging a judicial determination by a federal magistrate judge or district judge is a motion for reconsideration, an objection filed with the district judge, and/or an appeal to the court of appeals. An alternative avenue for challenging the behavior of a federal magistrate judge or district judge is a complaint filed in the applicable court of appeals. 28 U.S.C. §§ 351-364. The proper avenue is not a collateral action seeking a declaration that the presiding judges' determinations or behavior violated the litigant's constitutional rights. *Montesano*, 2006 WL 944285, at *4.

Fifth, where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d

at 112. In addition, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *See Abascal v. Hilton*, 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 13, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J.) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd*, 357 Fed.Appx. 388 (2d Cir. 2009). [5]

**\*7** Here, Plaintiff–an attorney admitted to practice in this Court–has failed to assert against the Federal Defendants a non-frivolous claim over which the Court possesses subject-matter jurisdiction, despite the fact that she has attempted to do so in a typed Complaint that is 496 paragraphs in length and that attaches 32 pages of exhibits, and a typed Amended Complaint that is 570 paragraphs in length and attaches 53 pages of exhibits. [6] Better pleading would not cure the numerous fatal defects in the claims against the Federal Defendants. Moreover, Plaintiff has, of course, already filed an Amended Complaint. For each of these two reasons, no prior leave to amend is required before the claims against the Federal Defendants are dismissed for frivolousness and lack of subject-matter jurisdiction.

### B. Plaintiff's Claims Against State Defendants

Plaintiff's claims against the State Defendants arise, if at all, pursuant to 42 U.S.C. § 1983. Generally, Plaintiff's claims against the 69 State Defendants can be broken up into three groups: (1) her claims against 27 State Judicial Defendants, (2) her claims against 31 State Quasi-Judicial Defendants, and (3) her claims against 11 State Prosecutorial Defendants.

### 1. Claims Against State Judicial Defendants

State court judges are entitled to the same immunity from lawsuits resulting from actions taken in their judicial capacity as are federal judges. *Lewittes v. Lobis*, 04-CV-0155, 2004 WL 1854082, at *5 (S.D.N.Y. Aug. 19, 2004). As a result, Plaintiff's claims against the State Judicial Defendants are governed by the legal standard set forth above in Part III.A. of this Decision and Order.

Liberally construed, Plaintiff's Amended Complaint asserts claims against the 27 State Judicial Defendants in their individual and official capacities for both money damages

and injunctive/declaratory relief. (*See, e.g.,* Dkt. No. 11, at ¶¶ 32-33, 216, 265-67, 572 [Plf.'s Am. Compl., requesting money damages for claims against the State Judicial Defendants].)

To the extent those Defendants are sued in their official capacities for money damages, those claims are dismissed based on sovereign immunity, for the reasons set forth above in Part III.A. of this Decision and Order. What the Court is left with are (1) Plaintiff's claims against the State Judicial Defendants in their individual capacities for money damages,[7] and (2) her claims against the State Judicial Defendants in their individual capacities for injunctive/declaratory relief, and (3) her claims against the State Judicial Defendants in their official capacities for injunctive/declaratory relief.

After carefully considering the matter, the Court finds that the allegations supporting Plaintiff's claims against the 27 State Judicial Defendants relate to actions taken by them within the scope of their judicial capacities within their jurisdictions. For example, Plaintiff claims that Chief Justice Karen Peters has and will adversely affect cases in which Plaintiff is a party or an attorney because Judge Peters has improperly interacted with Judge Tormey, the New York State Attorney General's office, and the Professional Conduct Committee, and because Judge Peters' court inquired into Plaintiff's fitness to practice law after a two-week medical leave. (*See, e.g.,* Dkt. No. 1, at ¶¶ 17, 241-42, 286, 291, 294, 311, 323 [Plf.'s Am. Compl.].) She claims that Justice John A Lahtinen works within a "criminal enterprise engaged in a conspiracy to deprive [Plaintiff] of [her] law license" based on the fact that Justice Lahtinen works within the New York State Court, Appellate Division, Third Judicial Department. (*Id.* at ¶ 344.) She claims that Justice Leslie E. Stein helped the Professional Conduct Committee to prosecute Plaintiff, based on the fact that Judge Stein is a member of the Board of Albany Law School, and Plaintiff's disciplinary hearing was held at Albany Law School. (*Id.* at ¶¶ 213, 215.) She claims that Justices William A. McCarthy, Elizabeth A. Garry, Robert S. Rose, and John C. Egan, Jr., work in a court system that "formed a criminal enterprise engaged in a conspiracy to deprive [Plaintiff] of [her] law license and [her] livelihood and reputation" because they work in the New York State Court, Appellate Division, Third Judicial Department. (*Id.* at ¶¶ 18, 344.) She claims that Judge Michael C. Lynch was mischaracterized in a press-release by the Peters' court as having a "stellar record" when in fact he had had a complaint filed against him with the New York

State Court Administration for having ordered surveillance in the courthouse without a written order and without a known procedural use. (*Id.* at ¶¶ 307-09.) She claims that Justice Eugene P. Devine was mischaracterized in a press-release by the Peters' court as having a "stellar record" when in fact he had been admonished by the New York State Commission of Judicial conduct for attempting to convince another judge to release from custody the son of Justice Devine's friend. (*Id.*) She claims that Christine M. Clark was mischaracterized in a press-release by the Peters' court as having a "stellar record" when in fact she had worked as a summer associate and law clerk before passing the bar, which conflicts with the policy behind of the court prohibiting suspended and disbarred attorneys from those same positions. (*Id.*) She claims that former Chief Justice Thomas Mercure, with others, assigned Judges Tormey, Dowd, Lebous and Becker to Plaintiff's cases, causing judges to issue decisions against Plaintiff. (*Id.* at ¶¶ 240, 251.) She claims that former Justice Edward O. Spain was seen attending catered receptions at Albany Law School multiple times between 2005 and 2008. (*Id.* at ¶ 203.) She claims that Court Clerk Robert Mayberger's position overseeing the daily operations of the court and its auxiliary agencies disqualifies Judge Peters' court from presiding over Plaintiff's disciplinary proceedings. (*Id.* at ¶¶ 20, 21, 261.) She claims that Deputy Court Clerk James S. Ranous adversely affected Plaintiff's disciplinary hearing by inquiring, on behalf of another, whether Plaintiff was fit to practice law after her two-week medical leave. (*Id.* at ¶¶ 26, 28, 257.) She claims that Chief Administrative Judge Michael Coccoma assigned judges to Plaintiff's cases, and those judges issued decisions against her, as punishment for Plaintiff's having requested sanctions against Judge Coccoma's wife. (*Id.* at ¶¶ 246, 251.) She claims that Chief Administrative Judge Gail Prudenti adversely affected the outcome of one of Plaintiff's cases (*Bracci v. Becker*) because Judge Prudenti refused to provide to Plaintiff security tapes of the courthouse containing a supposed *ex parte* communication between the presiding judge and opposing counsel. (*Id.* at ¶¶ 236, 399.) She claims that Justice Robert Mulvey may issue adverse decisions against Plaintiff in her pending cases because he has made adverse decision against Plaintiff before, and he may be a member of an American Inn of Court. (*Id.* at ¶¶ 224, 480.) She claims that Justice James C. Tormey issued decisions adverse to Plaintiff based on her attempt to bring a lawsuit against him as well as her request for sanctions against Judge Coccoma's wife, and based on Justice Tormey's affiliation with the Attorney General's office (his former counsel). (*Id.* at ¶¶ 231, 241, 243, 251.) She claims that Justice Kevin M. Dowd has issued adverse determinations against her in

Neroni v. Peebles, Not Reported in Fed. Supp. (2014)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 105 of 182

state court actions, and made disparaging remarks against her. (*Id.* at ¶¶ 224, 251.) She claims that Justice Ferris D. Lebous has issued adverse determinations against her due to his biases from an alleged conspiracy with Judge Becker, and the political influence of attorneys who have opposed her or supported her opposing counsel. (*Id.* at ¶¶ 224, 363, 378, 381, 514.) She claims that Chief Justice Jonathan Lippman participates in secret social networking organization like the American Inns of Court, and issued an unconstitutional ruling that restricts the jurisdiction of the New York State Court of Appeals. (*Id.* at ¶¶ 86, 456.) She claims that Justices Jenny Rivera, Susan Phillips Read, Robert S. Smith, Eugene F. Pigott, Jr., and Sheila Abdas-Salaam may be members of secret organizations between judges and attorneys, like the American Inns of Court. (*Id.* at ¶ 87.) Finally, she claims that Judge Carl F. Becker issued adverse determinations against her, and influenced others to issue adverse determination against her, because she sued him. (*Id.* at ¶¶ 95, 98, 228, 285, 344, 505, 567.)

**\*8** In the alternative, to the extent the state judicial proceedings against Plaintiff terminated before the filing of this action (*see, e.g.,* Dkt. No. 11, at ¶¶ 51, 104), the claims challenging those proceedings appear to be barred by the *Rooker-Feldman* doctrine. *Neroni v. Zayas*, 13-CV-0127, 2014 WL 1311560, at \*4 (N.D.N.Y. March 31, 2014) (Kahn, J.). [8] Moreover, related federal claims by Plaintiff against Defendants Becker, Mulvey and Lippman were previously dismissed with prejudice by District Judge D'Agostino on January 9, 2013, and that dismissal was affirmed by the Second Circuit on May 29, 2014, implicating the doctrines of collateral estoppel and/or res judicata. *Bracci v. Becker*, No. 13-510, 2014 WL 2210761 (2d Cir. May 29, 2014), *aff'g*, 11-CV-1473, 2013 WL 123810 (N.D.N.Y. Jan. 9, 2013) (D'Agostino, J.).

Because better pleading would not cure the numerous fatal defects in the claims against the State Judicial Defendants, and because Plaintiff has already filed an Amended Complaint, no further leave to amend is required before those claims may be, and are, dismissed for frivolousness and lack of subject-matter jurisdiction.

## 2. Claims Against State Quasi-Judicial Defendants

Plaintiff's claims against the 31 State Quasi-Judicial Defendants are governed by the legal standard set forth above in Part III.A. of this Decision and Order. For

example, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988). As when determining whether an individual is entitled to judicial immunity, when determining whether an individual is entitled to this quasi-judicial immunity, courts take a functional approach: the level of immunity flows not from rank or title or location within the Government, but from the nature of the official's responsibilities. *Cleavinger*, 474 U.S. at 201.

Liberally construed, Plaintiff's Amended Complaint asserts claims against the 31 State Quasi-Judicial Defendants in their individual and official capacities, some of whom are sued for both money damages and injunctive/declaratory relief, and others of whom are sued for only injunctive/ declaratory relief. (*See, e.g.,* Dkt. No. 11, at ¶¶ 53, 113, 271-72, 279-80, 335, 343, 348, 427, 572 [Plf.'s Am. Compl., requesting money damages for claims against State Quasi-Judicial Defendants].)

To the extent the State Quasi-Defendants are sued in their official capacities for money damages, those claims are dismissed based on sovereign immunity, for the reasons set forth above in Part II.A. of this Decision and Order. What the Court is left with are (1) Plaintiff's claims against some State Quasi-Judicial Defendants in their individual capacities for money damages, and (2) her claims against the State Quasi-Judicial Defendants in their individual capacities for injunctive/declaratory relief, and (3) her claims against the State Quasi-Judicial Defendants in their official capacities for injunctive/declaratory relief.

Plaintiff's claims against the 31 State Quasi-Judicial Defendants arise from their performance of discretionary acts of a judicial nature. *See, e.g., Middlesex Cnty. Ethics Committee*, 457 U.S. 423, at 433-34; *Brooks*, 2002 WL 31528632, at \*2; *Sassower v. Mangano*, 927 F. Supp. 113, 120 (S.D.N.Y. 1996); *Klapper v. Guria*, 582 N.Y.S.2d 892, 895-96 (N.Y.S. Sup. Ct., New York Cnty. 1992).

**\*9** More specifically, Plaintiff claims that officers and members of the Third Department's Professional Standards Committee–who she sues for both monetary and injunctive/ declaratory relief–have taken improper actions against her with regard to various disciplinary proceedings. For example, she claims that, in 2012 and 2014, Michael G. St. Leger, *inter alia*, wrongfully prosecuted her, refused to prosecute a

Neroni v. Peebles, Not Reported in Fed. Supp. (2014)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 106 of 182

male attorney, and denied her access to her file. (*See, e.g.,* Dkt. No. 11, at ¶¶ 51-52, 55, 211, 335, 448 [Plf.'s Am. Compl.].) She claims that, in 2012 and 2014, Monica Duffy, *inter alia,* wrongfully prosecuted her, refused to prosecute a male attorney, "bull[ied] a payment out of [her]," and denying her access to her file. (*Id.* at ¶¶ 51-52, 58, 104, 335, 448, 509.) She claims that, in 2012 and 2014, Peter Torncello, *inter alia,* wrongfully prosecuted her, dismissed her complaint against him, "bullying a payment out of [her]," and denied her access to her file. (*Id.* at ¶¶ 41-45, 51-52, 104, 268, 335, 339-40.) She claims that, between 2012 and 2014, Allison M. Coan, *inter alia,* wrongfully prosecuted Plaintiff, "snooped" into her LinkedIn account, and denied her access to certain files. (*Id.* at ¶¶ 6-7, 46-47, 51-52, 211, 509.) She claims that, in 2012 and 2014, Steven D. Zayas wrongfully prosecuted her, refused to prosecute an individual pursuant to the charges she wanted, "bull[ied] a payment out of [her]," and denied her access to her file. (*Id.* at ¶¶ 35-38, 51-52, 104, 268, 339, 346.) Finally, she claims that, in 2012 and 2014, the following individuals wrongfully prosecuted her: John Ferrara, Yorden C. Huban, Edward R. Marinstein, Lisa M. Mills, John G. Rusk, William F. Ryan, Jr., James W. Bendall, Christine Cioffi, Heidi Dennis, William E. Lorman, Michael D. McCormick, Cathi L. Rander, Dirk A. Galbraith, Samantha M. Holbrook, Alan J. Pope, Ransom P. Reynolds, Russell E. Ruthig, and John Casey. (*Id.* at ¶¶ 51-52, 59.) [9]

Moreover, Plaintiff sues the officers and trustees of the New York State Lawyers' Fund for Client Protection for injunctive/ declaratory relief only. (Dkt. No. 11, at ¶¶ 119, 518, 521 [Plf.'s Am. Compl.].) More specifically, she claims that those Defendants operated under a conflict of interest, wrongfully pursuing "unconstitutional" payments from Plaintiff–some of which are still outstanding. (*Id.* at ¶¶ 98, 104-05, 110-12, 119-26, 520, 522-23.)

Finally, to the extent the disciplinary or collection proceedings were terminated against Plaintiff's interest before the filing of this action (*see, e.g.,* Dkt. No. 11, at ¶¶ 51, 104), the claims challenging those proceedings appear to be barred by the *Rooker-Feldman* doctrine. *Neroni,* 2014 WL 1311560, at \*4. [10]

Again, because better pleading would not cure the numerous fatal defects in the claims against the State Quasi-Judicial Defendants, and because Plaintiff has already filed an Amended Complaint, no further leave to amend is required before those claims may be, and are, dismissed for frivolousness and lack of subject-matter jurisdiction.

### 3. Claims Against State Prosecutorial Defendants

State prosecutors are absolutely immune from claims arising from conduct "intimately associated with the judicial phase of the criminal process." *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir. 2004) (citing *Imbler v. Pachtman,* 424 U.S. 409, 430 [1976] ). More specifically, "[t]he absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation...." *Barrett v. United States,* 798 F.2d 565, 571-72 (2d Cir. 1986). Moreover, "absolute immunity applies even when a government attorney 'defends a civil suit.' " *Borcsok v. Crowe,* 310 Fed.Appx. 460, 461 (2d Cir. 2009) (quoting *Barrett,* 798 F.2d at 572).

"The fact that [the government attorney] may or may not have engaged in questionable or harmful conduct during the course of his representation of the State in that litigation is irrelevant," because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Borcsok,* 310 Fed.Appx. at 461 (quoting *Barrett,* 798 F.2d at 573). For example, the immunity "protects prosecutors against claims that they conspired to [present], or actually presented, fabricated evidence at trial...." *Moye v. City of New York,* 11-CV-0316, 2012 WL 2569085, at \*6 (S.D.N.Y. July 3, 2012) (citing *Dory v. Ryan,* 25 F.3d 81, 83 [2d Cir. 1994] ); *accord, Phillips v. New York,* 13-CV-0927, 2013 WL 5703629, at \*4 (N.D.N.Y. Oct. 17, 2013) (Report-Recommendation by Dancks, M.J., adopted by Hurd, J.) (collecting cases).

**\*10** The examination of whether absolute immunity applies focuses on the conduct engaged in and the role of the defendant government attorney. *Blouin,* 356 F.3d at 357 (citing *Forrester v. White,* 484 U.S. 219, 229 [1988] ). If the action complained of stems from the "traditional" role of the government-attorney as an "advocate" in litigation, the defendant is absolutely immune from suit. *Blouin,* 356 F.3d at 358; *Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir. 2001); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir. 1996). While declining to announce a bright-line test,

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 107 of 182

Neroni v. Peebles, Not Reported in Fed. Supp. (2014)

the Second Circuit has held that, "in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts.... Conversely, where no proceedings have begun, qualified immunity is the norm."

*Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987) (internal citations omitted). [11]

Liberally construed, Plaintiff's Amended Complaint asserts claims against the 11 State Prosecutorial Defendants in their individual and official capacities, some of whom are sued for both money damages and injunctive/declaratory relief, and others of whom are sued for only injunctive/declaratory relief. (*See, e.g.,* Dkt. No. 11, at ¶ 113 [Plf.'s Am. Compl., requesting money damages for claims against various State Prosecutorial Defendants].)

To the extent the State Prosecutorial Defendants are sued in their official capacities for money damages, those claims are dismissed based on sovereign immunity, for the reasons set forth above in Part III.A. of this Decision and Order. What the Court is left with are (1) Plaintiff's claims against some State Prosecutorial Defendants in their individual capacities for money damages, and (2) her claims against the State Prosecutorial Defendants in their individual capacities for injunctive/declaratory relief, and (3) her claims against the State Prosecutorial Defendants in their official capacities for injunctive/declaratory relief.

After carefully considering the matter, the Court finds that the challenged actions of these 11 State Prosecutorial Defendants stem from the traditional role of government-attorneys as advocates in litigation. For example, Plaintiff claims that Eric T. Schneiderman represented various parties (including the Third Department's Professional Standards Committee) in actions against Plaintiff while he was operating under a conflict of interest (in that [1] he was "duty-bound to protect Plaintiff from fraud and misconduct of public official[s]," and [2] he may be a member and/or attendee of an American Inn of Court). (*See, e.g.,* Dkt. No. 11, at ¶¶ 88-93, 113, 476, 486, 497-500, 504, 508 & Ex. 8 [Plf.'s Am. Compl.].) She claims that Joseph F. Romani defended a New York State court judge (Carl F. Becker) in an action brought by Plaintiff while Romani operated under a conflict of interest (in that [1] he was "duty-bound" to protect Plaintiff from fraud and misconduct of public officials, and [2] he had a possible ex parte communication with another New York State court judge, James C. Tormey, in that action). (*Id.* at ¶¶ 396-98, 486-87.) She claims that Richard L. Rodgers "is harassing Plaintiff

with demands of payment of unconstitutional sanctions imposed upon her by Judge Becker as a pattern of retaliation after Plaintiff sued Judge Becker, and threatens litigation" in order to "avoid collection proceedings." (*Id.* at ¶¶ 94-96, 100 & Ex. 14.) She claims that Bruce J. Boivin "routinely" represents public officials in civil lawsuits in which they are charged with violating the United States Constitution, and has done so in "multiple" cases in which Plaintiff was an attorney of record, one of which (against Judge Becker) resulted in an award of sanctions against Plaintiff. (*Id.* at ¶¶ 94, 486, 490-91.) She claims that Douglas Goglia "routinely" represents public officials in civil lawsuits in which they are charged with violating the United States Constitution, and obtained the above-described award of sanctions against Plaintiff. (*Id.* at ¶¶ 94, 486, 481.) She claims that Christopher Hall "routinely" represents public officials in civil lawsuits in which they are charged with violating the United States Constitution, and currently defends the former Commission of the Department of Environmental Conservation in federal court. (*Id.* at ¶¶ 94, 486, 488, 492.) She claims that Lawrence Rappoport "routinely" represents public officials in civil lawsuits in which they are charged with violating the United States Constitution, and defended the Department of Environmental Conservation against counterclaims of unconstitutional conduct asserted by Plaintiff. (*Id.* at ¶¶ 94, 486, 488.) She claims that Andrew B. Ayers "routinely" represents public officials during the appellate phases of civil lawsuits in which they are charged with violating the United States Constitution, and made "fraudulent claims" to a court while requesting an adjournment. (*Id.* at ¶¶ 94, 290-91, 486, 489.) She claims that Richard D. Northrup, Jr., is in charge of prosecuting criminal offenses in Delaware County, and may discriminatorily enforce Judge Tormey's criminal contempt order against her, while he may be a member and/or attendee of an American Inn of Court. (*Id.* at ¶¶ 115-16, 467, 476.) She claims that Porter L. Kirkwood "is the County Attorney of Delaware County who participates in proceedings in front of Defendant Dowd where Plaintiff's due process interests are involved, Delaware County Index No. 2009-440," while he may be a member and/or attendee of an American Inn of Court. (*Id.* at ¶¶ 117-18.) Finally, she claims that Assistant Attorney General Adele Taylor-Scott obtained an unlawful stipulation from Plaintiff's former clients using duress, based on the fact that the stipulation dismissed a case against county and state actors, the clients wished to get their children back, and Taylor-Scott communicated with an attorney (Michael Sheehan) around the time the stipulation was created. (*Id.* at ¶¶ 294, 295, 296, 297.)

Neroni v. Peebles, Not Reported in Fed. Supp. (2014)

Case 6:23-cv-00431-LEK-ML   Document 9   Filed 05/10/23   Page 108 of 182

**\*11**  The Court would add only two brief points. First, the Court has found no authority for the point of law that a state or county attorney is prohibited (by either the United States Constitution or the New York State Rules of Professional Conduct) from defending a state or county official on a misconduct charge brought by a resident of the state. To the contrary, generally, such attorneys appear statutorily obligated to defend such officials. *See* N.Y. Exec. Law § 63 ("The attorney-general shall ... defend all actions and proceedings in which the state is interested...."); N.Y. Public Officers Law § 17(2)(a) ("[T]he state shall provide for the defense of the employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties...."); N.Y. Public Officers Law § 18(3)(a) ("[T]he [county] shall provide for the defense of the employee in any civil action or proceeding, state or federal, arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties.");

*see, e.g., New York v.* *Kleiner,* 652 N.Y.S.2d 934, 937 (N.Y. Sup. Ct., Richmond Cnty. 1996) ("Whether or not named as a defendant in the federal lawsuit, the attorney-general would be required to defend the interests of state agencies *and the public officials* whom defendant sued in federal court.") (emphasis added).

Second, even if there were a hint of merit to the legal theories on which Plaintiff's claims are based, the Court would nonetheless find the claims to be frivolous because, despite the fact that she has fleshed out her claims in 570 paragraphs and 53 pages of exhibits, she has offered nothing but speculation or conjecture personally involving the 11 State Prosecutorial Defendants to any unconstitutional conduct.

Again, because better pleading would not cure the numerous fatal defects in the claims against the State Prosecutorial Defendants, and because Plaintiff has already filed an Amended Complaint, no further leave to amend is required before those claims may be, and are, dismissed for frivolousness and lack of subject-matter jurisdiction.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's request for removal of Magistrate Judge Peebles and her request for the transfer of venue of this action (Dkt. No. 4) are **DENIED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 11) is *sua sponte* **DISMISSED** for frivolousness and lack of subject-matter jurisdiction.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 12768331

---

## Footnotes

1  The doctrine of absolute immunity does not deprive a district court of subject-matter jurisdiction. *Byars v. Malloy*, 11-CV-0017, 2011 WL 4538073, at \*5 (D. Conn. Sept. 29, 2011).

2  However, the Court does not have the power to *sua sponte* dismiss a complaint for failure to state a claim upon which relief can be granted without first giving the plaintiff notice and an opportunity to be heard. *Wachtler v. Herkimer Cnty.*, 35 F.3d 77, 82 (2d Cir. 1994); *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam).

3  The Court is tempted to, but declines to, find that, under the circumstances alleged, Plaintiff's claims against the Federal Defendants in their individual capacities for money damages are "a thinly veiled attempt by the plaintiff to inject life into claims that clearly would have been barred by sovereign immunity if brought against the defendants in their official capacity." *Jemzura v. Pub. Serv. Com'n*, 961 F. Supp. 406, 412 (N.D.N.Y. 1997) (McAvoy, C.J.).

Neroni v. Peebles, Not Reported in Fed. Supp. (2014)

Case 6:23-cv-00431-LEK-ML    Document 9    Filed 05/10/23    Page 109 of 182

4    Also for the sake of brevity, the Court will assume that (1) Defendant Holmes visited Plaintiff's LinkedIn page from a work computer during the 8 or 12 hours per week he worked before his academic internship ended (which typically occurs in mid-April), and (2) he both learned something material from Plaintiff's page and communicated that material information to Magistrate Judge Peebles–although those facts are plausibly suggested nowhere in Plaintiff's Amended Complaint. (*See generally* Dkt. No. 11.)

5    *See also* Foman v. Davis, 371 U.S. 178, 182 (1962) (explaining that denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress, LLC,* 375 Fed.Appx. 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend."); *Dyson v. N.Y. Health Care, Inc.,* 353 Fed.Appx. 502, 503-03 (2d Cir. 2009) ("[T]he district court did not abuse its discretion by dismissing Dyson's third amended complaint with prejudice.... [T]he district court afforded Dyson three opportunities to file an amended complaint so as to comply with Rule 8(a)(2), and, despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief."); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) ("We do not mean to imply that the court has no power to dismiss a prolix complaint without leave to amend in extraordinary circumstances, such as where leave to amend has previously been given and the successive pleadings remain prolix and unintelligible."); Prezzi v. Schelter, 469 F.2d 691, 692 (2d Cir. 1972) (affirming dismissal of *pro se* plaintiff's amended complaint without leave to amend, for failure to state a claim upon which relief can be granted, without engaging in analysis of whether second amended complaint would be futile); *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) ("Yang's amended complaint fails to remedy this defect in his pleadings.... His equal protection claim is dismissed."), *aff'd*, 71 Fed.Appx. 90 (2d Cir. 2003).

6    The last paragraph of Plaintiff's Amended Complaint is numbered "572." However, the Amended Complaint repeats paragraphs "1" through "3," repeats paragraphs "525" through "533," and omits paragraphs "542" through "555." As a result, the Court calculates Plaintiff's Amended Complaint as numbering 570 paragraphs in length.

7    Again, the Court is tempted to, but declines to, find that, under the circumstances alleged, Plaintiff's claims against the State Defendants in their individual capacities for money damages are "a thinly veiled attempt by the plaintiff to inject life into claims that clearly would have been barred by sovereign immunity if brought against the defendants in their official capacity." *Jemzura,* 961 F. Supp. at 412.

8    Because of the existence of numerous alternative reasons to dismiss these claims, the Court need not, and does not, address whether certain of the claims should be dismissed because of the *Younger* doctrine (pursuant to the Supreme Court's test in Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 591, 593 [2013] ), and the fact that certain of the state judicial proceedings against Plaintiff are apparently ongoing (*see, e.g.,* Dkt. No. 11, at ¶¶ 17, 200-01, 228, 255, 459, 480 [Plf.'s Am. Compl.] ).

9    In addition, Plaintiff claims that Ms. Holbrook operated under a conflict of interest (Dkt. No. 11, at ¶¶ 269-70, 275), and that Mr. Casey wrongfully prosecuted her husband, operated under a conflict of interest, and refused to prosecute the complaints of Plaintiff and her husband (*id.* at ¶¶ 64-74, 176, 178-83, 273-75, 370-71, 448).

10    Again, because of the existence of numerous alternative reasons to dismiss these claims, the Court need not, and does not, address whether certain of the claims should be dismissed because of the *Younger* doctrine,

**Neroni v. Peebles, Not Reported in Fed. Supp. (2014)**

and the fact that certain of the state judicial proceedings against Plaintiff are apparently ongoing (*see, e.g.,* Dkt. No. 11, at ¶¶ 51, 110, 228, 255, 459, 480, 523 [Plf.'s Am. Compl.] ).

11    For example, "when a prosecutor is not acting as an 'officer of the court,' but is instead engaged in, say, investigative or administrative tasks," absolute immunity does not apply. ⚑ *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009).

---

**End of Document**                                     © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1311560
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Frederick J. NERONI, Plaintiff,
v.
Steven D. ZAYAS; et al., Defendants.

No. 3:13–CV–0127 (LEK/DEP).
|
Signed March 31, 2014.

**Attorneys and Law Firms**

Tatiana Neroni, Neroni Law Office, Delhi, NY, for Plaintiff.

Bruce J. Boivin, Office of Attorney General, Albany, NY, Porter L. Kirkwood, Delhi, NY, for Defendants.

***MEMORANDUM–DECISION and ORDER***

LAWRENCE E. KAHN, District Judge.

**I. INTRODUCTION**

**\*1** Plaintiff Frederick J. Neroni commenced this action on February 3, 2013, alleging various constitutional violations related to his disbarment. Dkt. No. 1. Currently pending before the Court are Defendants' Motion to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim, and Plaintiff's Motion to supplement the Amended Complaint. Dkt. Nos. 4 ("Amended Complaint"); 18 ("Defendants' Motion"); 28 ("Plaintiff's Motion"). For the following reasons, Defendants' Motion is granted in part, and Plaintiff's Motion is denied.

**II. BACKGROUND** [1]
The Amended Complaint is lengthy, convoluted, digressive, and redundant. The Court therefore recites only those factual allegations directly relevant to the pending Motions. For a more complete statement of the facts, reference is made to the Amended Complaint.

Plaintiff is a graduate of Albany Law School and was admitted to the New York State Bar in 1974. Am. Compl. ¶ 16. On July 7, 2011, the New York State Supreme Court, Appellate Division, Third Department, issued an order disbarring

Plaintiff. Am. Compl. ¶ 17; *In re Neroni,* 86 A.D.3d 710, 926 N.Y.S.2d 744, 744 (App.Div.2011), *appeal dismissed,* 17 N.Y.3d 851, 930 N.Y.S.2d 546, 954 N.E.2d 1172, 1172 (N.Y.) ("Disbarment Order").

Upon disbarment, Plaintiff became subject to various legal authorities regulating the conduct of disbarred attorneys. First, ⚑N.Y. Judiciary Law § 90(2) authorizes the Appellate Division to remove attorneys from office, and requires any order of removal to include a provision requiring the attorney to refrain from the practice of law. Pursuant to this statutory requirement, the Disbarment Order "commanded [Plaintiff] to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another." It further forbade Plaintiff from "appear[ing] as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority" and from "giv[ing] to another an opinion as to the law or its application, or any advice in relation thereto." Disbarment Order. Violation of the Disbarment Order may be punished as a contempt of court. ⚑N.Y. JUD. LAW § 90(2). Second, ⚐N.Y. Judiciary Law § 486 provides that unauthorized practice of law by a disbarred attorney is a misdemeanor offense. Finally, the Third Department's Rules of Court also restrict the conduct of disbarred attorneys. N.Y. CT. RULES § 806.9. For ease of reference, the Court refers collectively to the restrictions on the unauthorized practice of law contained in the Disbarment Order, the Judiciary Law, and the Court Rules as the "UPL Provisions."

Plaintiff's spouse is an attorney. Am. Compl. ¶ 37. She maintains a home office at the couple's residence in Delhi, NY. *Id.* ¶¶ 2, 37. No support staff works there, and it is otherwise simply their residence. *Id.*

Since Plaintiff's disbarment, the Third Department's Committee on Professional Standards (the "Committee") has twice investigated Plaintiff for possible unauthorized practice of law. *Id.* ¶ 34, 930 N.Y.S.2d 546, 954 N.E.2d 1172. One of these post-disbarment investigations commenced in November 2011. *Id.* ¶ 37, 930 N.Y.S.2d 546, 954 N.E.2d 1172. A nonattorney local criminal court justice attempted to serve legal papers on Plaintiff's spouse at the residence. *Id.* The justice insisted that Plaintiff sign for acceptance of service, which Plaintiff did. *Id.* ¶¶ 37–38. The justice then reported Plaintiff to the Committee for unauthorized practice of law. *Id.* ¶ 38, 930 N.Y.S.2d 546, 954 N.E.2d 1172. He reported that Plaintiff had accepted service on

his spouse's behalf, and that Plaintiff had been sitting at a desk in front of a computer talking to a man while another man was walking through the door. *Id.* ¶ 39, 930 N.Y.S.2d 546, 954 N.E.2d 1172. Plaintiff alleges that these men were contractors remodeling his kitchen. *Id.* ¶ 42, 930 N.Y.S.2d 546, 954 N.E.2d 1172. The Committee initiated an investigation and sent Plaintiff a questionnaire demanding to know who the men at his house were, what Plaintiff was doing with them, and whether the men were his spouse's clients. *Id.* ¶ 44, 930 N.Y.S.2d 546, 954 N.E.2d 1172. Plaintiff cooperated with the Committee and answered the questions. *Id.* ¶ 47, 930 N.Y.S.2d 546, 954 N.E.2d 1172. The Committee subsequently informed Plaintiff that the charges against him were unfounded. *Id.* ¶ 48, 930 N.Y.S.2d 546, 954 N.E.2d 1172.

**\*2** The Committee initiated another investigation in response to a complaint that Plaintiff served documents pertaining to proceedings in which his spouse was a party. *Id.* ¶ 49, 930 N.Y.S.2d 546, 954 N.E.2d 1172. Plaintiff alleges that he did not become aware of this second investigation until he received notice that the underlying charges were unfounded. *Id.* ¶ 50, 930 N.Y.S.2d 546, 954 N.E.2d 1172.

Plaintiff commenced this action on February 3, 2013, naming several Defendants: Steven D. Zayas, a Committee staff attorney ("Zayas"); Karen Peters, Chief Justice of the Third Department ("Peters"); Monica Duffy, Chairperson of the Committee ("Duffy"); Jonathan Lippman, Chief Judge of the New York Court of Appeals ("Lippman"); Andrew Cuomo, Governor of the State of New York ("Cuomo"); Dean Skelos, Majority Leader of the New York State Senate ("Skelos"); Eric Schneiderman, New York State Attorney General ("Schneiderman") (collectively, the "State Defendants"); and Richard D. Northrup, Jr., District Attorney of Delaware County, N.Y. ("Northrup") (together with the State Defendants, "Defendants"). Dkt. No. 1. Defendant Zayas is sued in his official and individual capacities; the remaining Defendants are sued only in their official capacities. *See* Am. Compl.

Plaintiff seeks monetary, declaratory, and injunctive relief for a variety of ill-defined causes of action. *See generally* Am. Compl. Briefly stated, Plaintiff alleges that ⚑ N.Y. Judiciary Law § 90(10), which regulates the confidentiality of documents pertaining to the admission and discipline of attorneys, is unconstitutional, and that Plaintiff's rights were violated by the withholding of his disciplinary file during and after his disbarment proceedings. Am. Compl. ¶¶ 65–66, 75.

Plaintiff next alleges that the Committee's post-disbarment investigations violated his due process rights, right to privacy, and right of association. *Id.* ¶ 107. By prohibiting disbarred attorneys from pronouncing to "another" their "opinions about the law," ⚑ Judiciary Law 90(b)(2) violates his rights to freedom of speech and association; his right to petition the government; his right to participate in the democratic political process; and his right to *pro se* representation. Am. Compl. ¶¶ 111, 126, 136. Plaintiff also claims that the statute's prohibition on giving opinions about the law violates his First Amendment rights by preventing him from teaching, speaking, and writing about the law, homeschooling his minor child, working in a law office in a non-attorney capacity, testifying in out-of-court proceedings, serving as a private arbitrator or mediator, representing clients before arbitrators, and engaging in lay advocacy where otherwise allowed. *Id.* ¶¶ 181, 199, 212–13, 226–27, 236, 245. Plaintiff also directly challenges his disbarment on several grounds: he was denied a hearing based on the doctrine of non-mutual offensive collateral estoppel; the disbarment proceeding allowed for only limited discovery; he was not provided an administrative hearing before the Committee prior to the filing of a petition with the Third Department; and the inclusion on the Committee of private attorneys who were competitors of Plaintiff violated his right to a neutral investigator and prosecutor. *Id.* ¶¶ 271, 277–78, 298, 301, 303–04, 330. Finally, Plaintiff seeks a declaration that the entire system of attorney discipline in New York State is unconstitutional based on numerous allegations of misconduct by members of the Bar, and based on the doctrine of the separation of powers. *Id.* ¶¶ 385–86, 400.

**\*3** On May 13, 2013, the State Defendants moved to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). Defs.' Mot. Defendant Northrup later joined in supporting the State Defendants' Motion. Dkt. Nos. 20; 32; 36. Plaintiff then filed his Motion to supplement the Amended Complaint and a proposed supplemental complaint. Pl.'s Mot.; 28–1 ("Proposed Supplemental Complaint").

### III. DEFENDANTS' MOTION

#### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also* FED. R. CIV. P. 12(b) (6). Such a determination "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted). A court must accept as true the factual allegations contained in the complaint and draw all inferences in favor of the plaintiff.

*See Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir.2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly,* 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *See id* . at 678–79.

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id* . "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.' " *Gunst v. Seaga,* No. 05 Civ. 2626, 2007 WL 1032265, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998)).

**B. Discussion**

**\*4** Defendants do not address the merits of Plaintiff's claims, but instead argue that the Court lacks jurisdiction based on, *inter alia,* the *Rooker–Feldman* doctrine, lack of standing, sovereign immunity, official immunity, and the doctrine of equitable restraint. *See generally* Dkt Nos. 18–1 ("Memorandum"); 20–1.

*1. The Rooker–Feldman Doctrine*

Within the federal judicial system, only the Supreme Court has appellate jurisdiction over state-court judgments. *See* 28 U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Accordingly, under the so-called *Rooker–Feldman* doctrine, [2] "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005). The doctrine is narrowly confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon,* 544 U.S. at 284. Accordingly, "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." *Skinner v. Switzer,* —— U.S. ——, ——, 131 S.Ct. 1289, 1298, 179 L.Ed.2d 233 (2011).

In order for the *Rooker–Feldman* doctrine to apply, four requirements must be met: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain[ ] of injuries caused by [a] state-court judgment [.]' Third, the plaintiff must 'invit[e] district court review and rejection of [that] judgment[ ].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'—i.e ., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Hoblock,* 422 F.3d at 85 (quoting *Exxon,* 544 U.S. at 284) (footnote omitted). "[T]he applicability of the *Rooker–Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the

party complains in federal court." *McKithen v. Brown,* 481 F.3d 89, 97–98 (2d Cir.2007).

In this case, all four requirements are met in regards to Plaintiff's request that his disbarment be overturned. First, Plaintiff lost his state-court disbarment proceeding. Second, in directly challenging his status as a disbarred attorney, Plaintiff is complaining of injuries caused by the state-court judgment. Third, Plaintiff seeks review and rejection of that judgment. And fourth, the Disbarment Order was rendered before Plaintiff commenced this action. Therefore, the Court lacks subject matter jurisdiction over any claims seeking to overturn the Disbarment Order.

### 2. Standing

**\*5** Regarding the remaining claims—i.e., those that do not seek review of the Disbarment Order—the Court finds that Plaintiff lacks standing as to all but two.

Standing is an "essential aspect" of the limits of federal judicial power under Article III of the Constitution, which authorizes federal courts to decide any actual "Cases" or "Controversies." *Hollingsworth v. Perry,* ––– U.S. –––, –––, 133 S.Ct. 2652, 2661, 186 L.Ed.2d 768 (2013). To have standing, a litigant must prove that: (1) she "has suffered a concrete and particularized injury"; (2) the injury "is fairly traceable to the challenged conduct"; and (3) the injury "is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *see also* *Lujan,* 504 U.S. at 560 (describing these three elements as "the irreducible constitutional minimum of standing"). "To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way. He must possess a direct stake in the outcome of the case." *Hollingsworth,* 133 S.Ct. at 2662 (citations and quotation marks omitted). A litigant "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan,* 504 U.S. at 573–74.

Plaintiff's remaining claims fall into three categories: challenges to the entire attorney disciplinary system, challenges to the Committee's post-disbarment investigations for possible unauthorized practice of law, and challenges to the withholding of his disciplinary file.

Plaintiff lacks standing to bring a general challenge to the entire New York State attorney discipline system. Plaintiff's eleventh cause of action challenges "the Committee's selective non-enforcement of attorney discipline in regards to attorneys having high-rank familial and political connections, de facto creating a class of legal nobility in New York." Resp. at 9. He seeks "a declaration that the whole scheme of enforcement of attorney disciplinary rules is unconstitutional." Am. Compl. ¶ 385. For the reasons stated *supra,* any challenge to Plaintiff's disbarment based on the selective non-enforcement of the disciplinary rules is barred by the *Rooker–Feldman* doctrine. All that remains is therefore a generalized grievance against the regulation of attorneys in New York, which is insufficient to confer Article III standing. Furthermore, Plaintiff supports this cause of action by identifying attorneys who have not been disciplined for misconduct alleged by Plaintiff. Am. Compl. ¶¶ 299–332. However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Plaintiff therefore does not have standing to bring a claim challenging the selective non-enforcement of attorney disciplinary rules.

**\*6** The twelfth cause of action similarly seeks a declaration that the attorney disciplinary system is unconstitutional. Am. Compl. ¶ 464. However, the only alleged injury the Court can discern within the rambling assemblage of words that Plaintiff labels as the "twelfth cause of action" is Plaintiff's disbarment, *see, e.g.,* Am. Compl. ¶ 400, any challenge to which is barred by *Rooker–Feldman.* Plaintiff therefore lacks standing to bring whatever claim might lie hidden within the Amended Complaint's final section.

In the next category of claims, Plaintiff alleges that the threat of prosecution for unauthorized practice of law violates various constitutional rights. *See generally* Am. Compl. ¶¶ 76–270. Defendants argue that Plaintiff lacks standing to bring these "merely speculative" claims. Mem. at 16–17.

Where a plaintiff challenges threatened government action, he need not "expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–

29, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* Nevertheless, in order to have standing, "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir.2013) (citing *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). The fear of prosecution must be "real and imminent." *Id.; see also Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir.2000) ("A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has 'an actual and well-founded fear that the law will be enforced against' it." (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988))). "If a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation the plaintiff 'may legitimately fear that it will face enforcement of the statute,' then the plaintiff has standing to challenge the statute." *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir.2008) (quoting *Sorrell*, 221 F.3d at 383).

Plaintiff's pre-enforcement challenge to the UPL Provisions asserts that he fears prosecution for a host of activities, including teaching, speaking, and writing about the law; homeschooling his minor child; working in a law office in a non-attorney capacity; testifying in out-of-court proceedings; serving as a private arbitrator or mediator; representing clients before arbitrators; and engaging in lay advocacy where otherwise allowed; participating in the democratic process; representing himself *pro se* in court; and associating with his spouse, family, and friends in his own home. Am. Compl. ¶¶ 97, 104, 107, 111, 126, 136, 181, 199, 212–13, 226–27, 236, 245. However, Plaintiff's fear of prosecution for these activities appears largely unfounded. First, Plaintiff interprets the relevant phrase "to give to another an opinion as to the law" as encompassing a broad field of social activity, but cites no authority for that interpretation. *See, e.g.,* Am. Compl. ¶¶ 128–29. Given that many of the activities he mentions are not directly associated with the practice of law, Plaintiff's interpretation of the phrase "to give to another an opinion as to the law" is not reasonable enough to support a pre-enforcement action. *See* N.Y. STAT. LAWW § 235 ("When a word is susceptible of two or more significations, the meaning to be given must be determined from the context of the statute, the purpose and spirit of it, and the intention of the lawmakers."). Second, Plaintiff has not stated any facts showing that the Committee or any other law enforcement body will interpret the UPL Provisions as he does. Indeed, Plaintiff has offered no evidence as to the interpretation of the UPL Provisions by New York courts and the Committee. Finally, Plaintiff has not shown that the Committee has threatened to prosecute him for such activities.

**\*7** The only allegations supporting a fear of prosecution are those related to the Committee's post-disbarment investigations. Those investigations related to a far narrower range of activities: Plaintiff's conduct in his home, where his spouse maintains a home office for her law practice; and Plaintiff's service of process in a matter involving his spouse. Am. Compl. ¶¶ 37–44, 49–50. Plaintiff has also alleged that, because of the investigations, he has refrained from communicating with longtime friends who are clients of his spouse for fear of prosecution for unauthorized practice of law. *Id.* ¶ 104. Assuming the truth of these allegations, Plaintiff has stated facts showing a wellfounded fear that the law might be enforced against him for these activities. Accordingly, Plaintiff has standing to bring his claim to enjoin enforcement of the UPL Provisions against him based on his spouse's law practice. [3]

In the final category of remaining claims, Plaintiff alleges that the Committee has unlawfully withheld the file related to his disciplinary charges both during and after his disbarment proceedings. *Id.* ¶¶ 65–66, 75. Although the precise contours of this claim are unclear, Plaintiff's allegation that the withholding of the disciplinary file violates his due process rights constitutes a particularized injury traceable to the challenged conduct that could be redressed by a favorable decision. Therefore, although the Court makes no determination as to the merits of this claim at this time, Plaintiff has standing to bring it. [4]

### 3. Sovereign Immunity

#### a. Damages

Plaintiff seeks damages under 42 U.S.C. § 1983, which provides that "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." It is well settled

that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This rule comports with the Eleventh Amendment to the United States Constitution, under which federal courts lack jurisdiction over suits for damages against state defendants. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Here, only Defendant Zayas has been sued in his individual capacity. *See* Am. Compl. Accordingly, to the extent Plaintiff seeks damages for his remaining claims, only Zayas can be liable.

*b. Declaratory and Injunctive Relief*

Eleventh Amendment immunity does not preclude suits for prospective declaratory and injunctive relief from continuing violations of federal law brought against state officers in their official capacities. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *W. Mohegan Tribe & Nation v. Orange Cnty.,* 395 F.3d 18, 21 (2d Cir.2004). Plaintiff's claims for access to the Committee's disciplinary file and for an injunction against enforcement of the UPL Provisions are therefore not barred by sovereign immunity.

**\*8** "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Young,* 209 U.S. at 157. "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Id.* at 157. Courts in this circuit have generally applied this holding to require only that a defendant have a "connection" with the unconstitutional act, and not more. *See In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 372–73 (2d Cir.2005); *Pugh v. Goord,* 571 F.Supp.2d 477, 517 (S.D.N.Y.2008) (collecting cases). The state official need not be personally involved with the alleged wrongdoing to be properly named as a defendant. *Marinaccio v. Boardman,* No. 02–CV–831, 2005 WL 928631, at \*9 (N.D.N.Y. Apr. 19, 2005) (collecting cases).

Applying this standard to Plaintiff's pre-enforcement challenge to the UPL Provisions, the Court finds that Defendants Zayas, Duffy, Peters, Northrup, and Schneiderman are proper defendants to Plaintiff's claims for prospective declaratory and injunctive relief. Plaintiff specifically alleges that Zayas "investigated both complaints." Am. Compl. ¶ 92. Zayas is therefore directly connected to the feared enforcement. Duffy is a proper defendant in her capacity as Chairperson of the Committee, which is charged with investigating attorney misconduct and with supervising the Committee's staff. *See* N.Y. CT. RULES § 806.3(b). Peters, as a Third Department Justice, has the power to punish violations of the Disbarment Order as a contempt of court. *See* N.Y. JUD. LAW §§ 90(2), 750, 753. Northrup, as a District Attorney, is authorized to prosecute the crime of unauthorized practice of law. *See* N.Y. COUNTY LAW § 700(1); N.Y. JUD. LAW § 486. Finally, the New York Attorney General is specifically authorized to bring both criminal and civil actions against any person for "unlawful practice of law." N.Y. JUD. LAW § 476–a(1).

On the other hand, Defendants Skelos, Cuomo, and Lippman have no connection to the enforcement of the UPL Provisions. Plaintiff has not identified any connection between Skelos, a state legislator, and enforcement of the challenged laws. Regarding Cuomo, Plaintiff states that he "seeks to enjoin the [sic] Governor Cuomo in his executive capacity from enforcing UPL statutes ...." Resp. at 11. However, Plaintiff does not identify any statutory provision giving the Governor the power to enforce the UPL Provisions, and the Governor's general constitutional duty to "take care that the laws are faithfully executed" does not create a sufficiently close connection to enforcement. *See Nolan v. Cuomo,* No. 11 CV 5827, 2013 WL 168674, at \*9 (E.D.N.Y. Jan. 16, 2013) (quoting N.Y. CONST . art IV, § 3, and collecting cases). Finally, Plaintiff has not identified any connection between Lippman and enforcement of the UPL Provisions.

**\*9** The Court must also consider whether Plaintiff has named a proper defendant in his claim for access to the disciplinary file. As mentioned *supra,* the precise subject of this claim remains obscure, but it appears that only Zayas and the Committee have any connection to the alleged wrongdoing. *See* Am. Compl. ¶¶ 62–66. Accordingly, only

Defendants Zayas and Duffy, in her capacity as Chairperson of the Committee, are proper defendants for this claim.

### 4. Official Immunity

#### a. Damages

In their briefs, the parties discussed various forms of official immunity from suits for money damages. Mem. at 7–11, 19; Resp. at 10–16; Reply at 2–3. This discussion is largely irrelevant since only Zayas is sued for damages. The Court therefore examines only the parties' arguments as to Zayas's immunity from suit.

"A limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts." *Scotto v. Almenas,* 143 F.3d 105, 110 (2d Cir.1998). "However, because absolute immunity detracts from section 1983's broadly remedial purpose, the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* (citation, alteration, and internal quotation marks omitted). "Courts take a functional approach when determining whether an official receives qualified or absolute immunity; the level of immunity flows not from rank or title or location within the Government, but from the nature of the official's responsibilities." *Id.* (alteration and internal quotation marks omitted).

First, Defendants argue that Zayas is protected by absolute quasi-judicial immunity. Under this doctrine, absolute immunity extends to administrative officials performing discretionary acts of a judicial nature. *See Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.1988). But Plaintiff's claims based on the post-disbarment investigations and the denial of access to the disciplinary file do not concern acts of a judicial nature. Defendants cite two district court cases in which members of state bar disciplinary committees were found protected by quasi-judicial immunity. Mem. at 11 (citing *Brooks v. N.Y. Sup.Ct.,* No. 02–CV–4183, 2002 WL 31528632 (E.D.N.Y. Aug. 16, 2002) and *Sassower v. Mangano,* 927 F.Supp. 113, 120 (S.D.N.Y.1996)). However, those decisions concerned claims challenging the adjudication of attorney disciplinary proceedings by the committees. *See Brooks,* 2002 WL 31528632, at *2; *Sassower,* 927 F.Supp. at 120. Here, Plaintiff's remaining claims concern actions by Zayas that are investigative

and administrative, not judicial. Accordingly, quasi-judicial immunity does not apply.[5]

Second, Plaintiff argues that Zayas is not protected by prosecutorial immunity.[6] Prosecutors are absolutely immune from suits for damages based on the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman,* 424 U.S. 409, 426–27, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). However, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). "[W]hen a prosecutor is not acting as an 'officer of the court,' but is instead engaged in, say, investigative or administrative tasks," absolute immunity does not apply. *Van de Kamp v. Goldstein,* 555 U.S. 335, 342, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009).

**\*10** Zayas's alleged actions in the post-disbarment investigations were purely investigatory, not prosecutorial. And the alleged withholding of the disciplinary file post-disbarment can best be described as administrative. Defendants provide no explanation for why prosecutorial immunity should nevertheless apply to these acts. *See* Reply at 2–3 (presenting two block quotes on prosecutorial immunity unaccompanied by any analysis). No prosecutorial acts are at issue in Plaintiff's surviving damages claims, and so Zayas is not entitled to absolute immunity.[7]

#### b. Declaratory and Injunctive Relief

Section 309(c) of the Federal Courts Improvement Act ("FCIA") of 1996, Pub.L. No. 104–317; 110 Stat. 3847, 3853, amended § 1983 to provide that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." This amendment overturned *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), which had held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *id.* at 542; *see also Simmons v. Fabian,* 743 N.W.2d 281, 289–94 (Minn.Ct.App.2007) (detailing legislative history of FCIA). Defendants argue that § 309(c) requires dismissal of the judicial and quasi-judicial defendants—Peters, Zayas, and Duffy. Mem. at 10–11. However, it is clear from both the language and intent of

§ 309(c) that its statutory grant of immunity from equitable remedies applies only to suits against judicial defendants acting in their *judicial* capacities. As stated *supra,* none of the actions underlying Plaintiff's remaining claims—the post-disbarment investigations and the withholding of the disciplinary file—are judicial.[8] FCIA § 309(c) therefore does not shield Peters, Zayas, and Duffy from Plaintiff's remaining claims for declaratory and injunctive relief.

### 4. Younger Abstention

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,* 6 Wheat. 264, 19 U.S. 264, 404, 5 L.Ed. 257 (1821). *Younger v. Harris* recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. 401 U.S. 37, 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Although the *Younger* abstention doctrine has been extended to certain "civil enforcement proceedings" and to civil proceedings "uniquely in furtherance of the state courts' ability to perform their judicial functions," the Supreme Court recently confirmed that these exceptional categories define the scope of the doctrine. *Sprint Commc'ns, Inc. v. Jacobs,* 143 S.Ct. 584, 591 (2013).[9]

Here, the Court finds that it must exercise jurisdiction over Plaintiff's remaining claims. In arguing for abstention, Defendants cite *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* which held that abstention was required in a suit to enjoin pending state attorney disciplinary proceedings. Mem. at 14 (citing 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). But no disciplinary proceedings are pending in this case. The disbarment proceedings have concluded and are nevertheless not the subject of any of the remaining claims. And the post-disbarment investigations for unauthorized practice of law have not culminated in the filing of a complaint. *See Sprint,* 134 S.Ct. at 592 (stating that in the *Younger* "genre" of cases, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges"). Therefore, although enjoining pending disciplinary proceedings against a disbarred attorney for unauthorized practice of law might interfere with the functioning of the New York State judicial system, no such proceedings

are pending in this case.[10] Accordingly, *Middlesex* is inapplicable, and the Court must exercise jurisdiction over the case.

## IV. PLAINTIFF'S MOTION

### A. Legal Standard

**\*11** Under Rule 15(d) of the Federal Rules of Civil Procedure, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). "[A] Rule 15(d) motion may be appropriate when the movant seeks to add new parties or claims arising from the new events." *Bracci v. Becker,* No. 11–CV–1473, 2013 WL 123810, at \*25 (N.D.N.Y. Jan. 9, 2013). "Rule 15(d) motions are evaluated by the court under the same standards used to evaluate motions to amend pleadings under Rule 15(a)." *Id.* at \*26.

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Manson v. Stacescu,* 11 F.3d 1127, 1133 (2d Cir.1993). Nevertheless, it is appropriate for leave to be denied if the proposed amendment would be futile or cause undue delay. *See Foman,* 371 U.S. at 182; *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

Additionally, Local Rule 7.1(a)(4) requires a party moving to amend a pleading pursuant to Rule 15 to attach "an unsigned copy of the proposed amended pleading to its motion papers." It further provides:

> The motion must set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.

> Where a party seeks leave to supplement a pleading pursuant to Fed.R.Civ.P. 15(d), the party must limit the proposed supplemental pleading to transactions or occurrences or events which have occurred since the date of the pleading that the party seeks to supplement. The party must number the paragraphs in the proposed pleading consecutively to the paragraphs contained in the pleading

that it seeks to supplement. In addition to the pleading requirements set forth above, the party requesting leave to supplement must set forth specifically the proposed supplements and identify the supplements in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means.

### B. Discussion

Plaintiff's failure to comply with the Rules makes it nearly impossible for the Court to evaluate his Motion to supplement the Amended Complaint. The paragraphs in the Proposed Supplemental Complaint are not numbered consecutively to the paragraphs in the Amended Complaint, *see* Proposed Supplemental Compl., leaving the relationship between the two unclear. Plaintiff further obfuscates the purpose of his Motion by including a proposed supplemental pleading consisting almost entirely of facts that took place *before* the filing of the Amended Complaint. *See generally* Proposed Supplemental Compl. And, in his Response to Defendants' Motion, Plaintiff appears to refer to his Motion to supplement as "a separate motion to amend" the Amended Complaint. Resp. at 10. The Court therefore cannot even determine whether Plaintiff intends to move to supplement the complaint under Rule 15(d) or to amend it under Rule 15(a).

**\*12** Rather than stagger through this fog of confusion, the Court denies the Motion for failure to comply with Local Rule 7.1(a)(4). Plaintiff is advised that any further Motions must comply with all applicable provisions of the Federal Rules of Civil Procedure and the Local Rules of the Northern District of New York. In light of the bloviations in the Amended Complaint, the Court specifically warns Plaintiff that any additional pleadings must comply with the requirements of Federal Rule of Civil Procedure 8: a pleading must contain "a short and plain statement of the claim," and "[e]ach allegation must be simple, concise, and direct." FED. R. CIV. P. 8(a)(2), (d)(1).

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that Defendants' Motion (Dkt. No. 18) to dismiss is **GRANTED in part** and **DENIED in part;** and it is further

**ORDERED,** that, consistent with this Memorandum–Decision and Order, Plaintiff's claim based on the post-disbarment investigations and possible prosecution for unauthorized practice of law related to his spouse's law practice survives to the extent it seeks prospective declaratory and injunctive relief against Defendants Zayas, Duffy, Peters, Northrup, and Schneiderman, and monetary relief against Defendant Zayas. Plaintiff's claim for access to the disciplinary file survives to the extent it seeks prospective declaratory and injunctive relief against Defendants Zayas and Duffy, and monetary relief against Defendant Zayas. Plaintiff's remaining claims are **DISMISSED;** and it is further

**ORDERED,** that Defendants Lippman, Cuomo, and Skelos are **DISMISSED** from the case; and it is further

**ORDERED,** that Plaintiff's Motion (Dkt. No. 28) to supplement the Amended Complaint is **DENIED;** and it is further

**ORDERED,** that the Letter Motions (Dkt.Nos.44, 45) are **DENIED as moot;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1311560

---

### Footnotes

1    Because this matter is before the Court on a motion to dismiss, the factual allegations of the Complaint are accepted as true and form the basis of this section. *See* 📁 *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d

129, 131 (2d Cir.1998) ("When considering a motion to dismiss for lack of subject matter jurisdiction or for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint.").

2       The Supreme Court has applied this doctrine in 🚩*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and 🚩*D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *See* 🚩*Skinner v. Switzer,* ––– U.S. ––––, ––––, 131 S.Ct. 1289, 1297, 179 L.Ed.2d 233 (2011) ("[T]he *Rooker–Feldman* doctrine has been applied by this Court only twice.").

3       Plaintiff also has standing to proceed on a damages claim against Zayas based on the postdisbarment investigations. The Court makes no determination as to the merits of either claim at this time.

4       As stated *supra,* any claim seeking to overturn the Disbarment Order based on the withholding of the disciplinary file is barred by the *Rooker–Feldman* doctrine.

5       Plaintiff's claims challenging the disbarment proceedings, which would be barred by absolute quasi-judicial immunity, are also barred by the *Rooker–Feldman* doctrine.

6       The State Defendants did not raise the defense of absolute prosecutorial immunity in support of their Motion, and first mentioned it in their Reply. Reply at 2–3. The Court need not consider issues raised for the first time in a party's reply brief. 🚩*Shanks v. Village of Catskill Bd. of Trustees,* 653 F.Supp.2d 158, 165 n. 6 (N.D.N.Y.2009) (citing *Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir.1993)). Furthermore, absolute official immunity does not deprive a court of subject matter jurisdiction, *Byars v. Malloy,* No. 1 1CV17, 2011 WL 4538073, at *5 (D.Conn. Sept. 29, 2011), so the Court has no duty to raise it *sua sponte.* Nevertheless, for clarity's sake, the Court examines the applicability of prosecutorial immunity.

7       The Court notes that the State Defendants have not invoked qualified immunity.

8       Additionally, the language and legislative history of the FCIA cast doubt on Plaintiff's implied assertion that this statutory grant of judicial immunity extends to those officials protected by common-law quasi-judicial immunity. *See* 🚩*Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998) ("It is not clear from the language of the amendment or from our cursory review of the legislative history whether the new restriction on the granting of injunctive relief against 'judicial officers' was meant to extend to other officials whose entitlement to absolute immunity from damages had been recognized in light of their roles in judicial proceedings."); 🚩*Simmons,* 743 N.W.2d at 294 ("[T]he legislative history demonstrates that Congress did not even consider the issue of quasi-judicial officers when it amended 🚩*section 1983,* much less affirmatively intend to restrict the availability of injunctive relief against them.").

9       *Sprint* was decided after the parties briefed Defendants' Motion. The State Defendants subsequently sought leave to amend their *Younger* discussion in light of *Sprint,* and Plaintiff sought leave to respond. Dkt. Nos. 44, 45 (collectively, "Letter Motions"). The Court has reviewed the State Defendants' amended argument and finds it unpersuasive, and therefore denies the Letter Motions as moot.

10      Defendants also argue that abstention "may be warranted even where no state proceedings are pending .... where the relief sought would require equitable intervention that is both intrusive and unworkable." Mem. at 14–15; *see also* Dkt. No. 44 at 4. Defendants rely on 🚩*O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), and 🚩*Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Mem. at 14. Those cases involved requests for structural injunctions modifying state-court bail and sentencing procedures, and internal police disciplinary procedures, respectively. *O'Shea,* 414 at 491; 🚩*Rizzo,* 423 U.S.

at 379. Here, Plaintiff's remaining claims do not seek wide-ranging structural relief. Rather, he seeks: (1) an injunction against the enforcement of a discrete set of statutory provisions against a single individual; and (2) an injunction granting him access to a set of government documents. Accordingly, should Plaintiff succeed on his claims, the relief requested will not be unworkable or unduly intrusive to New York's sovereign interests. Abstention is therefore inappropriate.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681

Only the Westlaw citation is currently available.

United States District Court,

E.D. New York.

Ramon FLORES, Plaintiff,

v.

Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).

|

Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell,
Hauppauge, NY, for defendants Thomas J. Spota III, Linda
Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavitta & Contini
LLP, Garden City, NY, for defendants Robert C. Mitchell,
Edward Vitale, and Douglas O'Connor.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

 **\*1** Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings
this action against Suffolk County Executive Steve Levy
("Levy"), Suffolk County District Attorney Thomas J. Spota
III ("Spota"), Assistant District Attorneys Linda Kevins
("Kevins"), Dana Brown ("Brown"), and John Scarglato
("Scarglato") (collectively, "defendant prosecutors"), Suffolk
County Court Judge Louis J. Ohlig ("Judge Ohlig")
(collectively, "County Defendants"), Legal Aid Society
Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed"
Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor")
(collectively, "Legal Aid defendants"), John A. Bray, and
Wilma Peterson, alleging malicious prosecution, conspiracy
under ⚐42 U.S.C. § 1983, and deliberate indifference, all
arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to
Fed.R.Civ.P. 12(c). For the following reasons, defendants'
motions are granted.

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint and are not
findings of fact by the court. The Court assumes these facts to
be true for the purpose of deciding this motion and construes
them in the light most favorable to plaintiff, the non-moving
party.

On February 20, 2003, Flores was arrested in Suffolk County
and charged with one count of criminal assault in the second
degree and one count of criminal contempt in the first degree.
(Compl.¶ 1.) On February 25, 2003, an unidentified man came
to see Flores and told him it was not advisable that he testify
before the grand jury. (Compl.¶ 3.) The unidentified man
stated that he was not an attorney and that he could not answer
any additional questions. (Compl.¶ 3.) Later that afternoon,
plaintiff appeared before the court and was provided with
what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County
Court and arraigned on indictment 493-03, which charged
plaintiff with: 3 counts of assault in the second degree, 2
counts of criminal contempt in the first degree, aggravated
contempt, and menacing. (Compl.¶ 4.) Plaintiff informed
the court that he still had no formal attorney of record.
(Compl.¶ 4A.) The Court appointed a Legal Aid attorney
to represent plaintiff. (Compl.¶ 4B.) After the arraignment,
plaintiff complained to Legal Aid attorney Douglas O'Connor
that plaintiff was not provided with an attorney at an earlier
stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a
motion to dismiss would be filed on the grounds that plaintiff
was not afforded an opportunity to testify before the grand
jury, and that plaintiff was not provided counsel at the time
the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his
appointed Legal Aid attorney Edward Vitale. (Compl.¶ 5.)
Plaintiff reviewed the proposed motion to dismiss. (Compl.¶
5.) Plaintiff was unhappy that the motion did not raise the
issue of plaintiff's prior lack of representation. (Compl.¶
5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶

5.) Vitale became angry with plaintiff and told plaintiff he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitale requested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

**\*2** On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a

loss of actual teeth, when, in fact, it was "broken bridge work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶ 9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired into bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which was broken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

**\*3** On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

### B. Procedural History

On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

### C. Defendant's Motion to Strike

On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to explain why she mistakenly described her broken bridge work as her bottom teeth:

**\*4** The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.

The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.

For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.

When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.

I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See* 📁 *Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); 📁 *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." 📁 *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5** (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra,* based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and

he was directed to file his opposition by September 15, 2008, which plaintiff did do.

## D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing theform of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at * 15-* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.,* 287 F.3d 138, 145-46 (2d Cir.2002) (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6** Finally, in connection with a motion to dismiss under Rule 12(b) (6), as noted above, the Court may only consider

"facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference."

*Nechis,* 421 F.3d at 100; *accord* *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff appended certain documents to his complaint and the Court has confined its review to the face of the complaint and the documents attached thereto by plaintiff.

## II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

### A. The Legal Aid Attorneys and Ms. Peterson

Plaintiff asserts Section 1983 claims against (1) Ms. Peterson based upon her allegedly false testimony in connection with his criminal case; and (2) his Legal Aid Attorneys for their alleged failure to adequately represent him in connection with his initial indictment. As discussed below, the Section 1983 claims against these defendants fail as a matter of law because (1) none of these defendants are state actors; and (2) plaintiff's conclusory allegations of conspiracy between these defendants and state actors cannot withstand a motion to dismiss.[1]

### (1) State Action Requirement

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

**\*7** In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also* *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS)(MLO), 2001 U.S. Dist. LEXIS 7786, at \* 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aidattorneys). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g.,* *Elmasri v. England,* 111 F.Supp.2d 212, 221

(E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe,* 460 U.S. at 329-30); *see also Mitchell v. Mid-Erie Counseling Service,* No. 05-CV6169 CJS(P), 2005 WL 1579810, at *3 (W.D.N.Y. June 29, 2005) (" 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell,* 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello,* 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

(2) Conspiracy Pursuant to § 1983

**\*8** The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section 1983 conspiracy claim. *See Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity

acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York,* No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello,* 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello*); *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek,* No. 3:05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981).

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium

of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant[']s meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman,* 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, *Fisk v. Letterman,* 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

### i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See* Ciambriello, 292 F.3d at 324 (dismissing Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g ., Rzayeva v. United States,* 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiffs' vague and conclusory allegations against private 'conspirators' are entirely unclear, unsupported by facts, and insufficient to substantiate their claims."); Fiske, 401 F.Supp.2d at 377 ("Communications between a private and a state actor,

without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also* Marion v. Groh, 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

### ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." Ciambriello, 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also* Green v. Bartek, No. 3:05CV1851 (SRU), 2007 WL 4322780, at \*3 (D.Conn. Dec. 7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); Williams v. Jurow, No. 05 Civ. 6949(DAB), 2007 WL 5463418, at \*12 (S.D.N.Y. June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted

state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing ⚑ Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing ⚑ Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under ⚑ Section 1983.").

**\*11** In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the ⚑ Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

### (3) Other Defects in Claims against the Legal Aid Defendants

In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no

federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under ⚑ Section 1983. *See* ⚑ *Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under ⚑ 42 U.S.C. § 1983 and ⚑ 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are barred by Supreme Court's decision in ⚑ *Heck v. Humphrey,* 512 U.S. 477 (1994). [3]

**\*12** Finally, even assuming *arguendo* that some ⚑ Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred.

With respect to Section 1983 and 1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( Section 1983), *cert. denied,* 538 U.S. 922 (2003); *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) ( Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immune from a civil suit for damages under Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at * 12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting *Imbler,* 424 U.S. at 419 n. 13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill,* 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007 U.S.App. LEXIS 28939, at *3-*4 (2d Cir. Dec. 12, 2007) (quoting *Imbler,* 424 U.S. at 430); *Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill,* 45 F.3d at 661; *see also Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003)

("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at * 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U .S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform

the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted).

"[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir.1997). The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity.[4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at *2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the claim of malicious prosecution against [the ADA] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their presentation of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

**\*15** Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

### C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra.* Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra.*

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

### D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. [6] As discussed in detail *supra,* it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have Section 1983 liability given the allegations in plaintiff's complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at \*11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to § 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to

replead should be denied."); *see also* Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

### III. CONCLUSION

**\*16** For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See* Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4394681

### Footnotes

1     As a threshold matter, there is a substantial question as to whether plaintiff can proceed at all on a malicious prosecution claim for his acquitted counts because they were so closely intertwined with his counts of conviction and are both felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See* Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir.1989) (holding that claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also* Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on assault in the second degree does not necessarily bar a malicious prosecution claim on assault in the first degree or attempted assault in the first degree; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses, "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." Pichardo v. N.Y. Police Dep't., No. 98-CV-429 (DLC), 1998 WL 812049, at \*3 (S.D.N.Y. Nov. 18, 1998) (citing Janetka, 892 F.2d at 190); *see also* Ostroski v. Town of Southold, 443 F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing factors). Analyzing the various factors in the instant case-including that both crimes are felonies (and thus both serious crimes), and arose out of the same incident-the Court concludes that the existence of probable cause as to the counts of conviction should preclude a malicious prosecution claim on the acquitted counts. In fact, as the judge who presided over the bench trial noted, the basis for the acquittal on the assault in the first degree (despite the conviction for assault in the second degree) was the prosecution's failure to demonstrate serious injury. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." Pichardo, 1998 WL 812049, at \*4 (finding conviction on misdemeanor charge precluded malicious prosecution on felony assault count arising out of same incident). In any event, the Court finds that there are numerous other grounds for dismissal of the case, discussed in detail *infra*.

2    Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under

Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous.

*See, e.g.,* Liner v. Goord, 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous, malicious, or fails to states [sic]

a claim upon which relief may be granted' ") (quoting 28 U.S.C. § 1915(a) & (b)(1)).

3    The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

4    To the extent that plaintiff is attempting to argue that absolute immunity should not apply because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

5    Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua*

*sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a section 1983

suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will

be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation

that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

6    In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4394681
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ramon FLORES, Plaintiff,
v.
Steve LEVY, Thomas J. Spota, III, Wilma
Peterson, Louis J. Ohlig, Edward Vitale, Douglas
M. O'connor, John A.Bray, Linda Kevins,
John Scarglato, Dana Brown, Defendants.

No. 07-CV-3753 (JFB)(WDW).
|
Sept. 23, 2008.

**Attorneys and Law Firms**

Ramon Flores, pro se.

Wilma Peterson, pro se.

Assistant Suffolk County Attorney Brian C. Mitchell, Hauppauge, NY, for defendants Thomas J. Spota III, Linda Kevins, John Scarglato, Dana Brown and Steve Levy.

Amy M. Monahan of L'Abbate, Balkan, Colavitta & Contini LLP, Garden City, NY, for defendants Robert C. Mitchell, Edward Vitale, and Douglas O'Connor.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiff Ramon Flores ("plaintiff" or "Flores"), brings this action against Suffolk County Executive Steve Levy ("Levy"), Suffolk County District Attorney Thomas J. Spota III ("Spota"), Assistant District Attorneys Linda Kevins ("Kevins"), Dana Brown ("Brown"), and John Scarglato ("Scarglato") (collectively, "defendant prosecutors"), Suffolk County Court Judge Louis J. Ohlig ("Judge Ohlig") (collectively, "County Defendants"), Legal Aid Society Attorneys Robert C. Mitchell ("Mitchell"), Edward "Ed" Vitale ("Vitale"), and Douglas M. O'Connor ("O'Connor") (collectively, "Legal Aid defendants"), John A. Bray, and Wilma Peterson, alleging malicious prosecution, conspiracy under 🏳 42 U.S.C. § 1983, and deliberate indifference, all arising from defendant's prosecution.

Defendants moved to dismiss the claims pursuant to Fed.R.Civ.P. 12(c). For the following reasons, defendants' motions are granted.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint and are not findings of fact by the court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiff, the non-moving party.

On February 20, 2003, Flores was arrested in Suffolk County and charged with one count of criminal assault in the second degree and one count of criminal contempt in the first degree. (Compl.¶ 1.) On February 25, 2003, an unidentified man came to see Flores and told him it was not advisable that he testify before the grand jury. (Compl.¶ 3.) The unidentified man stated that he was not an attorney and that he could not answer any additional questions. (Compl.¶ 3.) Later that afternoon, plaintiff appeared before the court and was provided with what he believed to be Legal Aid counsel. (Compl.¶ 4.)

On March 5, 2003, plaintiff was taken to the Suffolk County Court and arraigned on indictment 493-03, which charged plaintiff with: 3 counts of assault in the second degree, 2 counts of criminal contempt in the first degree, aggravated contempt, and menacing. (Compl.¶ 4.) Plaintiff informed the court that he still had no formal attorney of record. (Compl.¶ 4A.) The Court appointed a Legal Aid attorney to represent plaintiff. (Compl.¶ 4B.) After the arraignment, plaintiff complained to Legal Aid attorney Douglas O'Connor that plaintiff was not provided with an attorney at an earlier stage. (Compl.¶ 4C.) O'Connor informed plaintiff that a motion to dismiss would be filed on the grounds that plaintiff was not afforded an opportunity to testify before the grand jury, and that plaintiff was not provided counsel at the time the grand jury was convened. (Compl.¶ 4C.)

On April 3, 2004, plaintiff returned to court and spoke to his appointed Legal Aid attorney Edward Vitale. (Compl.¶ 5.) Plaintiff reviewed the proposed motion to dismiss. (Compl.¶ 5.) Plaintiff was unhappy that the motion did not raise the issue of plaintiff's prior lack of representation. (Compl.¶ 5.) Plaintiff ordered Vitale not to file the motion. (Compl.¶

5.) Vitale became angry with plaintiff and told plaintiff he was "on his own." (Compl.¶ 5.) Plaintiff notified the Court that he was not satisfied with the motion. (Compl.¶ 5B.) Vitale requested that he be removed as counsel for plaintiff. (Compl.¶ 5B.) The Court granted Vitale's request and appointed John Bray as counsel. (Compl.¶ 5B.) Further, the court provided plaintiff with additional time to file his motion to dismiss, in order to allow his newly appointed counsel to review the motion. (Compl.5B.)

**\*2** On April 8, 2003, the court formally appointed Bray as counsel. The case was adjourned for second call so that plaintiff and Bray could confer. (Compl.¶ 6.) Plaintiff asked Bray to amend the motion to dismiss to include an affidavit, noting that plaintiff was not provided with counsel at the time of indictment. (Compl. ¶ 6A .) Bray refused to make the changes and argued with plaintiff. (Compl.¶ 6A.) No second call occurred and the case was adjourned until April 28, 2003. Thereafter, plaintiff notes that Bray refused to assist him and was not responsive to plaintiff's requests. (Compl.¶ 6B.) On April 18, 2003, plaintiff filed a motion to dismiss, asserting that he was not provided representation during a critical stage of the action. (Compl.¶ 6C.) On April 26, 2004, plaintiff received legal mail containing an order from Judge Ohlig, dismissing the indictment based upon a lack of legal counsel provided to plaintiff. (Compl.¶ 6D.)

On May 4, 2003, plaintiff filed three grievances with the Tenth Judicial District against O'Connor, Vitale, and Bray. (Compl. ¶ 7 .) Plaintiff accused the attorneys of failing to safeguard his rights, lying to him, and failing to provide competent assistance. (Compl.¶ 7.) In addition, plaintiff filed a grievance against Judge Ohlig alleging that he violated plaintiff's constitutional rights. (Compl.¶ 7.)

On May 5, 2003, plaintiff appeared in court to testify before a second grand jury. (Compl.¶ 8.) Plaintiff refused to testify before the grand jury because he did not trust Bray. (Compl.¶ 8.) Plaintiff informed the court of his objections to Bray's representation. (Compl.¶ 8A.) As a result of not testifying, plaintiff claims that he was unable to provide the mitigating defense of "Intoxication." (Compl.¶ 8B.)

On May 19, 2003, plaintiff was arraigned on the superseding indictment 111-03, which contained the same 7 counts as the original indictment, plus an additional count of assault in the first degree. (Compl.¶ 9.) Plaintiff alleges that the complainant testified before the grand jury that plaintiff had "knocked out her teeth" thereby implying that there was a

loss of actual teeth, when, in fact, it was "broken bridge work." (Compl.¶ 9Ai.) Plaintiff alleges that the prosecution knew this testimony was false because the medical records in the prosecution's possession indicated that it was broken bridge work and not a loss or break of actual teeth. (Compl.¶ 9Aii.) Plaintiff concludes that the additional first degree assault charge was added as a punitive tactic designed to silence and stop plaintiff from "asserting and continuing to petition for redress" of his constitutional right to counsel. (Compl.¶ 9B.)

In August of 2004, plaintiff was tried on the eight counts contained within the second indictment. (Compl.¶ 11.) Plaintiff alleges that, on August 4, 2004, on direct examination, Wilma Peterson falsely testified that plaintiff had knocked out her teeth. (Compl.¶ 13.) On August 5, 2004, Brown alluded to the fact that Ms. Peterson had the "knocked out teeth" repaired with bridge work. (Compl.¶ 14.) Plaintiff shouted out that the alleged injury was broken bridge work and not actually teeth. (Compl.¶ 14A.) The Court then asked Ms. Peterson whether plaintiff broke her teeth or bridge work. (Compl.¶ 14A.) Ms. Peterson responded that it was bridge work which was broken by plaintiff's actions. (Compl.¶ 14A.) The prosecution allegedly failed to elicit a recantation from Ms. Peterson as to her testimony that she lost actual teeth. (Compl.¶ 14B.)

**\*3** On September 2, 2004, after a trial on the charges in the indictment before the court without a jury, plaintiff was convicted of Assault in the Second Degree under Counts 3 and 4, Menacing in the Second Degree under Count 5, Aggravated Criminal Contempt under Count 6, and Criminal Contempt in the First Degree under Count 7. (Compl. at A-2.) Plaintiff was acquitted on the crime of Assault in the First Degree under Count 1, Assault in the Second Degree under Count 2, and Criminal Contempt in the First Degree under Count 8. (Compl. at A-2 and A-3.) The court noted that the basis for acquittal on the Assault in the First Degree charge was the prosecution's failure to establish "serious physical injury," especially in the absence of testimony by a medical expert regarding the victim's condition. *See* September 2, 2004 Decision (Attached to Compl. at A-3) ("While the photographs introduced into evidence by the People did establish that the victim did suffer considerable bruises and a knife wound, these injuries did not rise to the level of serious under the definition found in the Penal Law.").

## B. Procedural History

On September 5, 2007, plaintiff filed this complaint alleging malicious prosecution, conspiracy, and deliberate indifference. On January 31, 2007, the Legal Aid defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 1, 2008, the County Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 2, 2008, *pro se* defendant Wilma Peterson filed an answer to the complaint. On May 27, 2008, plaintiff filed an opposition to defendants' motions to dismiss. On June 2, 2008, the Legal Aid defendants filed their reply brief. On June 6, 2008, the County defendants filed their reply brief. On June 22, 2008, Ms. Peterson moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b) (6). On September 2, 2008, plaintiff filed his opposition to Ms. Peterson's motion.

## C. Defendant's Motion to Strike

On August 8, 2008, *pro se* plaintiff filed a motion to strike Ms. Peterson's motion to dismiss. In particular, plaintiff objected to the fact that he did not receive copies of certain exhibits that Peterson attempted to file under seal with her motion to dismiss, which the Court declined to accept for filing and returned to the defendant because they were unnecessary for purposes of deciding the motion to dismiss and would not be considered by the Court. For the reasons discussed below, plaintiff's request to strike the motion on such grounds is frivolous.

On July 22, 2008, in connection with her motion to dismiss, *pro se* defendant attempted to file certain exhibits that consisted of medical records, which she requested be placed under seal and not provided to plaintiff. The purpose of these exhibits was to corroborate Ms. Peterson's description in her affidavit of the injuries, which she testified resulted from plaintiff's assault on her, and to explain why she mistakenly described her broken bridge work as her bottom teeth:

**\*4** The plaintiff did punch me in my mouth, and, as I relived my horrific ordeal during my testimony in front of a second Grand Jury, I mistakenly described my broken bridge work as my bottom teeth. However, I did not conspire with anyone to make any misleading statements. I was only trying to relate the horrible experience of the night the plaintiff assaulted me.

The medical documents the plaintiff made reference to which formed the basis of his complaint against me, also describes the extent of my injuries caused by the brutal acts he committed against me.

For more than three hours, during the plaintiff's assault on me, he repeatedly punched me all over my body, he stabbed me with a meat cleaver and a knife, he bit me on my body, spat in my face and pulled a significant amount of my hair out of my head. He hopped on my broken leg, of which, I was wearing a cast and stabbed my broken leg with a knife and a meat cleaver. Throughout the plaintiff's assault on me, he continuously threatened to cripple me, to blind me, to paralyze me and to kill me.

When the plaintiff punched me in my mouth, he hit me so hard that he indeed broke my bridge work in the bottom of my mouth which also cut a large gash inside my bottom lip and punctured a hole in my bottom lip. As to date, I continue to suffer from nerve damage in my bottom lip. I have a permanent two and a half inch scar inside my bottom lip and a scar outside of my bottom lip from the punctured hole.

I have bruises all over my body. I had to see an optometrist for treatment of trauma to my eye. I have permanent scars on my forehead, hands and left leg. I continue to suffer from nerve damage in my left leg where he stabbed me with a knife. The plaintiff kicked me, very hard, in my lower back, thus, exacerbating a prior injury to my lower back that the plaintiff was aware of before he assaulted me. I now have facet damage in my lower back. And I am in constant pain.

(Peterson Affidavit, at 2-3) (citations omitted).

On July 22, 2008, the Court issued an order declining to accept these medical exhibits because the Court, for purposes of a motion to dismiss under Rule 12(b)(6), must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.

*See* Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir.2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir.2005). Thus, "the district court is normally required to look only to the allegations on the face of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.2007). Given this standard, the Court explained in the July 22 Order:

In the instant case, under this standard, the Court may not consider these medical records in connection with the motion to dismiss; rather, the Court will determine whether the allegations in the complaint state a legal claim against the defendant. In other words, consideration of these medical exhibits is unnecessary for purposes of deciding the motion. Therefore, the Court is declining to accept these exhibits at this time and the Clerk of the Court shall return them to plaintiff. Because Exhibits C-G are not being accepted or considered by the Court, her application to have the records sealed is moot and defendant need not serve such exhibits on defendant.

**\*5** (July 22, 2008 Order, at 1-2.)

Although plaintiff contends in his motion to strike that he cannot reply to defendant's submission without such exhibits, that argument is frivolous. As noted above, the Court has assumed his allegations in the complaint to be true and has not considered these exhibits. In fact, that is the reason the Court declined to accept them. Moreover, none of the factual information contained in Ms. Peterson's affidavit, and recited above, is pertinent to the legal issues in the motion to dismiss. Specifically, the primary issues, as discussed *infra*, based upon the allegations in the complaint, are (1) whether the private actor defendants (namely, Ms. Peterson and plaintiff's court-appointed attorneys) can be sued under Section 1983, and (2) whether the prosecutors have absolute immunity. The nature and extent of Ms. Peterson's injuries, as well as any medical records corroborating such injuries, have no relevance to the consideration of these legal issues. There is no basis to require Ms. Peterson to supply these materials to plaintiff, and unnecessarily reveal private medical information, where the Court rejected them for filing because they have no relevance at the motion to dismiss stage in determining whether plaintiff has a plausible Section 1983 claim. Therefore, plaintiff's motion to strike the defendant's motion was denied on August 21, 2008, and

he was directed to file his opposition by September 15, 2008, which plaintiff did do.

### D. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir.2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir.2005).* The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir.2007)* (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant,* "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally.... This obligation entails, at the very least, a permissive application of the rules governing theform of pleadings.... This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant,* No. 06-1590-cv, 2008 U.S.App. LEXIS 17113, at \* 15-\* 16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir.2002)* (holding that when plaintiff is appearing *pro se,* the Court shall " 'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' ") (quoting *Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.2000)*); *accord Sharpe v. Conole,* 386 F.3d 483, 484 (2d Cir.2004).

**\*6** Finally, in connection with a motion to dismiss under Rule 12(b) (6), as noted above, the Court may only consider

"facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference."

*Nechis,* 421 F.3d at 100; *accord* *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Here, plaintiff appended certain documents to his complaint and the Court has confined its review to the face of the complaint and the documents attached thereto by plaintiff.

## II. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco,* 750 F.2d 205, 214 (2d Cir.1984) (malicious prosecution)).

### A. The Legal Aid Attorneys and Ms. Peterson

Plaintiff asserts Section 1983 claims against (1) Ms. Peterson based upon her allegedly false testimony in connection with his criminal case; and (2) his Legal Aid Attorneys for their alleged failure to adequately represent him in connection with his initial indictment. As discussed below, the Section 1983 claims against these defendants fail as a matter of law because (1) none of these defendants are state actors; and (2) plaintiff's conclusory allegations of conspiracy between these defendants and state actors cannot withstand a motion to dismiss. [1]

### (1) State Action Requirement

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317-38 (1981) (quoting *United States v. Classic,* 313 U.S. 299 (1941)). Thus, a deprivation of a federal statutory or Constitutional right is actionable under Section 1983 when such deprivation is caused "by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). Under this standard, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West,* 487 U.S. at 50.

**\*7** In the instant case, it is clear from the allegations of the complaint that neither Ms. Peterson who was the alleged victim of the assault that was the subject of plaintiff's criminal trial, nor the Legal Aid Attorneys who represented plaintiff in the pre-trial stage, are state actors. With respect to his Legal Aid Attorneys, it is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. at 325; *see also* *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) ( "[A] legal aid society ordinarily is not a state actor amenable to suit under § 1983.") (citations omitted); *Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (affirming dismissal of Section 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983") (collecting cases); *Housand v. Heiman,* 594 F.2d 923, 924-25 (2d Cir.1979) ("[P]ublic defenders or court-appointed defense attorneys do not 'act under color of law.' "); *Sanchez v. Gazzillo,* No. 00-CV-6405 (JS)(MLO), 2001 U.S. Dist. LEXIS 7786, at * 17 (E.D.N.Y. June 5, 2001) (dismissing Section 1983 claim against plaintiff's Legal Aidattorney). Similarly, with respect to Ms. Peterson, the fact that plaintiff alleges that she perjured herself as a witness at his trial does not transform her into a state actor. *See, e.g.,* *Elmasri v. England,* 111 F.Supp.2d 212, 221

(E.D.N.Y.2000) ("[T]he mere fact that an individual testifies at a court proceeding does not render that person a state actor.") (citing *Briscoe,* 460 U.S. at 329-30); *see also Mitchell v. Mid-Erie Counseling Service,* No. 05-CV6169 CJS(P), 2005 WL 1579810, at *3 (W.D.N.Y. June 29, 2005) (" 'A witness testifying in a state court proceeding-even if [she] is a state employee who has perjured [herself]-has not acted under color of state law for purposes of § 1983.' ") (quoting *McArthur v. Bell,* 788 F.Supp. 706, 710 (E.D .N.Y.1992)).

Although these individuals are clearly not state actors, the Court recognizes that a private actor can be considered as acting under the color of state law for purposes of Section 1983 if the private actor was " 'a willful participant in joint activity with the State or its agents.' " *See Ciambriello,* 292 F.3d at 324 (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)) (citation omitted). This potential liability also applies to a court-appointed attorney where the attorney "conspires with a state official to violate the plaintiff's constitutional rights." *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005). Thus, the Court will next examine plaintiff's conspiracy claim to determine whether the allegations are sufficient to survive a motion to dismiss.

(2) Conspiracy Pursuant to § 1983

**\*8** The plaintiff alleges that "all of the defendants ... acted in collusion with the Suffolk County District Attorney's Office and thereby *UNDER COLOR OF STATE LAW* to violate my Federal and State 4th, 5th, 6th and 14th Amendment Constitutional Rights of The Accused." Specifically plaintiff alleges that the Legal Aid defendants conspired with the County Defendants, Bray, and Ms. Peterson to: (1) prevent him from testifying before a grand jury;

(2) deny him effective assistance of counsel; and charge him with additional, higher counts.

The mere use of the term "conspiracy" or "collusion" does not instantly transform a private actor into a state actor for purposes of Section 1983 and is clearly insufficient to satisfy Rule 12(b) (6) in connection with a Section 1983 conspiracy claim. *See Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity

acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Instead, "[i]n order to survive a motion to dismiss on a § 1983 conspiracy claim, the plaintiff must allege (1) an agreement between two or more state actors, (2) concerted acts to inflict an unconstitutional injury, and (3) an overt act in furtherance of the goal." *Carmody v. City of New York,* No. 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 25308, at *16 (S.D.N.Y. May 11, 2006) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-35 (2d Cir.2002)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *See Ciambriello,* 292 F.3d at 325 (dismissing conspiracy allegations where they were found "strictly conclusory"); *see also Walker v. Jastremski,* 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983.") (citing *Ciambriello); Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Green v. Bartek,* No. 3:05-CV-1851, 2007 WL 4322780, at *3 (D.Conn. Dec. 7, 2007) ("The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations.").

The need to guard against the use of conclusory allegations of conspiracy in the context of Section 1983 lawsuits against private actors is particularly compelling. If a plaintiff could overcome a motion to dismiss simply by alleging in a conclusory fashion a "conspiracy" between private actors and state actors, these private actors-including lawyers and witnesses-would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a "plausible" conspiracy claim. As the Second Circuit has emphasized, these conspiracy claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981).

**\*9** As discussed below, the complaint does not contain any specific allegations supporting a "plausible" conspiracy claim involving these private actors and the County Defendants. *Pro se* plaintiff's complaint is nothing more than a compendium

of conclusory, vague, and general allegations of a conspiracy to deprive him of constitutional rights. "Diffuse expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald,* 567 F.2d 55, 533 (2d Cir.1997). Of course, the Court recognizes that "[a plaintiff is not required to list the place and date of defendant[']s meetings and the summary of their conversations when he pleads conspiracy, ... but the pleadings must present facts tending to show agreement and concerted action." *Fisk v. Letterman,* 401 F.Supp.2d 362, 376 (S.D.N.Y.2005) (report and recommendation), accepted by, in part, rejected by, in part, *Fisk v. Letterman,* 401 F.Supp.2d 362 (S.D.N.Y.2005) (citations and quotations omitted). As the Supreme Court recently articulated in *Bell Atlantic Corp. v. Twombly,* although a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be "enough to raise a right to relief above the speculative level." 127 S.Ct. at 1965.

### i. Wilma Peterson

Plaintiff alleges that Ms. Peterson participated in the malicious prosecution against him by providing false testimony to the second grand jury and at trial that plaintiff had broke her bottom teeth. Moreover, plaintiff alleges that the defendant prosecutors were complicit in that perjury because the defendant prosecutors failed to correct the testimony. Nowhere in the complaint does plaintiff specifically assert that an explicit, or even implicit, agreement existed between Ms. Peterson and the defendant prosecutors to enter into a conspiracy. *See Ciambriello,* 292 F.3d at 324 (dismissing Section 1983 conspiracy claim because "[a]bsent from [plaintiff's] complaint are any factual allegations suggesting that [the private actor defendant] conspired with the County"). Plaintiff simply relies on vague and conclusory allegations to imply that Ms. Peterson conspired with the defendant prosecutors. The mere allegation that Ms. Peterson committed perjury regarding damage to her teeth, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim. *See, e.g ., Rzayeva v. United States,* 492 F.Supp.2d 60 (D.Conn.2007) ("Plaintiffs' vague and conclusory allegations against private 'conspirators' are entirely unclear, unsupported by facts, and insufficient to substantiate their claims."); *Fiske,* 401 F.Supp.2d at 377 ("Communications between a private and a state actor,

without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor."); *see also Marion v. Groh,* 954 F.Supp. 39, 43 (D.Conn.1997) (dismissing Section 1983 claim against a private citizen who testified against plaintiff at criminal trial where plaintiff made only generalized conspiracy allegations). Accordingly, plaintiff's claims of conspiracy regarding Ms. Peterson must be dismissed.

### ii. Legal Aid Defendants

**\*10** Plaintiff alleges that the Legal Aid defendants engaged in numerous conspiracies with the other defendants which include: (1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment.

Viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged a conspiracy involving the Legal Aid defendants and any other named party. Plaintiff has failed to articulate any allegations that would suggest that these alleged failures in performance by his attorneys, even if accepted as true, could plausibly support a claim that the Legal Aid defendants were part of a conspiracy with the County defendants. In fact, plaintiff failed to allege that Legal Aid defendants entered into an explicit or implicit agreement with any other named party to this lawsuit. Moreover, as the Second Circuit has noted, generalized allegations of conspiracy "ring especially hollow" where, as here, the parties alleged to be part of the same conspiracy have an "adversarial relationship." *Ciambriello,* 292 F.3d at 324. Given the complete absence of anything other than conclusory allegations of conspiracy, the Section 1983 claims against his Legal Aid attorneys cannot survive a motion to dismiss. *See also Green v. Bartek,* No. 3:05CV1851 (SRU), 2007 WL 4322780, at \*3 (D.Conn. Dec. 7, 2007) (dismissing Section 1983 claim against plaintiff's appointed attorney in Family Court where, "[a]lthough [plaintiff] includes several statements regarding an alleged conspiracy, he includes no facts to support this claim"); *Williams v. Jurow,* No. 05 Civ. 6949(DAB), 2007 WL 5463418, at \*12 (S.D.N.Y. June 29, 2007) ("Since plaintiff has alleged no facts that would, even if accepted as true, establish that the Legal Aid Defendants' conduct constituted

state action, the constitutional claims against them should be dismissed.") (report and recommendation); *Brewster v. Nassau County,* 349 F.Supp.2d 540, 547 (E.D.N.Y.2004) (dismissing Section 1983 claim against Legal Aid Society where plaintiff alleged in a conclusory fashion that Legal Aid waived his rights and failed to adequately represent him in order to "benefit themselves and/or District Attorney," but did "not actually allege[ ] any facts indicating an agreement to act in concert to harm him"); *Hom v. Brennan,* 304 F.Supp.2d 374, 378-79 (E.D.N.Y.2004) (dismissing Section 1983 claim against supervising attorney with the Nassau-Suffolk Law Services because "plaintiff fails to allege with particularity what the alleged conspiracy is, the purpose of the conspiracy, who was involved in the conspiracy, the existence of an act in furtherance of the conspiracy, or that he was injured as a result of the conspiracy"); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *3 (E.D.N.Y. Jan. 28, 1997) ("Notwithstanding the latitude afforded a *pro se* complaint, plaintiff fails to allege any facts supporting an inference that the Defense Attorney defendants colluded with the District Attorney defendants. While plaintiff's allegations might support a state law malpractice action against his former defense attorneys, they do not support a federal court's exercise of jurisdiction under Section 1983.").

**\*11** In sum, having failed to sufficiently allege a conspiracy cause of action between Ms. Peterson, the Legal Aid defendants, and any state actor, the Court dismisses the Section 1983 claim against Ms. Peterson and the Legal Aid defendants. [2]

### (3) Other Defects in Claims
### against the Legal Aid Defendants

In addition to the legal defects discussed in detail above, there are a number of other grounds set forth by the Legal Aid defendants which independently require dismissal of plaintiff's claims against them as a matter of law.

First, although plaintiff claims that his constitutional rights were violated by the Legal Aid defendants because they failed to ensure his right to appear before the grand jury and testify, it is axiomatic that there is no constitutional right to testify before the grand jury. *See Burwell v. Superintendent of Fishkill Correctional Facility,* No. 06 Civ. 787(JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) ("[T]here is no

federal constitutional right to testify before the grand jury. In fact, there is no federal right to a grand jury in state criminal prosecutions."); *Affser v. Murray,* No. 04 CV 2715, 2008 WL 2909367, at *7 (E.D.N.Y. July 28, 2008) ("[C]ounsel's alleged failure to secure petitioner's presence before the grand jury does not constitute ineffective assistance") (collecting cases). Thus, any claimed deprivation of such a right is not actionable under Section 1983. *See Frankos v. LaVallee,* 535 F.2d 1346, 1348 n. 3 (2d Cir.1976) ("The complaint alleges that appellees successfully conspired to prevent appellant from testifying at a grand jury investigation of the prison stabbing and that attorney Wylie was incompetent in handling plaintiff's request to testify there. Since one must allege deprivation of a constitutional right under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and there is no claim that there is a constitutional right to testify at a grand jury proceeding, the judgment of dismissal of these claims for relief is affirmed for lack of subject matter jurisdiction.").

Second, plaintiff suffered no injury from these alleged deprivations because, as set forth in plaintiff's complaint, the court dismissed the initial indictment and a superseding indictment was presented to a second grand jury during which plaintiff had the opportunity to testify, but refused to do so. (Compl.¶¶ 6(D), 8.) To the extent that plaintiff complains about the charges presented to the second grand jury or about his criminal trial, it is clear that he has no plausible claim for any such allegations against the Legal Aid defendants because they were replaced as his attorneys prior to the presentation of the superseding indictment to the second grand jury.

Third, plaintiff was convicted of all of the charges that were the subject of the initial indictment, which he claimed was the result of ineffective and unconstitutional conduct by the Legal Aid defendants. According to the complaint, the additional higher count of assault in the first degree was only contained in the second grand jury, at a time when he was no longer represented by the Legal Aid defendants. (Compl.¶ 9.) Therefore, any malicious prosecution claims, including any malicious prosecution conspiracy, against the Legal Aid defendants related to the charges in the first indictment are barred by Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477 (1994). [3]

**\*12** Finally, even assuming *arguendo* that some Section 1983 claim could exist based solely on the alleged ineffective conduct by the Legal Aid defendants, it would be time-barred.

With respect to 📁 Section 1983 and 📁 1985 claims, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York. 📁 *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) ( 📁 Section 1983), *cert. denied,* 538 U.S. 922 (2003); 📁 *Paige v. Police Dep't of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) ( 📁 Section 1985). Here, as set forth in the complaint, the Legal Aid defendants ceased representing plaintiff in April 2003. (Compl.¶ 6(D).) Because plaintiff commenced this action on September 5, 2007, more than three years after Legal Aid represented him, the claims against the Legal Aid defendants would be untimely even assuming they existed, which they do not for the other reasons outlined by the Court.

In sum, plaintiff does not have a plausible 📁 Section 1983 claim against the private actors-defendants Peterson, Mitchell, Vitale, O'Connor, and Bray-and such claims are dismissed as a matter of law under Rule 12(b)(6).

### B. Absolute Immunity

Plaintiff sues the various County Defendants-DA Spota and ADAs Kevins, Scarglato, and Brown-for allegedly improper conduct (1) in connection with his indictment in the grand jury by conspiring to deny him representation by counsel and to prevent him from testifying before the grand jury; and (2) in connection with his trial by eliciting perjured testimony from witnesses, including Ms. Peterson, and not correcting such testimony. Plaintiff asserts claims against these defendants for malicious prosecution, conspiracy to maliciously prosecute, and "deliberate indifference" to the fact that his rights were being violated in the above-referenced manners.

Defendants argue that the Court should dismiss plaintiff's claims against DA Spota and ADAs Kevins, Scarglato, and Brown on the grounds of absolute immunity. As set forth below, the Court agrees. It is abundantly clear from a review of the conduct allegedly attributed to these prosecutors that all of the conduct was undertaken in their roles as Assistant District Attorneys (or in Mr. Spota's instance, as District Attorney) during the active prosecution of plaintiff and, thus, they are absolutely immune from a civil suit for damages under 📁 Section 1983.

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under 📁 § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (quoting 📁 *Imbler v. Pachtman,* 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a] absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.' " *Deronette v. City of New York,* No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at * 12 (E.D.N.Y. Mar. 27, 2007) (citing 📁 *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting 📁 *Imbler,* 424 U.S. at 419 n. 13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." 📁 *Hill v. City of New York,* 45 F.3d 653, 663 (2d Cir.1995).

**\*13** "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." 📁 *Hill,* 45 F.3d at 660 (quoting 📁 *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct " 'intimately associated with the judicial phase of the criminal process.' " *Fielding v. Tollaksen,* No. 06-5393-cv, 2007 U.S.App. LEXIS 28939, at *3-*4 (2d Cir. Dec. 12, 2007) (quoting 📁 *Imbler,* 424 U.S. at 430); 📁 *Hill,* 45 F.3d at 661 (same). In particular, "[s]uch immunity ... extends to acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." 📁 *Smith v. Bodak,* 147 F.3d 91, 94 (2d Cir.1998) (citation and quotation marks omitted). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." 📁 *Hill,* 45 F.3d at 661; *see also* 📁 *Carbajal v. County of Nassau,* 271 F.Supp.2d 415, 421 (E.D.N.Y.2003)

("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest-that is, when he performs functions normally associated with a police investigation-he loses his absolute protection from liability.").

Once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli,* 424 F.3d at 237 (quoting *Bernard,* 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.,* No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at * 18 (D.Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

Plaintiff claims that defendant prosecutors maliciously commenced a criminal prosecution against plaintiff "through fraud and perjury" and "without probable cause to believe [he] committed the crime." *See* Compl. at 15. Specifically, plaintiff claims that the defendant prosecutors filed a second indictment with the additional charge of first degree assault, as punishment for plaintiff's protestations that he was denied his right to counsel. *See id.* Plaintiff further alleges that this additional charge was added as retribution due to plaintiff's grievances filed against the defendant prosecutors and Judge Ohlig. *See id.* In addition, plaintiff alleges that the defendant prosecutors knowingly elicited false testimony from Ms. Peterson in order to establish the necessary elements for first degree assault. (*See* Compl. at 16.)

**\*14** "It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false." *Urrego v. U.S.,* No. 00 CV 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (finding that a prosecutor is entitled to absolute immunity where he was alleged to have presented false evidence in order to obtain a superceding indictment) (citing *Buckley,* 509 U .S. 260; *Hill,* 45 F.3d at 662; *Bernard v. County of Suffolk,* 356 F.3d 495, 505 (2d Cir.2003)); *see also Storck v. Suffolk County Dep't of Social Servs.,* 62 F.Supp.2d 927, 943 (E.D.N.Y.1999) ("A prosecutor is also absolutely immune from charges alleging the withholding of exculpatory evidence from a grand jury and suppressing *Brady* material. An allegation of conspiracy to perform

the foregoing acts does not change the conclusion that the acts are entitled to absolute immunity.") (citations omitted).

"[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan,* 999 F.2d 679 (2d Cir.1993), *as modified at* 25 F.3d 81, 83 (2d Cir.1994). In *Tellier v. Petrillo,* plaintiff alleged that the United States attorneys had "formed a conspiracy to fabricate a new charge, not contained in the original indictment" and had "conspired to present the fabricated evidence to a grand jury in order to obtain a superceding indictment." 133 F.3d 907 (2d Cir.1997). The Second Circuit affirmed the dismissal of the complaint, noting that the presentation of a superceding indictment was protected by absolute immunity. *Id.* Further, the Second Circuit has specifically held that a prosecutor's determination of which offenses to charge also is protected by absolute immunity. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993).

It is clear that defendant prosecutors' decision to seek a second indictment with the additional charge of first degree assault, as well as any alleged attempt to elicit false testimony from a witness, would be protected by absolute immunity. Similarly, defendants are absolutely immune from suit for any of the wrongful acts alleged in the complaint by plaintiff related to his claim that they presented perjured testimony at trial. Finally, any claim that the prosecutors deprived plaintiff of his right to testify before the first grand jury is also within the ambit of absolute immunity. [4] *See, e.g., Phillips v. Eppolito,* No. 02 Civ. 5662(DLC), 2004 WL 540481, at *2 (S.D.N.Y. March 17, 2004) ("The Complaint asserts that [the ADA] failed to permit [plaintiff] to testify in front of the Grand Jury. The act of failing to permit [plaintiff] to testify before a Grand Jury falls within the scope of activities protected by the doctrine of absolute immunity. Therefore, the claim of malicious prosecution against [the ADA] must be dismissed."); *Braxton v. Brown,* No. 96 CV 187, 1997 WL 43525, at *2 (E.D.N.Y. Jan. 28, 1997) ("Plaintiff's complaint against the District Attorney defendants-that they denied him the right to testify before the Grand Jury-is based on their presentation of a case before the Grand Jury. It therefore falls within the scope of the prosecutors' absolute immunity.").

**\*15**  Accordingly, plaintiff's claims against the defendants Spota, Kevins, Scarglato, and Brown are dismissed based on the doctrine of absolute immunity. [5]

### C. Deliberate Indifference

Defendants also move to dismiss the claim for "deliberate indifference" to the alleged violations of his constitutional rights. As a threshold matter, any attempt to assert such a claim against the District Attorney, or the Assistant District Attorneys or Judge Ohlig, must be dismissed based on the doctrine of absolute immunity as described *supra.* Similarly, any attempt to bring such a claim against the private actor defendants-Ms. Peterson, the Legal Aid defendants, or court-appointed attorney Bray-must be dismissed for the reasons outlined *supra.*

With respect to the only remaining defendant, County Executive Steve Levy, there is simply no plausible cause of action under 🚩Section 1983. To the extent plaintiff is attempting to sue Mr. Levy in his individual capacity, it is beyond cavil that the County Executive cannot be held responsible for the actions of the independently-elected District Attorney's decision to indict and prosecute a defendant. Similarly, to the extent that Mr. Levy is being sued in his official capacity in an attempt to allege some type of municipal liability against the County, that claim must also fail as a matter of law. A district attorney in New York State, when prosecuting a criminal matter, acts in a quasi-judicial manner and represents the State, not the County. Thus, a county cannot establish policy in connection with how a district attorney should prosecute New York State penal laws. Therefore, no municipal liability can arise from the District Attorney's decision to prosecute. In short, plaintiff has failed to articulate any plausible claim for municipal liability given his allegations in the complaint. Accordingly, the claim against the County Executive and any municipal liability claim must be dismissed as a matter of law.

### D. Leave to Replead

Although plaintiff has not requested leave to amend or replead his complaint, the Court has considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that

> A *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

🚩*Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quotations and citations omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, even under this liberal standard, this Court finds that any attempt to amend the pleading in this case would be futile. [6]  As discussed in detail *supra,* it is clear from the complaint (as well as plaintiff's detailed submissions in opposition to the motion) that he does not have any possibility of asserting a plausible 🚩Section 1983 claim. This lawsuit is a blatant and frivolous attempt to sue private actors-such as the key prosecution witness (Ms. Peterson) and his court-appointed criminal defense attorneys-because he believes that they separately contributed to his indictment and conviction, even though such actors clearly do not have 🚩Section 1983 liability given the allegations in plaintiff's complaint. *See, e.g., Contes v. City of New York,* No. 99 Civ. 1597(SAS), 1999 WL 500140, at \*11 (S.D.N.Y. July 14, 1999) ("It would be futile to grant leave to replead in this case. Without state action, which is lacking here, [plaintiff] cannot prevail on a claim pursuant to 🚩§ 1983."). Similarly, plaintiff sues the District Attorney and ADAs even though their alleged wrongful conduct in the grand jury and at trial, which is described in the complaint, is clearly protected by absolute immunity. In essence, plaintiff is primarily seeking to re-litigate issues, via this civil lawsuit, that he unsuccessfully challenged on direct appeal in seeking to have his conviction overturned against parties who have no 🚩Section 1983 liability even if the facts alleged in his complaint are true. After carefully reviewing all of plaintiff's submissions, it is abundantly clear that no amendments can cure these pleading deficiencies and any attempt to replead would be futile. *See* 🚩*Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to

replead should be denied."); *see also Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied").

### III. CONCLUSION

**\*16** For the foregoing reasons, defendants' motions to dismiss plaintiff's claims are GRANTED in their entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 4394681

### Footnotes

1   As a threshold matter, there is a substantial question as to whether plaintiff can proceed at all on a malicious prosecution claim for his acquitted counts because they were so closely intertwined with his counts of conviction and are both felonies. The Court recognizes that, in contrast to false arrest claims, the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989) (holding that claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct); *see also Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"). Thus, for the same reasons in this case, a conviction on assault in the second degree does not necessarily bar a malicious prosecution claim on assault in the first degree or attempted assault in the first degree; rather, the Court should analyze a number of factors, including the relative seriousness of the two offenses, "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." *Pichardo v. N.Y. Police Dep't.,* No. 98-CV-429 (DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998) (citing *Janetka,* 892 F.2d at 190); *see also Ostroski v. Town of Southold,* 443 F.Supp.2d 325, 335-40 (E.D.N.Y.2006) (discussing factors). Analyzing the various factors in the instant case-including that both crimes are felonies (and thus both serious crimes) and arose out of the same incident-the Court concludes that the existence of probable cause as to the counts of conviction should preclude a malicious prosecution claim on the acquitted counts. In fact, as the judge who presided over the bench trial noted, the basis for the acquittal on the assault in the first degree (despite the conviction for assault in the second degree) was the prosecution's failure to demonstrate serious injury. Thus, the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the [dismissal of] these charges is sufficiently distinct to support a claim of malicious prosecution." *Pichardo,* 1998 WL 812049, at *4 (finding conviction on misdemeanor charge precluded malicious prosecution on felony assault count arising out of same incident). In any event, the Court finds that there are numerous other grounds for dismissal of the case, discussed in detail *infra.*

2    Defendant John A. Bray is the court-appointed attorney who replaced the Legal Aid defendants in defending plaintiff in his criminal case. (Compl.¶ 6.) Although defendant Bray has never appeared in this action (and it is unclear whether he was ever served), the Court dismisses the claims against him *sua sponte* because, like the Legal Aid defendants, he is not a state actor. Plaintiff has failed to state a cause of action under ⚑ Section 1983 against him and plaintiff's claim against Bray, like the other claims in this case, is frivolous. *See, e.g.,* ⚑ *Liner v. Goord,* 196 F.3d 132, (2d Cir.1999) (holding that district court is authorized to "dismiss the complaint *sua sponte* if, among other things, the complaint is 'frivolous, malicious, or fails to states [sic] a claim upon which relief may be granted' ") (quoting ⚑ 28 U.S.C. § 1915(a) & ⚑ (b)(1)).

3    The Legal Aid defendants also note that the plaintiff appealed his conviction and raised all of the identical arguments he now asserts in this civil lawsuit regarding alleged defects in the indictment, malicious prosecution, and ineffective assistance of counsel. The Appellate Division, Second Department denied his appeal and found his arguments were without merit. *See People v. Flores,* 40 A.D. 876, 878 (2d Dep't 2007) ("The defendant's remaining contentions, including those raised in his supplemental pro se brief, that the indictment was defective, that he was maliciously prosecuted, and that he was deprived of the effective assistance of counsel, are without merit."). The Court of Appeals also denied Flores leave to appeal. *See People v. Flores,* 9 N.Y .3d 875 (2007).

4    To the extent that plaintiff is attempting to argue that absolute immunity should not apply because of some conspiracy between the County Defendants and private actors (such as the Legal Aid defendants and Ms. Peterson), that claim also fails for the reasons discussed in great detail in connection with the Legal Aid defendants and Ms. Peterson. Specifically, plaintiff alleges nothing more than conclusory allegations of conspiracy which are insufficient to survive a motion to dismiss.

5    Plaintiff also alleges that Judge Ohlig conspired with the Legal Aid defendants and the defendant prosecutors to maliciously prosecute the plaintiff. Although Judge Ohlig has failed to appear in the case, the Court, *sua sponte,* finds that Judge Ohlig is entitled to absolute immunity. "A judge defending against a ⚑ section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity." ⚑ *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Where a judge is acting in a judicial capacity, no liability exists even if the judicial action "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." ⚑ *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). "[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." ⚑ *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Plaintiff alleges that the judge failed to rule on plaintiff's motion and back-dated his ruling. Any action taken by Judge Ohlig in connection with rendering a decision or acting upon plaintiff's motion is clearly within the judicial capacity of the court. Accordingly, Judge Ohlig is absolutely immune from suit and plaintiff's claims against Judge Ohlig are dismissed.

6    In reaching this determination, the Court has reviewed all of the plaintiff's submissions, including the documents that he attached to his opposition, all of which confirm the futility of any amendment as to the proposed federal claims.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2563181
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles R. WILLIAMS II, Plaintiff,

v.

COUNTY OF ONONDAGA, et al., Defendants.

5:22-CV-1367 (TJM/ATB)
|
Signed February 21, 2023

**Attorneys and Law Firms**

CHARLES R. WILLIAMS II, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court, for initial review, a pro se complaint filed on December 19, 2022, by plaintiff Charles R. Williams II. Plaintiff names 23 defendants, primarily in connection with alleged civil rights violations under 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). [1] Plaintiff also filed a motion for leave to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I. In Forma Pauperis ("IFP") Application**

Plaintiff's IFP application declares that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status, although, because he is incarcerated, he will be required to submit an inmate authorization form–Form G on the Northern District of New York's public website.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**

**\*2** Plaintiff's complaint, dated January 10, 2022, but filed on February 25th of that year, consists of seven pages on a court form entitled "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983," followed by a 23-page, 93-paragraph typed supplement ("Compl. Supp."). [2] The complaint is repetitive and somewhat difficult to follow, but the court will attempt to summarize it, leaving discussion of much of the factual detail, as necessary, in connection with my later analysis of particular issues with the complaint. [3]

Plaintiff came to the attention of the Syracuse Police Department in and around November 2019 for two reasons–(1) an apparent allegation of domestic violence and/or sexual assault by plaintiff's "common-law wife," [4] and (2) an

altercation at McNeilly's Pub in Syracuse, where plaintiff allegedly worked security, which resulted in an exchange of gunfire between plaintiff and two other individuals. Although plaintiff intertwines the facts related to these two incidents in his somewhat chronological presentation in the supplement to his complaint, the court will attempt to separate the incidents in the discussion below, in the interests of clarity.

With respect to the sexual assault allegation, the complaint indicates that plaintiff's wife's complaints led to the initiation of charges and the entry of an order of protection against plaintiff. (Compl. Supp., ¶ 15). Plaintiff and his wife allegedly attempted to communicate to the Syracuse Police Department and Assistant District Attorney ("ADA") Jarrett A. Woodfork that plaintiff's wife was not the victim of a sexual assault and did not want to pursue any charges against plaintiff. (Compl. Supp., ¶ 15; Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 1, 2-3). Nevertheless, unspecified representatives of the Syracuse Police Department "defamed" plaintiff on November 21, 2019, by "broadcasting his face on the news for crimes he did not commit." (Compl. Supp., ¶ 2). [5] ADA Woodfork thereafter pressured and lied to plaintiff's wife, in an effort to persuade her to accuse plaintiff, before a grand jury, of sexual assault. Plaintiff's wife consistently refused to accuse plaintiff of sexual assault, and ultimately, no charges were pursued against the plaintiff relating to his wife. (Compl. Supp., ¶¶ 15, 21-23).

Plaintiff alleges that the November 4, 2019 incident at McNeilly's Pub began when Donnell Thornton pulled a gun on plaintiff and escorted him out of the bar. Another "assailant," Arthur Stripling, then attacked plaintiff with a knife. During the encounter, a gun allegedly fell from Stripling's person, which plaintiff picked up. Thornton fired two shots at plaintiff, who then ran and jumped between two cars and exchanged gunfire with Thornton. (Compl. Supp., ¶ 1; Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 1-2). Both Thornton and Stripling were shot multiple times. (Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 2).

**\*3** Plaintiff did not go to the police immediately regarding the incident at McNeilly's Pub because he was aware that they were looking for him in connection with the allegations of sexual assault by his wife. (Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 2). Plaintiff was eventually arrested, on November 25, 2019, in connection with the incident at McNeilly's Pub and, perhaps, also based on his wife's complaints of domestic abuse. (Compl. Supp., ¶¶ 3, 4). Plaintiff accused the prosecutors, inter alia, of

selective prosecution relating to the McNeilly's Pub incident, by immunizing and/or giving other favorable treatment to plaintiff's two allegedly more culpable "assailants," who were used as government witnesses against him. (Compl. Supp., ¶¶ 1, 4).

The majority of plaintiff's lengthy complaint accuses one of his defense attorneys, as well as the prosecutors, judges, and witnesses involved in his prosecution relating to the McNeilly's Pub incident, of various abuses of plaintiff's constitutional rights. The prosecutors and judges were accused of insisting on excessive bail, resulting in plaintiff's pretrial detention for approximately ten months. The prosecutors allegedly did not permit plaintiff to introduce exculpatory information before the all-white grand jury, called witnesses who committed perjury, and did not call witnesses who could provide exculpatory information. One prosecutor, defendant ADA Anthony V. Mangovski, allegedly admitted to erasing part of crucial security video evidence from the scene of the incident, which allegedly would have proved that plaintiff was not the primary aggressor in the incident. Several judges involved in the court proceedings allegedly excused improper delays and other pretrial procedural defaults by the prosecutors. Plaintiff accused his first defense counsel, defendant Walter B. Coffin, Esq., of improperly trying to persuade him not to testify before the grand jury, agreeing to waive a preliminary examination against plaintiff's express wishes, and generally working to assist the ADAs in prosecuting the case against plaintiff.

Plaintiff was brought to trial in September 2022 on a five-count indictment, charging him with attempted murder 2nd, criminal use of a firearm 1st, assault 1st, criminal possession of a weapon 1st, and criminal possession of a weapon 2nd. (Compl. Supp. ¶¶ 36, 48). Plaintiff accused numerous civilian witnesses, including Thornton and Stripling, as well as Syracuse Police Officer Dallas Pelz, of committing perjury during trial and often contradicting prior statements that were favorable to the plaintiff. He accused the trial prosecutor, defendant ADA Alphonse Williams, of various types of misconduct, which were allowed or facilitated by the trial judge, defendant Rory A. McMahon. Judge McMahon allegedly allowed numerous procedural irregularities at the trial, and pressured the jury to reach a verdict on the last of five charges after it seemed apparent that the jury had acquitted plaintiff of the most serious charges. At the end of the trial, plaintiff was only convicted on the criminal possession of

a weapon 2nd charge and was acquitted on the remaining charges. (Compl. Supp., ¶ 55). [6]

Towards the end of his complaint, plaintiff alleges that his constitutional rights were violated during his confinement in the Onondaga County Justice Center. Plaintiff claims that, in 2020 during his pretrial detention, he was exposed to Hepatitis A when "Napcare" providers and staff at the Justice Center cleared an infected inmate to work in the kitchen, which resulted in plaintiff being forced to take a vaccine against his own will or to be held in medical keep lock. Plaintiff also alleges that, on October 30, 2020, a Napcare employee "(Jen or Erin)" violated HIPAA laws by disclosing plaintiff's medications to a custody deputy. (Compl. Supp., ¶ 90).

**\*4** After his conviction, on October 13, 2022, plaintiff alleges that certain deputies attempted to "obstruct justice" by transferring him to another facility just after he had filed a federal habeas petition. (Compl. Supp., ¶ 75-76). [7] When plaintiff resisted the transfer, defendants Lt. Daniel Lavy and Lt. Corey Moore summoned the emergency response team, and allegedly threatened plaintiff with violence. (*Id.*, ¶ 77). Ultimately, plaintiff agreed to be moved to a mental health observation cell, which he alleges was infested with urine and feces, and he was not moved to a different cell until the next day. (*Id.*, ¶¶ 78-80). [8]

The initial, handwritten portion of plaintiff's complaint suggests or asserts claims for defamation, cruel and unusual punishment, malicious prosecution, an unfair trial, and a wrong conviction. (Compl., Dkt. No. 1 at 6 ("Causes of Action")). In concluding his complaint, plaintiff claims damages of $20,000,000 and seeks expungement of charges from his criminal record based on the following alleged constitutional and other violations:

> racial discrimination, defamation of character on the news, erasure/ destruction of video evidence by prosecutor/police, perjury on the stand by all witnesses at trial, perjury at the grand jury by police, wrongful arrest, wrongful conviction with no basis or element of a crime, perjury in grand jury by witnesses, extortion by complainant, prosecution bribery of witness, failure to prosecute

> assailants with multiple weapons, ... forcing a deadlocked jury to render a verdict, prosecutorial misconduct, judicial misconduct, violation of my civil rights, 5th, 6th and 14th Amendment Rights to the United States Constitution.

(Compl. Supp., ¶ 91, 92).

### III. Judicial Immunity

Plaintiff names as defendants two state-court judges who were involved in various court proceedings relating to his prosecution–Hon. Stephen J. Dougherty and Hon. Rory A. McMahon. Both are protected with absolute immunity from suit and from liability.

#### A. Applicable Law

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity serves the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity, and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*5** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia

🏴 *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). [9]  Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...."

🏴 *Id.* (citing inter alia 🏴 *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself"–whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing 🏴 *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing 🏴 *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

**B. Analysis**

The conduct of the defendant judges about which plaintiff complains involved their actions in the courtroom in a criminal case to which they were assigned. It is clear that plaintiff's allegations against the judges who presided during his prosecution all related to the exercise of their judicial functions. Accordingly, the judges are entitled to absolute immunity and the claims against them are subject to dismissal. *See, e.g.,* 🏴 *Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature' ") (quoting 🏴 *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at *2 (2d Cir. Oct. 17, 2022) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); 🏴 *Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases).

**IV. Prosecutorial Immunity**

Plaintiff asserts claims against ADA Jarrett Woodfork, who was involved in the grand jury investigation of plaintiff regarding the allegations of sexual assault, as well as ADAs Michael Whalen, Anthony Mangovski, and Alphonse

Williams, who were involved in various aspects of the prosecution of plaintiff relating to the incident at McNeilly's Pub. Based on plaintiff's allegations, these defendants are protected by absolute prosecutorial immunity.

**A. Applicable Law** [10]

**\*6**  Prosecutors enjoy "absolute immunity from 🏴 § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." 🏴 *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." 🏴 *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Functions to which absolute immunity applies are when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, involves the exercise of discretion. *See* 🏴 *Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) ("Prosecutors are absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion.") (citing 🏴 *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). This includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," 🏴 *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013), and whether and when to drop charges. 🏴 *Taylor*, 640 F.2d at 452. "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.' " 🏴 *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting 🏴 *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. 984).

"[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." 🏴 *Bernard v. County of Suffolk*, 356 U.S. 495, 503 (2d Cir. 2004) (citing 🏴 *Cleavinger v. Saxner*, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). Absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within

the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (cleaned up). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (collecting cases), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

### B. Analysis

Plaintiff contends that ADA Woodfork, in pursuing charges based on his wife's apparent complaint of domestic violence and/or sexual assault, lied to her and pressured her to falsely accuse plaintiff in the grand jury. Based on the authority discussed above, ADA Woodfork's efforts to pursue the charges against plaintiff and prepare witnesses for testimony before the grand jury would fall within his prosecutorial functions and would be protected by absolute immunity, regardless of whether the prosecutor engaged in the type of misconduct alleged. *See, e.g.*, *Brown v. Fallon*, 2022 WL 4103998, at *8 ("the courts have long held that a prosecutor's determination to bring charges against an individual by the presentment of a case to a grand jury, even if it involves the presentation of false or fabricated evidence, is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies) (citing, inter alia, *Simon*, 727 F.3d at 171 (absolute immunity applies to such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, **along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection**, and issuing subpoenas") (emphasis added)).

The plaintiff's allegations against the ADAs who were involved in his prosecution relating to the incident at McNeilly's Pub were clearly carrying out prosecutorial functions in court in a case to which they were assigned. Based on the authority cited above, these prosecutors are immune from suit and liability based on absolute prosecutorial immunity. As noted above, to the extent

the prosecutors decided not to charge plaintiff's alleged "assailants" in the McNeilly's Pub incident, and/or to immunize them or use them as witnesses against plaintiff, they would also be protected by absolute immunity, regardless of their motivation. *See, e.g.*, *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) ("regardless of defendants' ... motives, absolute immunity shields them from suit pursuant to § 1983 for their alleged malicious or selective prosecution of plaintiffs, as well as for any misconduct in the presentation of evidence to the grand juries that returned the challenged indictments against plaintiffs"); *Corley v. Vance*, 365 F. Supp. 3d 407, 457-58 & n.21 (S.D.N.Y. 2019) ("Plaintiff's selective prosecution claim, even if not barred by *Heck* [*v. Humphrey*], additionally fails because prosecutorial immunity shields the DA Defendants."), *aff'd*, 811 F. App'x 62 (2d Cir. 2020). [11]

## V. Witness Immunity

**\*7** Plaintiff's civil rights claims against Syracuse Police Officer Dallas Pelz, and civilians Arthur Stripling, Tonya Burton, Tammy McNeilly, and Sasha Thornton, are based on the allegation that they testified falsely and/or to plaintiff's detriment in the grand jury and/or at trial. (Compl. Supp., ¶¶ 44, 46, 64-67). However, "witnesses, including police officers, who testify in judicial proceedings[,] ... 'are integral parts of the judicial process' and, accordingly, are shielded by absolute immunity." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (citations omitted); *Briscoe v. LaHue*, 460 U.S. 325, 334, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The Supreme Court has established that grand jury witnesses should enjoy the same absolute immunity from any § 1983 claim as witnesses at trial. *Rehberg v. Paulk*, 566 U.S. 356, 369, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012). "[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution. *Id.* Accordingly, the claims against these grand jury and trial witnesses are subject to dismissal. [12]

## VI. State Action

### A. Applicable Law

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See* *West v. Atkins*, 487 U.S. 42, 48-49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). While private individuals are not state actors, such individuals can be liable under Section 1983 if they acted either "jointly" or "in conspiracy" with a state actor to deprive the plaintiff of a constitutional right. [13] *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp.2d 442, 445 (E.D.N.Y. 2012); *see also* *Betts v. Shearman*, 751 F.3d 78, 84 n.1 (2d Cir. 2014). However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

### B. Analysis

#### 1. Attorney Coffin

Walter B. Coffin was plaintiff's first "assigned" lawyer in his criminal case, who was ultimately replaced by another attorney. (Compl. Supp., ¶ 7). "[I]t is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *7 (E.D.N.Y. Sept. 23, 2008) (citing, inter alia, *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); *Benjamin v. Branden*, No. 21-CV-4927, 2022 WL 1092681, at *2 (E.D.N.Y. Apr. 12, 2022) (collecting cases). "Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys." *Brooks v. New York State Supreme Court*, No. 02-CV-4183,

2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) (citation omitted)).

**\*8** While plaintiff criticized Attorney Coffin's advice in several respects and alleges that his lawyer counsel made tactical decisions contrary to plaintiff's wishes and direction, that would not alter the fact that plaintiff's defense counsel was not a state actor. Plaintiff also noted that, when Attorney Coffin was advised by "a complainant" (apparently plaintiff's wife) that she was not sexually assaulted by plaintiff, he referred the complainant to ADA Woodcock to provide a corrected statement to the authorities. (Compl. Supp., ¶ 14). Plaintiff alleged that Attorney Coffin was conspiring with the prosecutors, essentially to deny plaintiff a fair trial:

> Permission to speak freely? I feel and know upon information and believe [sic] that Mr. Coffin is on the take and working for the Onondaga County District Attorney's Office. He is given all of the high-profile cases where the defendants may or may not be guilty and his job is to get them to plead guilty and waive certain rights and in return, he is assigned the most (high-profile) cases and I can prove it! Let me proceed.

(Compl. Supp., ¶ 12). These allegations are speculative and conclusory, and are not sufficient to establish a conspiracy that would qualify Attorney Coffin as a state actor. *See, e.g.*, *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *10 (E.D.N.Y. Sept. 23, 2008) (allegations that Legal Aid attorneys engaged in numerous conspiracies with the other defendants "(1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment" do not support a plausible claim of conspiracy with the other defendants) (collecting cases). "Moreover, as the Second Circuit has noted, generalized allegations of conspiracy 'ring especially hollow' where, as here, the parties alleged to be part of the same conspiracy have an adversarial relationship." *Id.* (citing *Ciambriello*, 292 F.3d at 324).

In any event, plaintiff suggests only a conspiracy between Attorney Coffin and the ADAs involved in the prosecution of plaintiff, all of whom are protected by absolute immunity. Where plaintiff's only conspirators are protected by absolute immunity, "Plaintiff's defense attorney[ ] therefore had no state actor with whom [he] could have conspired, rend[er]ing Plaintiff's conspiracy claim deficient as a matter of law." *Murdock v. Legal Aid Soc'y*, No. 14-CV-0508, 2015 WL 94245, at *3 (E.D.N.Y. Jan. 6, 2015) (citing, inter alia, *Delarosa v. Serita*, No. 14-CV-737, 2014 WL 1672557, at *4 (E.D.N.Y. Apr. 28, 2014)) (dismissing 🔖 Section 1983 conspiracy claim because the assistant district attorney was immune from suit and the criminal defense attorney therefore had no "state actors with whom [he] could have conspired to deprive Plaintiff of his Constitutional rights").

### 2. Other Alleged Conspirators

Plaintiff may have intended to suggest that other civilians, such as the witnesses who allegedly committed perjury at trial, also conspired with state actors to infringe on plaintiff's constitutional rights, and should be liable under 🔖 Section 1983. (Compl. Supp., ¶¶ 64-67). However, the complaint makes no explicit allegations of conspiracy involving these witnesses and an allegation that they committed perjury is clearly not sufficient to make them state actors. *See Flores v. Levy*, 2008 WL 4394681, at *9 (the mere allegation a civilian witness committed perjury, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim making the witness a state actor) (collecting cases). In any event, as discussed above, because plaintiff's allegations focus on the civilian witnesses's testimony at trial or grand jury, they are, like the prosecutors who likely helped prepare the witness testimony, protected by absolute immunity and cannot be state actors.

### VII. Claims Based on Criminal Violations

**\*9** Plaintiff's claims appear to be based, in part, on the defendants' alleged violations of federal or state criminal statutes such as state statutes outlawing perjury, evidence or witness tampering, extortion, and bribery. However, plaintiff may not assert claims under 🔖 Section 1983 based on criminal violations. *See, e.g., Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (allegations that defendants violated criminal statutes by submitting false statements and falsified

documents, or committing perjury "cannot form the basis of a ... 🔖 § 1983 or related claim given that those statutes apply only to violations of federal constitutional rights") (collecting cases); *Patterson v. Patterson*, No. 1:16-CV-844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) ("Courts within this Circuit have accordingly held consistently that criminal charges ... 'cannot be prosecuted by a private person.' ") (collecting cases).

### VIII. Malicious Prosecution/Heck v. Humphrey

Many of plaintiff's claims against particular defendants are subject to dismissal on multiple grounds, including absolute immunity. Although not necessary to support dismissal of any defendant, the court will discuss alternative bases for dismissal of plaintiff's malicious prosecution and related claims. [14]

Because plaintiff is a pro se litigant, the court must "read his supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Plaintiff's allegations that the defendants conspired to fabricate evidence against him, withhold exculpatory evidence, and otherwise deny him a fair trial most strongly suggest claims for malicious prosecution, denial of due process and a fair trial, and a claim for failure to disclose exculpatory evidence under 🔖 *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983). [15]

### A. Applicable Law

### 1. Malicious Prosecution

**\*10** "The elements of a malicious prosecution claim under 🔖 section 1983 are derived from applicable state law." 🔖 *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (citation omitted). "We have stated these elements, under New York law, to be (1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, [16] and (4) institution of the proceedings with actual malice. 🔖 *Id.* at 111-12. Based on a recent decision of the Supreme Court, "[a] plaintiff need only show that the criminal prosecution ended without a conviction," to satisfy the favorable termination element. 🔖 *Thompson v. Clark*, ––– U.S. ––––, 142 S. Ct. 1332, 1341, 212 L.Ed.2d 382 (2022).

"Where a criminal prosecution concluded in acquittal on some but not all charges, the court must determine whether the charges are 'sufficiently distinct to allow a malicious prosecution claim to proceed on the charge for which there was an acquittal.' " *Jones v. City of New York*, No. 19-CV-9126, 2020 WL 1503509, at \*4 (S.D.N.Y. Mar. 27, 2020) (quoting *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989)), *aff'd*, 846 F. App'x 22 (2d Cir. 2021). "Courts examine several factors in determining whether charges are sufficiently distinct: (1) disparity in sentencing ranges; (2) the elements of each crime; and (3) whether the crimes were related or separate acts." *Bailey v. City of New York*, 79 F. Supp.3d 424, 447-48 (E.D.N.Y. 2015) (citation omitted).

"Courts in this Circuit frequently apply *Janetka* where a plaintiff, charged with multiple [ ]counts, is acquitted on counts that arise from a distinct set of factual allegations from the counts for which he was convicted." *Dunham v. City of New York*, 295 F. Supp. 3d 319, 333-35 (S.D.N.Y. 2018) (citing, inter alia, *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 337 (E.D.N.Y. 2006)) (*Janetka* requires a court to look at "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged convictions were directed at different people").

### 2. Due Process/Fair Trial Claim

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). To succeed on a Section 1983 claim alleging a fair trial violation, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ross v. City of New York*, No. 17-CV-3505, 2019 WL 4805147, at \*5 (E.D.N.Y. Sept. 30, 2019) (*quoting Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

"Whether the proceeding was terminated in a manner indicative of innocence ... is not dispositive in the context of a section 1983 fair-trial claim." *Smalls v. Collins*, 10 F.4th 117, 138-39 (2d Cir. 2021). "Where the plaintiff asserts a section 1983 fair-trial claim based on fabricated evidence, all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an ongoing prosecution or outstanding conviction." *Id.* at 139 (citing *McDonough v. Smith*, ––– U.S. ––––, 139 S. Ct. 2149, 2158, 204 L.Ed.2d 506 (2019)).

### 3. *Brady* Violation

**\*11** To the extent the plaintiff alleges defendants withheld or destroyed exculpatory evidence in connection with grand jury or trial, he suggests a claim under the Supreme Court's seminal case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983). " 'There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (citations omitted).

### 4. *Heck v. Humphrey*

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 28 U.S.C. § 2254." *Id.* at 486-87, 114 S.Ct. 2364.

A claim is barred by 🚩*Heck* if it directly attacks the propriety of the criminal action and is inconsistent with a state court criminal conviction, "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Bowers v. Kelly*, No. 13 Civ. 06265, 2015 WL 2061582, at *3-4 (S.D.N.Y. May 4, 2015). This aspect of the 🚩*Heck* analysis standard parallels the favorable termination standard for malicious prosecution claims. *See id.;* 🚩*Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014) (the Supreme Court in 🚩*Heck* the Court applied " 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments ... to 🚩§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution' ") (citations omitted).

The standard for applying 🚩*Heck* when a civil right plaintiff has been convicted of some criminal charges and acquitted of others is also similar to the standard for a malicious prosecution claim. "Where plaintiff's allegations attempt to undermine the legality of his or her entire prosecution, such that a challenge is to both the counts for which plaintiff was acquitted and for which he or she was convicted, a lawsuit will be barred by 🚩*Heck*." 🚩*Bailey v. City of New York*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (collecting cases).

### B. Analysis

All of the criminal charges in the indictment against plaintiff related to the same confrontation between plaintiff and two other individuals during the McNeilly's Pub incident. While the charges, all felonies, carried different penalties and had different elements, plaintiff's possession of a weapon was a circumstance common to both the charges on which he was acquitted and the weapons possession charge on which he was convicted. Plaintiff acknowledges his conviction on the charge of Criminal Possession of a Weapon in the Second Degree–a class C felony under 🚩N.Y. Penal Law § 265.03 which criminalizes possession of a "loaded firearm" "with intent to use the same unlawfully against another." The same conduct would relate to the other charges brought against plaintiff as a result of his exchange of gunfire with and wounding of two other individuals–attempted murder, assault, and criminal use of a weapon. Under the reasoning of cases such as 🚩*Goree v. Gunning*, 738 F. Supp. 79, 82-83

(E.D.N.Y. 1990), the plaintiff's conviction on the weapons possession charges precludes him from asserting a favorable termination necessary to support a malicious prosecution claim on the acquitted charges, even though the offenses have different elements and carry different penalties:

> **\*12** The resisting arrest, criminal possession of a weapon and menacing charges all arose from Goree's actions directed at [police officer] Tully during the course of Tully's attempts to arrest him, and the harassment and disorderly conduct charges arose from Goree's alleged use of abusive and obscene language and obscene gestures toward Tully immediately prior to the arrest. Moreover, although the criminal possession of a weapon in the fourth degree and menacing charges are separate offenses with elements different from the other charges, the allegations forming the bases of these charges and the resisting arrest charge are not distinct. Thus, the present case is distinguishable from 🚩*Janetka* and *Cuthrell* in that in both of those cases distinct allegations formed the bases of the different charges involved. Here, the same conduct which formed the bases for the criminal possession and menacing charges also formed the basis for the resisting arrest charge. In addition, Goree was convicted of the resisting arrest charge, one of the two class A misdemeanor charges.

🚩*Id.*

Similar analysis supports the conclusion that plaintiff's imputed due process/fair trial claim would "impugn" his apparently ongoing criminal case and his outstanding weapons possession conviction, which would compel dismissal of that claim. Moreover, plaintiff's due process/ fair trial, malicious prosecution, and 🚩*Brady* claims would all attack the propriety of the prosecution of plaintiff on all

the charges against him, including the weapons possession charge on which he was convicted. Thus, those claims would be barred by *Heck v. Humprhey* unless and until that conviction was invalidated. *See, e.g., Bowers v. Kelly,* 2015 WL 2061582, at *3-4 ("Plaintiff's malicious prosecution, *Brady,* fair trial and conspiracy claims all directly attack the propriety of the criminal action against Plaintiff. As they are inconsistent with his state court criminal conviction, they must be dismissed [pursuant to Heck].")[17] *See also Amaker v. Weiner,* 179 F.3d 48, 51-52 (2d Cir. 1999) (applying Heck to claims under 28 U.S.C. §§ 1981, 1985 and 1986 that "asserted existence of a conspiracy to frame plaintiff" because they "plainly would call into question the validity of his conviction").

## IX. Conditions of Confinement

As noted above, plaintiff has complained of "cruel and unusual punishment" during his confinement by Onondaga County, alleging some specific incidents involving him, as well as a number of other general observations about conditions and practices in the county jails. Because the conditions of confinement challenged by plaintiff all occurred before he was sentenced, these claims must be addressed under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment cruel and unusual punishment provisions. *See, e.g., Williams v. Savory,* 87 F. Supp. 3d 437, 452 (S.D.N.Y. 2015) ("the Eighth Amendment does not attach until after conviction and sentencing, as 'it was designed to protect those convicted of crimes' ") (citing, inter alia, *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).[18]

### A. Applicable Law

**\*13** "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'– perhaps better classified as a 'mens rea prong' or 'mental element prong'–showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.*

"Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.' " *Id. at 30* (quoting *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir. 2013)).

"[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively." *Id. at 35.*

### B. Analysis

#### 1. Alleged Exposure to Hepatitis A

Plaintiff alleges, that in or about early 2020, while confined in the Onondaga County Justice Center:

> I was subjected to Hepatitis A, when Nap[hC]are[19] providers and Onondaga County Justice Center employees cleared an inmate to work in the inmate kitchen. This inmate tested positive for the virus before he was cleared to work in the meal preparation room. Due to the gross negligence of both county employees and employers, I was placed at risk to contract this non-curable disease I was forced to take a vaccine against my own will or be locked in (medical keep-lock) until I would allow them to put this disease in my body in a form of a vaccine.

(Compl. Supp., ¶ 89). Notably, the plaintiff does not state that he ever contracted Hepatitis A, he does not identify any individual defendants who were personally responsible for allegedly exposing him to Hepatitis A, [20] he does not reference any policy of the Justice Center or NaphCare that allegedly required him to choose between a Hepatitis A vaccination or medical isolation of some unspecified duration, [21] nor does he allege that he opposed being vaccinated on the basis of his religious beliefs or for any other constitutionally protected reason.

**\*14** To the extent NaphCare, Onondaga County, or their employees acted with gross negligence in exposing prisoners at the Justice Center to Hepatitis A, as plaintiff alleges, that would not support a due process claim for deliberate indifference to unsafe conditions of pretrial confinement. *See* Darnell v. Pineiro, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence.... A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.") (citations omitted). In any event, under section 1997e(e) of the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Gilmore v. Rivera*, No. 13 CIV. 6955, 2014 WL 1998227, at \*6 (S.D.N.Y. May 14, 2014) (quoting 42 U.S.C. § 1997e(e)). At most, plaintiff experienced "apprehension of the contraction of ...Hepatitis A" which would constitute an "emotional injur[y]" that would not support a Section 1983 claim for damages. *Id.* at 7. Similarly, any anxiety plaintiff suffered as a result of being vaccinated for Hepatitis A, in the absence of any resulting physical harm, would not support such a claim.

### 2. Alleged Disclosure of Plaintiff's Medications

Plaintiff alleges that:

> On October 30, 2020, at the Onondaga County Justice Center Facility, an LPN (Jen or Erin) who works for an Nap[hC]are providers broke HIPAA laws [22] when I heard her tell Deputy

> Schmunk what medication I was receiving. She gave him a rundown out of my pill containers, "ibuprofen, Seroquel, BuSpar" and she only stopped once she realized I was at my cell door, watching her....

(Compl. Supp., ¶ 90). However, "[c]ourts have overwhelmingly concluded that there is no private right of action under HIPAA." *Coon v. Burkly*, No. 1:13-CV-1306, 2014 WL 1976669, at \*8 (N.D.N.Y. May 15, 2014) (collecting cases). Enforcement of HIPAA is reserved exclusively to the Secretary of Heath and Human Services. *Rzayeva v. United States*, 492 F. Supp. 2d 60, 83 (D. Conn. 2007).

The Second Circuit has recognized a constitutional right, protected by the First Amendment, to " 'maintain the confidentiality of previously undisclosed medical information.' " *Mendez v. Quiros*, No. 3:16-CV-2097, 2017 WL 374462, at \*3 (D. Conn. Jan. 25, 2017) (quoting *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999)). Prison officials may only "disclose medical information to the extent that disclosure relates to a 'legitimate penological interest.' " *Id.* " 'The gratuitous disclosure of an inmate's confidential medical information as humor or gossip ... is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy.' " *Id.*

The degree of protection afforded to an inmate's medical condition varies with the "sensitive" nature of the condition. *Id.* (citing *Powell*, 175 F.3d at 111). In order to state a claim for violation of the right to keep medical information confidential, the plaintiff must show that he suffers from an "unusual or sensitive medical condition that, if disclosed, would expose him to ridicule, discrimination or even violence, particularly when the word of the condition is likely to spread through 'humor or gossip[.]' " *Id.* (quoting *Powell*, 175 F.3d at 112).

Plaintiff alleges that a female employee of NaphCare, not identified by full name, began to list plaintiff's medications to a correction office, two of which–Seroquel, BuSpar–are often prescribed to address mental health issues. In *Hunnicutt v. Armstrong*, a panel of the Second Circuit held that a

defendant violated the plaintiff's constitutional privacy by discussing plaintiff's "private/personal mental health issues ... in front of other prisoners and D.O.C. employees[.]" 152 F. App'x 34, 35-36 (2d Cir. 2005). Hunnicutt is readily distinguishable from this case, where the only medical information disclosed, to one correction officer, was the name of plaintiff's medications, two of which might or might not be identified as mental health medications by non-medical personnel. *See, e.g., Brooks v. Hogan,* No. 9:14-CV-477 (LEK/DJS), 2016 WL 1298137, at *3 (N.D.N.Y. Mar. 31, 2016) (inmate does not have a confidentiality interest in a list of his prescription medications).

**\*15** Moreover, as one District Court subsequently noted:

> *Hunnicutt* is an unpublished summary order from 2005 and therefore, while persuasive, has no precedential effect under Rule 32.1.1(a) of the Local Rules of the Second Circuit.... Indeed, the summary order does not provide any analysis on this point.

> Notably, other courts since *Hunnicutt* have concluded that an inmate's mental impairment was not so "unusual" that the disclosure of information pertaining to such condition rose to a Fourteenth Amendment violation.... Although bipolar disorder is a serious medical condition, it does not appear, in the prison context, to carry 'a social stigma equivalent to HIV/AIDS or transsexualism' ...., nor is such disclosure likely to expose an inmate 'to discrimination or intolerance.' ...

*Dash v. Mayers,* No. 19-CV-414, 2020 WL 1946303, at *4-5 (S.D.N.Y. Apr. 23, 2020) (collecting cases), *report and recommendation adopted,* 2020 WL 3057133, at *3 (S.D.N.Y. June 9, 2020) (collecting cases). [23] Indeed, plaintiff's complaint implicitly recognizes that the disclosure of his mental health medications to the correction officer was not the type of sensitive information that would subject him to stigma or harm.

> What if I was taking HIV or A.I.D.S. medication. It would have been spread all through the facility. Her actions violated HIPAA Laws, facility protocol, and ... place the plaintiff's life in danger by doing so.

(Compl. Supp., ¶ 90). Accordingly, this court concludes that the alleged disclosure of plaintiff's medications to one correction officer did not violate any constitutional or federal statutory right of plaintiff.

### 3. Conditions in Observation Cell

Plaintiff acknowledges that, after his trial was completed in October 2022, but before he was sentenced, he vociferously resisted the efforts of correction officers to move him to a different facility, apparently because he felt that would impede him in pursuing the habeas petition he had just filed with the federal court. (Compl. Supp., ¶¶ 75-77). [24] Plaintiff alleges that defendants Moore and Lavy threatened to call the Sheriff Emergency Response Team to force him to leave his cell and otherwise threatened him with violence. (*Id.,* ¶¶ 76-77). [25] Plaintiff then "agreed to be walked upstairs to the mental health unit...." (*Id.,* ¶¶ 78). Plaintiff further alleges:

> **\*16** [U]pon my arrival to the mental health unit, I was placed in a hang proof cell and stripped of my clothes and dignity in front of everyone. I was placed in a cell that had feces and urine all over the floor and walls from the last mentally ill inmate. It was so bad that while I am naked, surrounded by deputies I told Lt. Moore to come here and he came in the cell and told them "Oh yeah, we have to clean this." This is after I had been standing in this urine, with feces everywhere. An inmate came and mopped the floor and I was sent back in there barefoot on a wet floor, the toilet, sink, mattress or walls were not cleaned.

(*Id.,* ¶ 79). Plaintiff acknowledges, that at 8:30 a.m. the next day, "I was taken out of the 'hell hole' and moved a couple of doors down. Prior to this I was given my clothes back." (*Id.,* ¶ 80).

The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" and has instructed that a unconstitutional unsanitary conditions claim by a prisoner "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick,* 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste). In *Darnell v. Pineiro,* the Second Circuit vacated the judgment of the district court which had

"essentially ruled that no set of conditions, no matter how egregious, could state a due process violation if the conditions existed for no more than [10] to [24] hours" and held that such ruling "was error." 🔖 *Darnell*, 849 F.3d 17, 37 (2d Cir. 2017). Instead, the court held "conditions of confinement cases must be evaluated on a case-by-case basis according to severity and duration." 🔖 *Id.*

Notwithstanding 🔖 *Willey* and 🔖 *Darnell*, "[n]umerous courts have held that unpleasant or unsanitary conditions only rise to the level of a Constitutional violation if they amount to an objectively and sufficiently serious denial of the minimal civilized measure of life's necessities." *Anduze v. City of New York*, No. 21-CV-519, 2022 WL 4586967, at *10 (S.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4547420 (S.D.N.Y. Sept. 29, 2022). Furthermore, a plaintiff must proffer facts to show "an official's deliberate indifference to those conditions, or that ... those conditions are punitive." 🔖 *Id.* (citing 🔖 *Darnell*, 849 F.3d at 34 n.12).

**\*17** Plaintiff fails to specify the duration of his confinement in the allegedly filthy mental health observation cell, but it was clearly less than 24 hours. Nor does plaintiff allege that his exposure, for less than a day, to urine and feces in the cell, the floor of which was mopped as soon as he complained, presented any serious risk to his health or resulted in any adverse health consequences. These deficiencies in his pleading preclude the court from determining whether plaintiff could satisfy the objective element of a deliberate indifference claim. *See, e.g.*, *Figueroa v. Cty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *7 (S.D.N.Y. July 5, 2018) (dismissing conditions of confinement claim alleging lack of ventilation, insect infestation, and feces/bodily fluids on the walls because plaintiff did not provide details as to duration of conditions); 🔖 *Grant-Cobham v. Martinez*, No. 20-CV-1947, 2020 WL 2097807, at * 3 (E.D.N.Y. May 1, 2020) (dismissing claim alleging dirty conditions at Rikers, including that other inmates threw feces at or near plaintiff because plaintiff failed to provide information about duration of condition and whether fecal matter built up to such an extent that plaintiff's health was placed at risk); *Jackson v. Sullivan Cnty.*, 16-CV-3673, 2018 WL 1582506, at *4 (S.D.N.Y. Mar. 27, 2018) (dismissing conditions of confinement claim in absence of allegations regarding severity and duration); 🚩 *Hamilton v. Westchester Cnty.*, No. 18-CV-8361, 2020 WL 917214, at *7 (S.D.N.Y.

Feb. 25, 2020) ("Without any additional information as to the duration of the conditions Plaintiff alleges, the Court cannot determine that they pose an objectively unreasonable risk to Plaintiff's health."), *aff'd in part, vacated in part and remanded on other grounds*, 3 F.4th 86 (2d Cir. 2021).

Based on what plaintiff has alleged, he has not satisfied the objective element of a due process claim relating to the conditions of confinement during his brief stay in the mental health observation cell. *See, e.g.*, *Howard v. Brown*, No. 15 CIV. 9930, 2018 WL 3611986, at *5 (S.D.N.Y. July 26, 2018) (courts in this circuit have regularly held that brief exposure to human waste or sewage does not rise to the level of a constitutional violation); *Myers v. City of New York*, No. 11 Civ. 8525, 2012 WL 3776707, at *6-7, (S.D.N.Y. Aug. 29, 2012) (holding that being held for "approximately 16 hours" in a cell without air conditioning where "[t]he only place to sit ... was on 'a urine and filth laden floor' " did "not rise to the level of a constitutional violation"), *aff'd*, 529 F. App'x 105 (2d Cir. 2013); ⚠️ *Ortiz v. Dep't of Correction of City of New York*, No. 08 CIV. 2195, 2011 WL 2638137, at *8 (S.D.N.Y. Apr. 29, 2011) (holding that three exposures to waste for a total of "probably less than 24 hours" was "simply too limited to withstand a motion to dismiss"), *report and recommendation adopted*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011).

The court in *Howard*, applying the required case-by-case analysis, distinguished the Second Circuit cases involving substantially more egregious conditions of confinement:

> Here, Howard has not plausibly alleged sufficiently serious confinement conditions. Howard alleges that he was held for "several hours" in a cell littered with "food ..., papers, urine, and other un-sanitary things," with a nonworking toilet filled with waste, and no running water or ventilation.... This case is distinguishable from the "absolutely atrocious" conditions in 🔖 *Darnell*, where the plaintiffs endured, among other things, inadequate sanitation, overcrowding, inedible food, extreme temperatures, and sleep deprivation for 10 to 24 hours, 🔖 849 F.3d at 20, 23-26, 37, and the "grotesque" conditions in 🔖 *Willey*, which included exposure to waste, poor ventilation, and being held naked for one to four weeks, 🔖 801 F.3d at 55, 66. Rather, the Court follows numerous other decisions holding that a brief exposure

like the one alleged here does not rise to the level of a constitutional violation.

*Howard v. Brown*, 2018 WL 3611986, at *5. *See also Singleton v. City of New York*, No. 20-CV-8570, 2022 WL 4620174, at *5-6 (S.D.N.Y. Sept. 30, 2022) (plaintiff's allegation that, when transported to court and between facilities, he must sit on a transport bus that is "dirty and unsanitary with urine and defecation that's never cleaned" "and inhale filth for hours ... with no adequate ventilation" are closer to the circumstances of cases like *Howard* and distinguishable from cases like 🚩 *Darnell*).

**\*18** Plaintiff's complaint acknowledges that, apparently to avoid the use of force to overcome his resistence to being transferred out of the facility, the defendants, with plaintiff's assent, moved plaintiff to a mental health observation cell. When plaintiff complained about the condition of the cell in the mental health unit, Lt. Moore arranged for the cell floor to be mopped. And plaintiff was moved to another cell the next morning. Plaintiff's allegations do not state a plausible claim that the defendants acted intentionally, recklessly, or with the intent to punish plaintiff, but, at most, were negligent in not having the first cell cleaned more thoroughly or not moving him to another cell sooner. Accordingly, plaintiff's complaint also fails to state the mens rea element for a due process violation relating to the conditions of his confinement. 🚩 *Hamilton v. Westchester Cnty.*, at *7, (plaintiff's allegations that named defendants were "on notice" of, the poor conditions in his housing unit, but "took no action," or that they conducted daily rounds and were responsible for the conditions of confinement at the jail fail to demonstrate that any defendant acted in a manner that rose above the level of negligence, which is not adequate to satisfy the objective mens rea element for a due process claim); *Figueroa v. Cnty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *7 (S.D.N.Y. July 5, 2018) (plaintiff merely alleges that defendants knew of the unsanitary conditions and "did not care" and "put [him] back in intake housing" after he was released from the hospital, which fails to demonstrate that defendants acted in a manner that was reckless or intentional, as opposed to merely negligent).

#### 4. Other Allegations re: Conditions of Confinement

As noted, plaintiff makes other allegations regarding general conditions of confinement violating the rights other inmates.

(Compl. Supp., ¶¶ 81-84). However, there are no other plaintiffs in this action, and plaintiff, because he is not a lawyer, could not represent the interests of others inmates, in this action or otherwise. *See, e.g.,* 🚩 *Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002) ("an individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause' ") (citing 🚩 *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)).

To the extent plaintiff suggests that some of these general conditions of confinement affected him, he has not identified any specific instances or identified any particular defendants who were personally involved. Nor has plaintiff stated if or how his constitutional rights were violated by the conditions of confinement he describes. Based on the standards of pleading required by Fed. R. Civ. P. 8, discussed below, plaintiff's allegations about general conditions of confinement in Onondaga County Justice Center have not provided the defendants with adequate notice of the nature or basis of any plausible claims that plaintiff could assert against them.

### X. Claims Against Municipal Entities

It is not clear from the complaint which municipal defendants plaintiff has tried to sue. To the extent he has named, as defendants, municipal sub-entities such as the Onondaga County Attorney's Office, the District Attorney's Office, the Onondaga County Justice Center, the City of Syracuse City Attorney, or the Syracuse Police Department, they are not separate legal entities that are subject to suit. *See, e.g., Harrison v. Inc. Vill. of Freeport*, 498 F. Supp. 3d 378, 399-400 (E.D.N.Y. 2020) ("Under New York law, "departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.") (collecting cases).

To the extent plaintiff intended to sue the municipalities, Onondaga County and the City of Syracuse, his claim would not survive initial review. In order to state a claim against a municipality or municipal agency, plaintiff must present evidence that the alleged deprivation of his constitutional rights was caused by an official custom, policy or practice. 🚩 *Monell v. Dep't of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To satisfy this requirement, a plaintiff may allege the existence of:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

**\*19** *Harrison v. Inc. Vill. of Freeport*, 498 F. Supp. 3d at 398 (collecting cases). A single incident of unconstitutional activity by a municipal employee is generally insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal liability. *Id.; Griffith v. Sadri*, No. CV-07-4824, 2009 WL 2524961, at \*8 (E.D.N.Y. Aug. 14, 2009) (collecting cases). Plaintiff's complaint does not make the type of *Monell* allegations sufficient to state a plausible claim of municipal liability on the part of Onondaga County or the City of Syracuse. See, e.g., *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation.") (collecting cases). [26]

### XI. Other Referenced Claims

Plaintiff's complaint references, in vague and/or conclusory fashion, a laundry list of other possible grounds for claims against the named defendants. ("Causes of Action," Dkt. No. 1 at 6; Compl. Supp., ¶ 91). The court has identified and addressed any possible civil rights or other federal claims remotely suggested by the factual allegations in the complaint. While the Second Circuit requires that pro se pleadings be liberally construed, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004). Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, the complaint must at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). The vague "Causes of Action" section in the form complaint and conclusory paragraph 91 towards the end of the complaint supplement do not give the defendants a fair understanding of any basis for other possible civil rights claims that this court did not address above.

To the extent plaintiff references possible claims under state law, the court notes that there is no basis for diversity jurisdiction because all of the parties would appear to be citizens of New York. This court has found that plaintiff has not identified any plausible federal claim against any of the named defendants and would recommend against the exercise of supplemental jurisdiction over the state law claims summarily referenced at the end of plaintiff's complaint. See, e.g., *Lawtone-Bowles v. City of New York, Dep't of Sanitation*, 22 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) ("When all federal claims are eliminated before trial, the balance of factors to be considered–including judicial economy, convenience, fairness, and comity–typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims.") (citing, inter alia, *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122-24 (2d Cir. 2006)).

### XII. Opportunity to Amend

**\*20** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). As stated below, this court recommends that certain of plaintiff's stated or imputed claims be dismissed with prejudice because efforts to amend these claims would be futile. The court recommends that the remaining stated or imputed claims be dismissed without prejudice; but that, for claims currently barred by *Heck v. Humphrey*, plaintiff

not be permitted to amend those claims unless and until his conviction is invalidated on appeal or otherwise.

PLAINTIFF IS ADVISED THAT HE SHOULD NOT ATTEMPT TO AMEND HIS COMPLAINT UNTIL SENIOR U.S. DISTRICT COURT JUDGE McAVOY RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S ORIGINAL CLAIMS. ANY PROPOSED AMENDED COMPLAINT FILED BEFORE JUDGE McAVOY'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT. As noted below, however, the plaintiff may file objections to this court's orders and recommendations.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED** for purposes of filing and any appeal, unless the trial court certifies in writing that the appeal is not taken in good faith (see 28 U.S.C. § 1915(a)(3)), and it is

**ORDERED** that the plaintiff complete and submit to the court an executed Inmate Authorization Form, a blank copy of which the Clerk will mail to plaintiff, and a certified copy of his DOCCS inmate account, and it is

**RECOMMENDED**, that the following claims be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**: (1) all claims against defendant Judges, Hon. Stephen J. Dougherty and Hon. Rory A. McMahon; (2) all claims against defendant Assistant District Attorneys Jarrett Woodfork, Michael Whalen, Anthony Mangovski, and Alphonse Williams; (3) all claims based on testimony before a grand jury or at trial of defendants Officer Dallas Pelz, Arthur Stripling, Tonya Burton, Tammy McNeilly, and Sasha Thornton; (4) any claims based on violations of state or federal criminal statutes; and (5) all claims against sub-entities or departments of the City of Syracuse or County of Onondaga, New York, and it is

**RECOMMENDED**, that, to the extent the court has identified claims currently barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), those claims be **DISMISSED WITHOUT PREJUDICE, BUT WITHOUT LEAVE TO AMEND** unless and until plaintiff's criminal conviction is reversed on direct appeal, expunged by

executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, and it is

**RECOMMENDED**, that plaintiff's remaining claims against all remaining defendants be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**, and it is

**RECOMMENDED**, that if the District Judge adopts these recommendations, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED**, that if the district court adopts these recommendations, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review; and it is

**\*21 RECOMMENDED**, that if the district court adopts these recommendations, the Clerk of the Court shall be authorized, without further order, to dismiss the entire complaint without leave to amend if plaintiff does not file an amended complaint within the forty five (45) day deadline, or request a reasonable extension of time to do so, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, he must wait for the District Court to rule on the above orders and recommendations before plaintiff submits any proposed amended pleading, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human*

*Services,* 892 F.2d 15 (2d Cir. 1989)); 🚩 28 U.S.C. § 636(b)
(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2023 WL 2563181

## Footnotes

1 Plaintiff filed an earlier action, on February 25, 2020, which was dismissed in June 2021 without prejudice for plaintiff's failure to prosecute. (Case No. 5:20-CV-206 (TJM/ATB), Dkt. Nos. 1 (Compl.), 42 (6/10/2021 Text Order dismissing action)). Because the complaints in this action and the earlier action make many of the same allegations relating to the time period before February 25, 2020, the cases were deemed related, leading to the direct assignment of this case to District Judge McAvoy and me. (Case No. 5:22-CV-1367 (TJM/ATB), Dkt. No. 4 (12/27/2022 Text Order granting direct assignment)).

2 Because the pagination of the form complaint is not consistent, the court will reference that document with the page numbers assigned by the court's electronic docketing system, CM-ECF. The court will refer to the typed supplement to the complaint by paragraph number.

3 The court's summary includes some allegations from the complaint in the earlier action, which provides clarity on a few issues that were not as apparent from the complaint in this action.

4 *See* Compl. Supp., ¶ 76; Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 1. All references to complaint herein refer to the complaint in this action, unless the court specifically references the complaint in the earlier case.

5 As discussed below, the police had not been able to locate plaintiff by that time, so it appears that their use of the press reflected an effort to locate plaintiff so that he could be taken into custody. The news release allegedly also stated that plaintiff shot at two men in connection with the incident at McNeilly's Pub. (Compl., Dkt. No. 1 at 6).

6 Plaintiff had apparently not been sentenced on the one count of conviction by the time his complaint was submitted. The DOCCS Incarcerated Lookup website indicates that plaintiff was received into DOCCS custody at the Elmira Correctional Facility on 2/7/2023 in connection with a 15-year sentence for the offense of Criminal Possession of a Weapon 2nd. https://nysdoccslookup.doccs.ny.gov/

7 There appear to be several typographical errors with respect to dates in plaintiff's complaint, including with respect to these allegations. As noted below, plaintiff did file a habeas corpus petition in this court on October 12, 2022, so the alleged efforts to transfer him out of his cell appears to have occurred in October 2022, not October 2020.

8 This section of the complaint also includes plaintiff's general observation about various conditions of confinement affecting other inmates at the Justice Center in October 2022, which allegedly violated their constitutional rights. (Compl. Supp., ¶¶ 80-88). As discussed below, plaintiff does not specify any instances when he was personally harmed by these alleged conditions of confinement, does not identify any particular individuals who were personally involved in imposing such conditions of confinement on him, and does not explain how these conditions violated his constitutional rights.

9 Plaintiff demands in conclusory fashion that the charges against him be expunged. As it appears likely that state collateral and appellate proceedings related to his prosecution will be ongoing, this court must abstain from granting any injunctive relief that would interfere with the ongoing criminal case. *See, e.g.,*

*Gristina v. Merchan*, No. 21-CV-8608, 2022 WL 1597732, at *2 (S.D.N.Y. May 19, 2022) ("Younger abstention provides that 'federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings' " including ongoing state criminal prosecutions) (citing, inter alia, *Younger v. Harris*, 401 U.S. 37, 44-45 (1971)).

10    This discussion of the applicable law is based on Senior District Judge McAvoy's cogent summary in *Brown v. Fallon*, No. 1:21-CV-641 (TJM/ML), 2022 WL 4103998, at *5 (N.D.N.Y. Sept. 8, 2022), which in turn quotes extensively from *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022)

11    Plaintiff makes a conclusory allegation that his selective prosecution was motivated by his race. ⚑*Corley* held that a ⚑Section 1983 claims against a prosecutor based on vindictive or selective prosecution based on race would still be barred by absolute prosecutorial immunity. ⚑*Corley v. Vance*, 365 F. Supp. 3d at 461. The application, to plaintiff's claims, of ⚑*Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), is discussed further below.

12    As discussed below, any civil rights claims against the civilian defendants would also be subject to dismissal for lack of "state action" and plaintiff may not predicate civil rights violations on criminal statutes such as those outlawing perjury.

13    "The elements of a ⚑§ 1983 conspiracy claim for deprivation of civil rights include, (1) an agreement between two or more state actors, or a state actor and a private entity, (2) to act in concert to inflict constitutional injury, [and] (3) an overt act done in furtherance of the goal of causing damages." ⚑*McCray v. City of New York*, No. 03-CV-1008, 2007 WL 4352748, at *23 (S.D.N.Y. Dec. 11, 2007) (citing ⚑*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

14    Plaintiff's Third Cause of Action in the handwritten portion of his complaint referenced malicious prosecution and denial of a fair trial. (Compl., Dkt. No. 1 at 6). Towards the end of the supplement to his complaint, plaintiff also invoked "wrongful arrest." (Compl. Supp., ¶ 91).

15    To the extent plaintiff suggests a false arrest claim, such a claim is defeated if probable cause supports the arrest on some charge. ⚑*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (collecting cases). If, following the arrest, the plaintiff was convicted of the charges against him, that conviction normally "would be conclusive evidence of probable cause." ⚑*Id.* (citation omitted). Given that plaintiff's conviction on at least one offense has not been invalidated, he cannot state a viable claims for false arrest on the current record. Cf. ⚠*Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 428 (S.D.N.Y. 2012) ("When a [§] 1983 plaintiff pleads guilty to the underlying or lesser included charge, this fact alone provides sufficient evidence that probable cause existed at the time of the arrest and precludes a false arrest claim under [§] 1983.") Moreover, a claim for false arrest can only be based on police conduct before the defendant is subject to arrest or other judicial process. ⚑*Wallace v. Kato*, 549 U.S. 384, 388-90, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (a claim for false arrest or imprisonment "ends once the victim becomes held pursuant to ... process–when, for example, he is bound over by a magistrate or arraigned on charges.... Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution"). Because most of plaintiff's allegations of misconduct by the defendants occurred after the start of formal criminal proceedings, malicious prosecution and due process/fair trial claims, not false arrest claims, are his most tenable causes of action.

16    While an indictment may ordinarily be conclusive evidence of probable cause, that presumption may be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other

police conduct undertaken in bad faith. *See* 🚩 *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010).

17   *Bowers* also noted: "The dismissal is without prejudice, but the claims may be reasserted only if the state court conviction is overturned, as the Supreme Court described in 🚩 *Heck*." *Id.*

18   To pursue 🚩 Section 1983 claims regarding the conditions of his confinement, plaintiff was first obligated to exhaust available administrative remedies at the facility where he was incarcerated. *See, e.g., Rodriguez v. Heit*, No. 9:16-CV-706 (GTS/ATB), 2018 WL 3121626, at *2-4 (N.D.N.Y. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 2316687 (N.D.N.Y. May 22, 2018). However, failure to exhaust administrative remedies is an affirmative defense. Thus, unless it is unmistakably clear from the face of the complaint that administrative remedies were available and had not been exhausted, "it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition." *See, e.g., Carolina v. Feder*, No. 3:20-CV-658, 2021 WL 268854, at *10 (D. Conn. Jan. 26, 2021), *reconsideration denied*, 2021 WL 723534 (D. Conn. Feb. 24, 2021).

19   Based on other litigation in this District, the court is aware that a company named NaphCare, Inc. was a contractor who, for a time, provided medical care to inmates in Onondaga County corrections facilities. (N.D.N.Y. Case No. 5:22-CV-1165 (BKS/TWD), Compl., ¶ 15, Dkt. No. 1 at 4). The court will assume, without deciding, that NaphCare and its employees are state actors for the purposes of claims under 🚩 Section 1983. *See Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (for the purposes of 🚩 section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test').") (citing 🚩 *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

20   It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 🚩 § 1983." *See* 🚩 *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).

21   As discussed further below, in order to establish liability of a municipality pursuant to 🚩 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." 🚩 *Monell v. Dep't of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

22   "HIPAA" is the commonly-used acronym for the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320 et seq., which requires health care providers to keep patient medical records confidential.

23   The numerous cases cited in the *Dash* opinions establish that the majority rule among district courts in this Circuit is that disclosure of mental health information does not violate a prisoner's privacy rights. *See also, Flores v. City of New York*, No. 21-CV-1680, 2022 WL 4705949, at *22 (S.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4592892 (S.D.N.Y. Sept. 30, 2022) ("Courts within the Second Circuit have declined to recognize a claim for violation of medical privacy with regard to disclosure of mental health disorders because such disclosure was not likely to expose an inmate to discrimination or intolerance.")

(collecting cases). *Cf. Medina v. Watson*, No. 3:16-CV-2061, 2017 WL 62512, at *2 (D. Conn. Jan. 5, 2017) (following ⚑*Hunnicutt*).

24   That habeas petition was dismissed sua sponte on October 26, 2022, shortly after it was filed on October 12th, because plaintiff had not been sentenced and had not exhausted his state court remedies, as required before he could pursue any federal habeas petition. (N.D.N.Y. Case No. 9:22-CV-1054 (GLS), Dkt. Nos. 1, 4, 5). The docket reflects that plaintiff was able to correspond with the court between October 12th and October 26th and that nothing served by the court on the plaintiff was returned as undeliverable. (*Id.*, Dkt. Nos. 2, 3). Hence, there is no basis for plaintiff to contend that the alleged efforts of Onondaga County correction officials to transfer him interfered with his access to courts or obstructed his ability to pursue his habeas petition. *See, e.g., Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) ("To state a valid ⚑§ 1983 claim that he has been denied reasonable access to the courts, [plaintiff] must show that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action.") Plaintiff filed a prior habeas petition in June 2020 that was also dismissed in September 2021 as premature for failure to exhaust state remedies. (N.D.N.Y. Case No. 9:20-CV-660 (LEK), Dkt. Nos. 1, 13, 14).

25   "Because Plaintiff alleges nothing beyond mere threats of force, [any] excessive force claim [would] fail[ ]." ⚑*Pelt v. City of New York*, No. 11-CV-5633, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) ("[T]hreat[s] of force ... do [ ] not support an excessive force claim.") (collecting cases).

26   Plaintiff arguably makes allegations suggesting a policy or practice when he addresses the general conditions of confinement in the Onondaga County Justice Center involving restrictive confinement and visitation practices. (Compl. Supp., ¶¶ 81-83). As noted above, however, plaintiff fails to allege how these allege practices affected him or violated any of his constitutional rights.

---

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2563210

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Charles R. WILLIAMS, II, Plaintiff,

v.

COUNTY OF ONONDAGA, et al., Defendants.

5:22-cv-1367 (TJM/ATB)

|

Signed March 16, 2023

**Attorneys and Law Firms**

Charles R. Williams, II, Auburn, NY, Pro Se.

John E. Heisler, Jr., Onondaga County Department of Law,
John H. Mulroy Civic Center, Syracuse, NY, for Defendant
County of Onondaga.

**DECISION & ORDER**

Thomas J. McAvoy, Senior United States District Judge

 **\*1** The Court referred this action to Magistrate Judge
Andrew T. Baxter for a Report-Recommendation pursuant
to 🔖 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintif f
brought this case pursuant to 🔖 42 U.S.C. § 1983, alleging
that Defendants, the County of Onondaga, the City of
Syracuse, and various law enforcement officers, lawyers,
judges, and other officials, violated his constitutional rights
in various ways. Plaintiff complains about his prosecution
for various crimes in Onondaga County, the conduct of
officials in prosecuting those crimes, and his treatment in the
Onondaga County Jail. Plaintiff seeks to proceed *in forma
pauperis*, and Judge Baxter provided the Complaint with
an initial review to determine whether the matter should be
served on any of the Defendants.

Judge Baxter's Report-Recommendation, dkt. # 8, issued on
February 21, 2023, recommends that the Court dismiss the
Complaint for failure to state a claim. Many of Plaintiff's
claims, Judge Baxter finds, are raised against persons who
enjoy immunity from those claims. He recommends that
such claims be dismissed with prejudice. Judge Baxter also
finds that some claims seek to challenge Plaintiff's criminal
convictions in state court, and are barred by 🔖 Heck v.

Humphrey, 512 U.S. 477 (1994), until Plaintiff can present
evidence that such convictions have been overturned by a
later proceeding. As to Plaintiff's remaining claims, Judge
Baxter recommends that those claims be dismissed without
prejudice to repleading. Since no federal claims exist and
Plaintiff has not alleged any diversity jurisdiction, Judge
Baxter also recommends that any state-law claims that
Plaintiff seeks to bring be dismissed as well.

Plaintiff did not object to the Report-Recommendation.
The time for such objections has passed. After examining
the record, this Court has determined that the Report-
Recommendation is not subject to attack for plain error or
manifest injustice and the Court will accept and adopt the
Report-Recommendation for the reasons stated therein.

Accordingly:

The Report-Recommendation of Judge Baxter, dkt. # 8, is
hereby **ACCEPTED** and **ADOPTED**. Plaintiff's Complaint
is hereby dismissed, as follows:

1. Plaintiff's claims against: (a) Defendant Judges Hon.
Stephen J. Dougherty and Hon. Rory A. McMahon and
(b) Assistant District Attorneys Jarrett Woodfork, Michael
Whalen, Anthony Mangovski, and Alphonse Williams are
hereby DISMISSED WITH PREJUDICE;

2. All of Plaintiff's claims based on testimony before
a grand jury or trial by Defendants Officer Dallas
Pelz, Arthur Stripling, Tonya Burton, Tammy McNeilly,
and Sasha Thornton are hereby DISMISSED WITH
PREJUDICE;

3. Any claims based on violations of state or
federal criminal statutes are hereby DISMISSED WITH
PREJUDICE;

4. All claims against any sub-entities or departments of the
City of Syracuse, New York, or Onondaga County, New
York, are hereby DISMISSED WITH PREJUDICE;

5. All claims identified in Judge Baxter's Report-
Recommendation as barred by Heck v. Humphrey
are hereby DISMISSED WITHOUT PREJUDICE BUT
WITHOUT LEAVE TO AMEND UNLESS AND UNTIL
Plaintiff's criminal conviction is reversed on direct appeal,
expunged by executive order, declared invalid by a state
tribunal authorized to make such a determination, or called
into question by a federal court's issuance of a *writ of
habeas corpus*; and

**\*2**  6. All of Plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.

Should Plaintiff choose to submit an Amended Complaint, he shall do so within forty-five (45) days of the date of this order. Plaintiff is advised that ANY AMENDED PLEADING MUST BE A COMPLETE PLEADING, WHICH SHALL SUPERSEDE THE ORIGINAL. PLAINTIFF MUST INCLUDE ALL THE REMAINING FACTS AND CAUSES OF ACTION IN THE AMENDED COMPLAINT. NO FACTS OR CLAIMS FROM THE ORIGINAL COMPLAINT MAY BE INCORPORATED BY REFERENCE.

If Plaintiff files an Amended Complaint, that Amended Complaint shall be referred to Judge Baxter for review.

The Clerk of Court is authorized to dismiss the entire complaint without leave to Amend and close the matter if Plaintiff fails to file his Amended Complaint within the forty-five (45) days specified by this order and fails to obtain leave of court for an extension of time to file his Amended Complaint.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 2563210

---

End of Document                                 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 6287459
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dwight GILES, Plaintiff,

v.

Rodney FITZGERALD, Police Officer, Syracuse Police
Department; Duane Rood, Police Detective, Syracuse
Police Department, Judson Knappen, Assistant District
Attorney, District Attorney's Office; Timothy Roulan,
Attorney at Law; and Lawrence Young, Legal Aid
Attorney, Hiscock Legal Aid Society, Defendants.

5:20-CV-0980 (MAD/ML)
|
Signed 10/26/2020
|
Filed 10/27/2020

**Attorneys and Law Firms**

DWIGHT GILES, Plaintiff, Pro Se, Jamesville Correctional
Facility, 6660 East Seneca Turnpike, Jamesville, New York
13078.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

## I. INTRODUCTION

 **\*1**  The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an application to proceed *in forma pauperis*
(Dkt. No. 2) filed by Dwight Giles ("Plaintiff") to the
Court for review. For the reasons discussed below, I grant
Plaintiff's *in forma pauperis* application (Dkt. No. 2) and
recommend that Plaintiff's Complaint (Dkt. No. 1) be (1)
dismissed without prejudice with respect to Plaintiff's (a)
claims seeking injunctive relief, and (b) claims seeking
monetary damages for malicious prosecution, conspiracy,
and fabrication of evidence against Defendants Rood and
Fitzgerald in their individual capacities; (2) stayed pending
resolution of Plaintiff's underlying criminal charges, with
respect to Plaintiff's claims seeking monetary damages for
false arrest against Defendants Rood and Fitzgerald in their
individual capacities; and (3) dismissed with prejudice and
without leave to amend with respect to Plaintiff's claims
against Defendants (a) Fitzgerald and Rood in their official
capacities, (b) Knappen, (c) Roulan, and (d) Young.

## II. BACKGROUND

Construed as liberally [1] as possible, the Complaint alleges
that Plaintiff's civil rights were violated by the following
five defendants: (1) Rodney Fitzgerald, Syracuse Police
Department police officer; (2) Duane Rood, Syracuse Police
Department police detective; (3) Judson Knappen, Assistant
District Attorney; (4) Timothy Roulan, Attorney at Law;
and (5) Lawrence Young, Attorney at Hiscock Legal Aid
(collectively "Defendants"). (*See generally* Dkt. No. 1 [Pl.'s
Compl.].) More specifically, Plaintiff alleges that on May 17,
2019, his residence was searched by Defendant Rood for an
alleged fire emergency. (*Id.*) Plaintiff alleges that he left the
residence during the search and began walking down Chaney
Avenue. (*Id.*) Plaintiff alleges that while he was walking down
Chaney Avenue, Defendant Fitzgerald drove up along-side of
him and said to Plaintiff "come here." (*Id.*) Plaintiff alleges
that he told Defendant Fitzgerald that he was going to work
but that Defendant Fitzgerald exited the vehicle, walked up to
Plaintiff, took Plaintiff's hand, guided Plaintiff to the ground,
handcuffed Plaintiff, arrested Plaintiff, transported Plaintiff to
the police station, and booked Plaintiff. (*Id.*) Plaintiff alleges
that he appeared in court that evening, was charged with
criminal possession of stolen property in the third degree for
an iPad, and was scheduled for a preliminary hearing on May
22, 2019. (*Id.*) Plaintiff alleges that on May 22, 2019, Judge
Doherty dismissed and sealed the criminal charges against
him. (*Id.*)

Plaintiff alleges that before he was released from jail, a parole
officer "placed a violation hold on [him] charging [him]
with C.P.S.P., resisting arrest and running from [Defendant]
Fitzgerald." (*Id.* at 6.) Plaintiff alleges that on June 13, 2019,
he appeared in court before Judge Doran "to face the charges
of C.P.S.P. for a safe, mac book, and I pad," and he "ha[s]
been going to Court for these charges s[i]nce May 22 when it
was dismissed." (*Id.* at 7.) Plaintiff alleges that he informed
the court and his attorney, Defendant Roulan, that the charges
were dismissed and that Defendant Roulan "said he would
look into it, but never did." (*Id.*) Plaintiff alleges that, as a
result of Defendant Roulan's failure to act, his "children[']s
mother went down to the Court, [and] someone in Honorable
Doherty Court told her to ask my lawyer for a copy [of the
dismissal], and the case had been sent to County Court." (*Id.*)
Plaintiff alleges that then his "wife went down to the County
Clerk[']s office to get a copy of the court order and was told
the same thing get it from my lawyer, the case [had] been sent
to County Court." (*Id.*)

**\*2** Plaintiff alleges that in July or August 2019, he then asked Defendant Young, his attorney for the parole violation, "to look into the fact that the charges were dismissed, [but that] he never" responded. (*Id.* at 7-8.) Plaintiff alleges that at his final parole violation hearing, Defendant Fitzgerald provided perjured testimony and stated that Plaintiff "ran from him into the park from Chaney Ave" but that Plaintiff "was never charged with resisting arrest." (*Id.* at 8.) Plaintiff alleges that as a result of Defendant Fitzgerald's false testimony, he was sentenced to thirty-months incarceration on the parole violation. (*Id.*) Plaintiff alleges that he has been incarcerated since May 17, 2019, that the charges against him were dismissed, but that he has endured "constant [b]adgering to cop out, [been] threaten[ed] with a life sentence not only from the District Attorney, but my lawyer as well." (*Id.*)

Based on these factual allegations, Plaintiff asserts the following four claims: (1) a claim of false arrest against Defendants Fitzgerald and Rood; (2) a claim of malicious prosecution against Defendants; (3) a claim of conspiracy against Defendants; and (4) a claim of fabrication of evidence against Defendants Rood, Fitzgerald, and Knappen. (*See generally* Dkt. No. 1.) For relief, Plaintiff seeks $10,000,000.00 and Defendant "Fitzgerald to clear [his] name with parole." (*Id.* at 9.)

## III. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that —... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]

**\*3** Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curium) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

### A. Plaintiff's Claims Seeking Injunctive Relief

After carefully considering the matter, I recommend that Plaintiff's claims that seek injunctive relief, be dismissed without prejudice.

Plaintiff's claims that seek injunctive relief are precluded by the favorable termination rule as set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the Court held that a convicted state prisoner cannot pursue damages or other civil remedies under 42 U.S.C. § 1983 if a decision in favor of the plaintiff "would necessarily imply the invalidity of his conviction or sentence," unless the conviction has already been invalidated. *Heck*, 512 U.S. at 487; *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison

proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.");

*McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007) ("[T]he governing standard for the application of the [ ]*Heck* exception ... is whether a prisoner's victory in a [ section] 1983 suit would necessarily demonstrate the invalidity of his conviction or sentence[.]" (emphasis omitted)).

**\*4** As relief Plaintiff requests that Defendant Fitgerald "clear [his] name with parole." (Dkt. No. 1 at 9.) It is unclear what exactly Plaintiff seeks, but it appears that Plaintiff requests that he (1) be vindicated of his parole violation, and (2) immediately released from the thirty-month sentence that was imposed for the parole violation. (Dkt. No. 1 at 8-9.) This request would necessarily demonstrate the invalidity of Plaintiff's parole violation and related sentence.

As a result, I recommend dismissal without prejudice of Plaintiff's claims to the extent that they seek relief that would necessarily demonstrate the invalidity of his confinement or its duration.

### B. Plaintiff's Claims Seeking Monetary Damages

After carefully considering the matter, I recommend that Plaintiff's claims for malicious prosecution, fabrication of evidence, and conspiracy against Defendants Rood and Fitzgerald in their individual capacities be dismissed without prejudice as premature pursuant to *Heck* because they seek to impugn the validity of his underlying state court criminal proceeding. In addition, I recommend that Plaintiff's false arrest claim against Defendants Rood and Fitzgerald in their individual capacities be stayed pending resolution of his state court criminal proceeding. Moreover, I recommend that Plaintiff's claims for damages against Defendants (1) Rood and Fitzgerald in their official capacities, (2) Knappen, (3) Roulan, and (4) Young be dismissed with prejudice.

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 486-87.[4] In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues to exist."

*Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999).

In contrast, the Supreme Court held in *Wallace v. Kato*, 549 U.S. 384 (2007), that the statute of limitations for a false arrest claim begins to accrue "when legal process was initiated." *Wallace*, 549 U.S. at 390. "Following *Wallace*, several Courts have applied that same analysis for Fourth Amendment claims based on events occurring 'between an unlawful arrest and the institution of legal process.' " *Nussbaumer v. Nesbitt*, 11-CV-6331, 2011 WL 4828844, at *1 (W.D.N.Y. Oct. 7, 2011) (citing *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008)); *see* *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("Fourth Amendment claims for false arrest or unlawful searches accrue at the time of (or termination of) the violation."); *Johnson v. Dossey*, 515 F.3d 778, 781-82 (7th Cir. 2008) (distinguishing between claims that accrue when a litigant first appears before a magistrate, controlled by *Wallace*, and claims that arise during the legal process (controlled by *Heck*)); *Mallard v. Potenza*, 94-CV-0223, 2007 WL 4198246, at *3 (E.D.N.Y. Nov. 21, 2007) (seeing no reason to distinguish between false arrest and search and seizure claims; "*Wallace* applies with equal force to a claim for an illegal search and seizure.").

### 1. *Heck* Delayed Accrual Claims

I recommend that Plaintiff's claims for malicious prosecution, fabrication of evidence, and conspiracy be dismissed without prejudice as premature pursuant to *Heck* because they seek to impugn the validity of his underlying state court criminal proceeding. *See* *McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that the plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution" because a fabricated-evidence claim is most analogous to the tort of malicious prosecution, which also only accrues after the plaintiff prevailed in the underlying criminal proceeding); *Kevilly v. New York*, 410 F. App'x 371, 374 n.3 (2d Cir. 2010) (summary order) (dismissing conspiracy claims under the *Heck* rationale, post-*Wallace*); *Roberties v. Huff*, 11-CV-0521, 2012 WL 1113479, at *4 (W.D.N.Y. Mar. 30, 2012) (dismissing as premature, pursuant to *Heck*, due process, conspiracy to prosecute, obstruction of justice, fabrication

of evidence, and equal protection claims related to the plaintiff's conviction); *Nussbaumer*, 2011 WL 4828844, at *1 (dismissing as premature, pursuant to *Heck*, due process, equal protection, malicious prosecution, and access to the courts claims related to the plaintiff's conviction); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (where plaintiff's conviction had not been overturned or otherwise invalidated, his claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of his conviction—[were] barred.").

**\*5** In the alternative, I recommend dismissal of Plaintiff's malicious prosecution, conspiracy, and fabrication of evidence claims for failure to state a claim.

### a. Malicious Prosecution

The Court also notes that to state a claim for malicious prosecution pursuant to 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting the following four elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions. *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 604 (E.D.N.Y. 2017) (citing *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)).

With regard to the second element, "it must be alleged that the prosecution is at an end, either by alleging that defendant was acquitted of the charge, or by alleging facts showing the legal termination of the prosecution complained of, in favor of defendant, prior to the commencement of the action." *Carpenter v. Nutter*, 127 Cal. 61, 63 (1899); *see also* *Wallace*, 549 U.S. at 392.

"Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996); *see also* *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) ("A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended."). A reversal of a criminal conviction and remand for a

new trial does not constitute such a termination. *DiBlasio, 102 F.3d at 658* (citing *Russell v. Smith, 68 F.3d 33, 36-37 (2d Cir. 1995)*); *accord Poventud v. City of New York, 750 F.3d 121, 130-31 (2d Cir. 2014)* (quoting *Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195 (2000)*) ("[U]nder the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action.").

Plaintiff does not, and cannot, state a claim for malicious prosecution because the underlying criminal proceeding has not conclusively ended. (Dkt. No. 1 at 8.) In addition, to the extent that Plaintiff's malicious prosecution claim relates to the prosecution of his parole violation, based on the allegations in the Complaint, it is clear that the parole violation was not terminated in Plaintiff's favor because he was sentenced to thirty-months incarceration as a result of that violation. (*Id.*) As a result, I recommend that Plaintiff's malicious prosecution claim be dismissed without prejudice.

**b. Conspiracy**

To adequately assert a conspiracy claim under *§ 1983* a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)*; *Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002).*

"[T]o make out a [conspiracy in] violation of *§ 1985(3)*, ... the plaintiff must allege ... four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983).* "With respect to the second element, a plaintiff must show that the conspiracy was motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus.' " *Nguyen v. Bush,* 15-CV-0641, *2015 WL 1966296, at *5 (E.D.N.Y. May 1, 2015)* (quoting *Robinson v. Allstate Ins. Co., 508 F. App'x 7, 9 (2d Cir. 2013)*).

**\*6** "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello, 292 F.3d at 325* (internal quotations and citation omitted); *see also Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003)* (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983)* ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.' " *Flores v. Levy,* 07-CV-3753, *2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008)* (quoting *Twombly, 550 U.S. at 554*).

Plaintiff's Complaint fails to assert any factual allegations plausibly alleging an agreement or conspiracy among Defendants other than using the word conspiracy under the heading "THIRD CLAIM." (*See generally* Dkt. No. 1.) Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory to plausibly suggest a conspiracy.

Further, Plaintiff has not alleged any race or class-based animus as required to support a *§ 1985* conspiracy claim. "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dep't. of Corr. Servs., 115 F. Supp. 2d 307, 316 (N.D.N.Y. 2000)* (Smith, M.J.) (citing *Segreto v. Kirschner, 977 F. Supp. 553, 565 (D. Conn. 1997)*; *Gay Veterans Ass'n, Inc. v. American Legion, 621 F. Supp. 1510, 1515 (S.D.N.Y. 1985)*; *Orshan v. Anker, 489 F. Supp. 820, 823 (E.D.N.Y. 1980)*).

Moreover, in the alternative, even if Plaintiff's conspiracy claims were found to be more than conclusory as pleaded, Plaintiff's claims would likely be barred by the "intra-

agency conspiracy" doctrine. *See Griffin-Nolan v. Providence Washington Ins. Co.*, 04-CV-1453, 2005 WL 1460424, at *10-11 (N.D.N.Y. June 20, 2005) (Scullin, C.J.) (dismissing the plaintiff's conspiracy claims where the defendants were officers of the City of Syracuse and the plaintiff did not allege that the individual defendants had a personal interest in their alleged conspiracy); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) (dismissing the plaintiff's conspiracy claims where the officers were part of a single corporate entity, the City of New York, and plaintiff did "not provide any evidence to suggest that either of the officers were motivated by an independent personal stake in his arrest and prosecution."). Generally, that doctrine provides that officers, agents or employees of a single corporate entity are legally incapable of conspiring together. *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 75-76 (E.D.N.Y. 2002).

As set forth *infra*, in Parts V.B.3 and V.B.4. of this Order and Report-Recommendation, I recommend that all claims against Defendants Knappen, Roulan, and Young be dismissed. As a result, to the extent that those recommendations are accepted and adopted, the only remaining Defendants, Defendants Rood and Fitzgerald, are officers of the Syracuse Police Department, who, pursuant to the intra-agency doctrine, are incapable of conspiring with themselves. Moreover, I find that the Complaint does not allege that any of Defendants had a personal interest in the alleged conspiracy. (*See generally* Dkt. No. 1.)

As a result, I recommend that Plaintiff's conspiracy claim be dismissed for failure to state a claim.

### c. Fabrication of Evidence

**\*7** "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To succeed on a § 1983 claim alleging a violation of the fair trial right, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the

plaintiff suffered a deprivation of life, liberty, or property as a result." *Aguirre v. City of New York*, 15-CV-6043, 2017 WL 4236552, at *10 (E.D.N.Y. Sept. 22, 2017) (brackets omitted) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)). In addition, the Supreme Court's holding in *McDonough* held that a plaintiff "could not bring his fabricated evidence claim under § 1983 prior to the favorable termination of his prosecution." *McDonough*, 139 S. Ct. at 2156-57.

Here, Plaintiff's fabrication of evidence claim appears to relate to the allegedly false testimony provided by Defendant Fitzgerald at Plaintiff's "final parole hearing." (Dkt. No. 1 at 8.) The Complaint alleges that Plaintiff was "given 30 months on a parole violation." (*Id.*) Thus, Plaintiff's parole violation did not terminate in his favor. In addition, the extent that the fabrication of evidence claim relates to the underlying criminal proceedings, as set forth above, those are ongoing and thus, cannot have terminated in Plaintiff's favor.

As a result, I recommend dismissal without prejudice, of Plaintiff's fabrication of evidence claim for failure to state a claim.

### 2. *Wallace* Stay of Proceedings

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.' " *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)) (per curiam).

"Probable cause 'is a complete defense to an action for false arrest' brought under New York law or 🚩 § 1983." *Kates*, 2017 WL 11548970, at *3 (citing 🚩 *Weyant*, 101 F.3d at 852).

"For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause." 🚩 *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (N.Y. 2016); *accord* 🚩 *Marshall v. Sullivan*, 105 F.3d 47, 50 (2d Cir. 1996). "A person who has been convicted of the crime for which he was arrested cannot state a claim for false arrest because his conviction establishes that his confinement was grounded on probable cause; therefore, it was privileged." *Johnson v. Pugh*, 11-CV-0385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013); *see also* 🚩 *Marcavage v. City of New York*, 689 F.3d 98, 109-10 (2d Cir. 2012) ("Defendants prevail if there was probable cause to arrest Plaintiff[ ] for any single offense."); *Phelan v. Sullivan*, 541 F. App'x 21, 23-24 (2d Cir. 2013) ("A false arrest claim is defeated by the plaintiff's conviction for the offense for which he was arrested.").

**\*8** However, the Supreme Court has instructed that

> If a plaintiff files a false-arrest claim before he has been convicted ..., it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit.

🚩 *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (citing 🚩 *Heck v. Humphrey*, 512 U.S. 477, 487-88, n.8 (noting that "abstention may be an appropriate response to the parallel state-court proceedings"); 🚩 *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996); 🚩 *Edwards v. Balisok*, 520

U.S. 641, 649 (1997)); *see Jovanovic v. City of New York*, 04-CV-8437, 2008 WL 355515, at *2 (S.D.N.Y. Feb. 7, 2008) (citing 🚩 *Wallace*, 549 U.S. at 393-94) ("In lieu of allowing the [false arrest] claim to accrue indefinitely, the Supreme Court found it more desirable to force a petitioner to bring a false arrest claim within three years of arraignment (or other commencement of legal process), and to permit the district court faced with the action to stay the matter until any ongoing underlying criminal proceedings were resolved, thus eliminating the possibility of inconsistent judgments.").

The Complaint alleges that Plaintiff's criminal charges are still pending. (Dkt. No. 1 at 8.) As a result, I recommend that, "in accordance with *Wallace*, [the Court] exercise[ ] its discretion and stay[ ] Plaintiff's claim of false arrest. Because the ... process may be lengthy, [I recommend that] Plaintiff [be] directed to contact the Court in writing every 90-days and inform the Court of the status of the [criminal proceeding]. Following conclusion of the underlying criminal action, Plaintiff [shall] inform the Court of the outcome ..., and, if appropriate, apply to the Court to restore this case to the active calendar by filing a motion with the Court seeking such relief." *Kates*, 2017 WL 1158970, at *4.

### 3. Claims Against Defendant Knappen

I recommend that all claims for damages against Defendant Knappen be dismissed with prejudice.

### a. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under 🚩 § 1983." *Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Shmueli*, 424

F.3d at 238; *see also* Buckley v. Fitzsimmons, 509 U.S. 259, 274 n.5 (1993) (indicating that the Court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); Imbler v. Pachtman, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*9** "A prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." D'Alessandro v. City of New York, 713 F. App'x 1, at 5 (2d Cir. 2017) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)). "A prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." D'Alessandro, 713 F. App'x at 5 (quoting Hill v. City of New York, 45 F.3d 653, 656 (2d Cir. 1995)). However, the prosecutor is entitled to absolute immunity "when she acts as an 'advocate.' " *Id.* (citing Warney v. Monroe Cnty., 587 F.3d 113, 121 (2d Cir. 2009)). "Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity—when she initiates and pursues a criminal prosecution." *Id.* (citing Shmueli, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." D'Alessandro, 713 F. App'x at 5 (citing Shmueli, 424 F.3d at 237-38; Peay v. Ajello, 470 F.3d 65, 67-68 (2d Cir. 2006)).

The Complaint contains no factual allegations related to Defendant Knappen. (*See generally* Dkt. No. 1.) [5] However, Plaintiff attempts to assert claims of malicious prosecution, conspiracy, and fabrication of evidence against Defendant Knappen. (Dkt. No. 1 at 9-10.) Defendant Knappen is protected from Plaintiff's suit for damages based on the doctrine of prosecutorial immunity.

As a result, I recommend that Plaintiff's claims for damages against Defendant Knappen in his individual capacity be dismissed with prejudice based on the doctrine of prosecutorial immunity. *See Staton v. Holzbach*, 20-CV-0631, 2020 WL 6119382, at \*3 (D. Conn. Oct. 16, 2020) (dismissing with prejudice claims against the defendant prosecutor based on the doctrine of prosecutorial immunity); *Lawrence v.*

*Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (same).

### b. Official Capacity

"The Eleventh Amendment generally bars suits against a state in federal court." Pikulin v. City Univ. of N.Y., 176 F.3d 598, 600 (2d Cir. 1999) (per curiam). It does not, however, bar suits against municipalities and local governments, such as the County of Onondaga. *See* Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 368-69 (2001). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n.55 (1978)). "Thus, if a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." D'Alessandro, 713 F. App'x at 8 (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993); Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988)). But if a suit centers "on the administration of the district attorney's office"—that is, on the "office policy" that the district attorney sets—then the district attorney is "considered a municipal policymaker," and the Eleventh Amendment does not immunize him from suit. Ying Jing Gan, 996 F.2d at 536.

**\*10** As set forth *supra* note 5, the Complaint asserts no factual allegations with respect to alleged unconstitutional actions taken by Defendant Knappen. However, based on the claims asserted against Defendant Knappen, and drawing all reasonable inferences in Plaintiff's favor, it appears as though Plaintiff seeks to attack Defendant Knappen's prosecutorial decisions over the course of Plaintiff's criminal case. The Eleventh Amendment shields Defendant Knappen from suit in his official capacity to the extent that Plaintiff attacks Defendant Knappen's prosecutorial decisions over the course of Plaintiff's criminal and parole case. D'Alessandro, 713 F. App'x at 8.

As a result, I recommend that Plaintiff's claims against Defendant Knappen in his official capacity be dismissed.

#### 4. Claims Against Defendants Roulan and Young

"To state a claim under 🚩 § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)). "However, it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 🚩 42 U.S.C. § 1983." *Rodriguez*, 116 F.3d at 65-66 (citing *Housand v. Heiman*, 594 F.2d 923, 924-25 (2d Cir. 1979) (per curiam); *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (public defenders do not act under color of state law)). Moreover, "[p]rivate attorneys are generally not 'state actors' for purposes of 🚩 § 1983." *O'Donoghue v. United States Soc. Sec. Admin.*, 19-1426, 2020 WL 5884786, at *1 (2d Cir. Oct. 5, 2020) (citing *Rodriguez*, 116 F.3d at 65-66); *see Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) (holding that the defendant, "as a private attorney, was not a state actor; that he was licensed by the state to practice law does not render him a state actor."); *Caldwell v. Barrier*, 19-CV-1516, 2020 WL 918717, at *3 (N.D.N.Y. Feb. 26, 2020) (Hummel, M.J.) ("Private attorneys, whether court appointed or privately retained, are not liable under 🚩 42 U.S.C. § 1983."), *report and recommendation adopted by* 2020 WL 1904034 (N.D.N.Y. Apr. 17, 2020 (Sannes, J.).

The Complaint does not specify whether Defendants Roulan and Young were retained or court appointed (although Defendant Young's employment at Hiscock Legal Aid suggests that he was a court appointed attorney). (*See generally* Dkt. No. 1.) However, the law is clear that regardless of the arrangement for Defendants Roulan and Young's representation of Plaintiff in his underlying criminal and parole matters, they were not state actors subject to suit under 🚩 42 U.S.C. § 1983.

As a result, I recommend dismissal of the claims against Defendants Roulan and Young with prejudice. *See Caldwell*, 2020 WL 918717 (dismissing with prejudice claims against the defendant private attorney, who represented the plaintiff

in different case because the defendant was not liable under 🚩 § 1983).

#### 5. Claims Against Defendants Rood and Fitzgerald in Their Official Capacities

After careful consideration, I recommend dismissal of Plaintiff's claims against Defendants Rood and Fitzgerald in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. 🚩 *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)).

**\*11** Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See* 🚩 *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). "[C]laims against a government employee in his official capacity are treated as a claim against the municipality," and, thus, cannot stand under the Eleventh Amendment. *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008).

However, "[u]nder the doctrine in *Ex Parte Young*, 'a plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers ... in their official capacities, provided his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective.' " *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (quoting *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)). However, "[a] plaintiff may not use this doctrine to adjudicate the legality of past conduct," meaning there must be some "plausible threat of future violations."

*Clark*, 510 F. App'x at 51 (citing 🚩 *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)); *see* 🚩 *W. Mohegan Tribe and Nation*, 395 F.3d at 21 (noting that, "in determining

whether the *Ex Parte Young* doctrine applies to avoid an Eleventh Amendment bar to suit, 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective' "); *see also* ⚠ *New York State Corr. Officers & Police Benev. Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 129 (N.D.N.Y. 2012) (D'Agostino, J.) ("[D]eclaratory relief is not permitted under *Ex Parte Young*, when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective.").

Here, Plaintiff seeks both monetary and non-monetary relief. (Dkt. No. 1 at 9.) However, as set forth above in Part V.A. of this Order and Report-Recommendation, I recommend dismissal of Plaintiff's injunctive relief without prejudice based on the doctrine set forth in *Heck v. Humphrey*. To the extent that recommendation is accepted and adopted, only Plaintiff's request for monetary damages would remain, and Plaintiff's claims against Defendants Rood and Fitzgerald in their official capacities for monetary damages are barred by the Eleventh Amendment.

Accordingly, I recommend that all claims for monetary damages against Defendants Rood and Fitzgerald in their official capacities be dismissed with prejudice and without leave to amend. *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.), *report and recommendation adopted*, 2016 WL 3983635 (N.D.N.Y. July 25, 2016) (Sharpe, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 📁 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**\*12 RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE** Plaintiff's Complaint (Dkt. No. 1), to the extent that it alleges claims seeking (1) injunctive relief, and (2) monetary damages asserting malicious prosecution, conspiracy, and fabrication of evidence against Defendants Rood and Fitzgerald in their individual capacities, pursuant to 📁 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. 1915A(a) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1), to the extent that it alleges claims for damages against Defendants (1) Rood and Fitzgerald in their official capacities, (2) Knappen, (3) Roulan, and (4) Young, pursuant to 📁 28 U.S.C. § 1915(e)(2) (B) and 28 U.S.C. 1915A(a) for failure to state a claim upon which relief may be granted and because those claims seek monetary relief against Defendants who are immune from such relief; and it is further

**RECOMMENDED** that the Court **STAY** Plaintiff's Complaint (Dkt. No. 1), to the extent that it alleges claims for monetary damages asserting false arrest against Defendants Rood and Fitzgerald in their individual capacities; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in 📁 *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 📁 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 📁 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; 📁 *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing 📁 *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2020 WL 6287459

## Footnotes

1      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. 🚩 *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting 🚩 *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2      Section 🚩 § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 🚩 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 🚩 28 U.S.C. § 1915(g) as of the date this action was commenced.

3      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." 🚩 *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

4      The *Heck* delayed accrual rule also applies to claims pursuant to § 1985. 🚩 *Amaker v. Weiner*, 179 F.3d 48, 51-52 (2d Cir. 1999).

5      In the alternative, I recommend dismissal of Plaintiff's claims against Defendant Knappen without prejudice for failure to assert a claim. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [🚩 section] 1983." 🚩 *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); 🚩 *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). Where the plaintiff "lists Defendants in the complaint's caption and parties sections, but provides no further reference to them in the complaint or attachments ... the complaint lacks sufficient facts to plausibly suggest the Defendants' personal involvement in the alleged constitutional violations." *Price v. Goord*, 10-CV-0181, 2011 WL 1630727, at *4 (N.D.N.Y. Mar. 10, 2011) (Lowe, M.J.), *report and recommendation adopted by* 2011 WL 1630174 (N.D.N.Y. Apr. 29, 2011) (Kahn, J.). The Complaint does not contain any factual allegations regarding actions that Defendant Knappen allegedly took or failed to take. As a result, I recommend that, in the alternative, Plaintiff's claims against Defendant Knappen be dismissed for failure to state a claim.

6      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 248048
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dwight GILES, Plaintiff,

v.

Rodney FITZGERALD, Police Officer, Syracuse Police
Department; Duane Rood, Police Detective, Syracuse
Police Department, Judson Knappen, Assistant District
Attorney, District Attorney's Office; Timothy Roulan,
Attorney at Law; and Lawrence Young, Legal Aid
Attorney, Hiscock Legal Aid Society, Defendants.

5:20-cv-980 (MAD/ML)
|
Signed 01/26/2021

**Attorneys and Law Firms**

DWIGHT GILES, 88003548, Onondaga County Justice
Center, 555 South State Street, Syracuse, New York 13202,
Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, U.S. District Judge:

**\*1**  On August 24, 2020, *pro se* Plaintiff, Dwight Giles,
filed this action against Defendants, Syracuse Police Officer
Rodney Fitzgerald; Syracuse Police Detective Duane Rood;
Assistant District Attorney Judson Knappen; and Attorneys
Timothy Roulan and Lawrence Young. Dkt. No. 1. While
unclear, Plaintiff's complaint appears to allege claims for
malicious prosecution and conspiracy against all Defendants;
false arrest against Defendants Fitzgerald and Rood; and
fabrication of evidence against Defendants Rood, Fitzgerald,
and Knappen. *See* Dkt. No. 1.

That same day, Plaintiff moved for leave to proceed
*in forma pauperis.* Dkt. No. 2. On October 27, 2020,
Magistrate Judge Miroslav Lovric granted Plaintiff's motion
to proceed *in forma pauperis* and issued an Order
and Report-Recommendation recommending that Plaintiff's
complaint be (1) dismissed without prejudice with respect to
Plaintiff's claims seeking injunctive relief, and claims seeking
monetary damages for malicious prosecution, conspiracy,
and fabrication of evidence against Defendants Rood and
Fitzgerald in their individual capacities; (2) stayed pending

resolution of Plaintiff's underlying criminal charges, with
respect to Plaintiff's claims seeking monetary damages for
false arrest against Defendants Rood and Fitzgerald in their
individual capacities; and (3) dismissed with prejudice and
without leave to amend with respect to Plaintiff's claims
against Defendants Knappen, Roulan, Young, Fitzgerald and
Rood in their official capacities. Dkt. No. 4 at 1-2.

On November 6, 2020, Plaintiff filed an objection
to Magistrate Judge Lovric's Order and Report-
Recommendation. Dkt. No. 6. However, Plaintiff did not raise
any issues regarding Magistrate Judge Lovric's opinion. *Id.*
Rather, Plaintiff presents additional evidence not included in
the original complaint. *Id.*

When a party files specific objections to a magistrate judge's
report-recommendation, the district court makes a "*de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b)(1). However, when a party
files "[g]eneral or conclusory objections or objections which
merely recite the same arguments [that he presented] to the
magistrate judge," the court reviews those recommendations
for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011
WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and
footnote omitted). After the appropriate review, "the court
may accept, reject, or modify, in whole or in part, the findings
or recommendation made by the magistrate judge." 28
U.S.C. § 636(b)(1).

In the present matter, the Court finds that Magistrate Judge
Lovric correctly recommended that Plaintiff's complaint be
dismissed without prejudice with respect to Plaintiff's claims
seeking injunctive relief because vindication of Plaintiff's
parole violation or immediately releasing Plaintiff from the
thirty-month sentence imposed for the parole violation would
necessarily demonstrate the invalidity of Plaintiff's parole
violation and related sentence. Dkt. No. 4 at 7-8 (citing
*Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Plaintiff's
claims for monetary damages for malicious prosecution,
conspiracy, and fabrication of evidence against Defendants
Rood and Fitzgerald in their individual capacities must be
dismissed for this same reason. Additionally, Magistrate
Judge Lovric is correct that Plaintiff's claims for monetary
damages for false arrest against Defendants Rood and
Fitzgerald in their individual capacities should be stayed
because Plaintiff's complaint alleges that criminal charges are
still pending and therefore if Plaintiff is ultimately convicted,

this action could impugn that conviction. *See id.* at 15-17 (quoting *Wallace v. Kato,* 549 U.S. 384, 393-94 (2007)).

**\*2** Finally, Plaintiff's claims against Defendants Knappen, Roulan, Young, Fitzgerald, and Rood in their official capacities are dismissed with prejudice and without leave to amend because Defendant Knappen is entitled to prosecutorial immunity; Defendants Roulan and Young are not state actors and are not subject to 42 U.S.C. § 1983 liability; and monetary damages against Defendants Fitzgerald and Rood in their official capacities are barred by the Eleventh Amendment.

Plaintiff's objection merely presents additional facts and appears to attempt to clarify the assertions made in his complaint. Dkt. No. 6. In order to adequately cure the deficiencies in Plaintiff's complaint as outlined in Magistrate Judge Lovric's Order and Report-Recommendation, Plaintiff must file an amended complaint with the Court.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Lovric's October 27, 2020 Order and Report-Recommendation is **ADOPTED** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE** to the extent that it alleges claims seeking (1) injunctive relief, and (2) monetary damages for malicious prosecution, conspiracy, and fabrication of evidence against Defendants Rood and Fitzgerald in their individual capacities; and the Court further

**ORDERS** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**, to the extent that it alleges claims for damages against Defendants (1) Rood and Fitzgerald in their official capacities, (2) Knappen, (3) Roulan, and (4) Young; and the Court further

**ORDERS** that Plaintiff's Complaint (Dkt. No. 1) is **STAYED**, to the extent that it alleges claims for monetary damages asserting false arrest against Defendants Rood and Fitzgerald in their individual capacities; and the Court further

**ORDERS** that the complaint shall not be served at this time and, instead, the Clerk of the Court shall **ADMINISTRATIVELY CLOSE** this case. Plaintiff may seek to reopen this matter once his criminal case has been fully resolved; [1] and the Court further

**CERTIFIES** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal taken from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 248048

---

## Footnotes

1    Since resolution of the state court criminal proceedings could take some time, Plaintiff is directed to provide the Court with a status report regarding his pending criminal matter every three (3) months. If Plaintiff fails to provide the Court with these status reports as directed, the Court of the Court shall enter judgment in Defendants' favor and close this case, without further order from the Court.

---